1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph T. Kutyla, Esq.
Law Office of Joseph T. Kutyla
10620 Treena Street, #230
San Diego, CA 92131
jtklaw@outlook.com

Attorneys for Defendant Dale Weidenthaler

### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

MICHELLE MORIARTY, an individual,
as Successor in Interest to the Estate of
HERON MORIARTY and as Guardian Ad
Litem to ALEXANDRIA MORIARTY,
ELIJAH MORIARTY, and ETERNITY
MORIARTY,

     v.

COUNTY OF SAN DIEGO, DR.
ALFRED JOSHUA, individually, and
DOES 1 through 10, Inclusive,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 17cv1154-LAB(AGS)

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANT DALE
WEIDENTHALER'S MOTION FOR
SUMMARY JUDGMENT; NOTICE OF
LODGEMENT, EXHIBITS AND
DECLARATIONS

Date: December 10, 2018
Time: 11:15 a.m.
Courtroom: 1410
Judge: Hon. Larry Alan Burns

**ORAL ARGUMENT REQUESTED**

17cv1154-LAB(AGS)

**TOPICAL INDEX**

TABLE OF AUTHORITIES

**Page**

I     INTRODUCTION………………………………………………………2

II    FACTUAL CHRONOLOGY…………………………………………...4

      A.    DISCRETION TO DECLINE SAFETY CELL FOR
            HOMICIDAL INMATES UNDER JAIL POLICY……………….....4

      B.    5/27/16 WEIDENTHALER TOLD THAT MORIARTY *NOT*
            SUICIDAL UPON ARRIVAL AT VDF…………………………...5

      C.    WEIDENTHALER GIVEN NO INFORMATION
            ABOUT MORIARTY AFTER MAY 27, 2016 MEETING
            WITH WATCH COMMANDER MCNEELY
            UNTIL MAY 31,2016…………………………………..……...5

      D.    MAY 31, 2016:  WEIDENTHALER DECLINES TO
            PLACE HOMICIDAL INMATE MORIARTY IN A
            SAFETY CELL; TOLD MORIARTY
            IS *NOT* SUICIDAL…………………………………………6

      E.    NURSE PRACTITIONER DANIELS' SAFETY CELL
            RECOMMENDATION WAS BASED SOLELY UPON
            HOMICIDAL IDEATION…………………………………..……6

      F.    DEPUTY LOIS GUILLORY CONFIRMS THAT
            SHE TOLD WIEDENTHALER THAT THE REASON
            FOR THE TRANSFER WAS HOMICIDAL,
            NOT SUICIDAL THOUGHTS……………………………………7

III   SUMMARY JUDGMENT STANDARD………………….……….7

i

17cv1154-LAB(AGS)

IV    WEIDENTHALER IS ENTITLED TO QUALIFIED IMMUNITY………9

    A.    APPLICABLE LAW……………………………………………...9

    B.    NO CONSTITIONAL RIGHT TO SUICIDE PREVENTION FOR
        NON-SUICIDAL DETAINEES…………………………………....11

    C.    CONCLUSION RE QUALIFIED IMMUNITY……………… …..13

V     THE SECTION 1983 DELIBERATE INDIFFERENCE CLAIM IS
    WITHOUT MERIT…………………………………………….…13

    A.    WEIDENTHALER'S DECISION DID *NOT* PUT
        MORIARTY AT SUBSTANTIAL RISK FOR
        SUICIDE………………………………………………...14

    B.    A REASONABLE OFFICIAL WOULD *NOT* HAVE
        APPRECIATED A HIGH RISK IN KEEPING A HOMICIDAL
        INMATE IN "AD-SEG" (OBJECTIVE STANDARD)…………...15

VI    THE NEGLIGENCE CLAIM IS WITHOUT MERIT……………..17

VII   CONCLUSION…  ………………………………………………17

.

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**<u>Page</u>**

Anderson v. Creighton, 483 U.S. 635, 640 (1987)…………………….....10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)………  8, 9, 15

Castro v. County of Los Angeles, 833 F.3d 1060, 1066
(9th Cir. 2016)…………………………………………………………..10, 12, 15

Celotex v. Catrett, 477 U.S. 317, 323-24 (1986)………………………….7

Clouthier v. County. of Contra Costa, 591 F.3d 1232 (9th Cir. 2010)………..12

Conn v. City of Reno (9th Cir. 2009) 572 F.3d 1047, 1055……………….11, 12

Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, (1976). ……………….13

Gordon v. County of Orange (9th Cir. 2018) 888 F.3d 1118……..........13, 15, 16

Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, (1989)…………..14, 15

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)……………………..... .9, 14, 15

Johnson v County of Los Angeles (1983) 143 Cal. App. 3d 298…………..17, 18

Kingsley v. Hendrickson, ⸺ U.S. ⸺, 135 S.Ct. 2466, (2015)……14, 15, 16

Malley v. Briggs, 475 U.S. 335, 341 (1986)…………………………..…10

Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992)…………10

Masson v. New Yorker Magazine, Inc., 501 U.S. 496 (1991)………………..8

Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986)…....8, 9

17cv1154-LAB(AGS)

Mitchell v. Washington, 818 F.3d 436, 447 (9th Cir. 2016)…………………11

Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)……………………………10, 11

Pearson v. Callahan, 555 U.S. 223, 236 (2009)………………………..…...10

Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)…………………….…..10

Romero v. Kitsap Cty., 931 F.2d 624, 627 (9th Cir. 1991)…………..………11

Saucier v. Katz, 533 U.S. 194, 202 (2001)…………………...………………11

Turner v. Safley, 482 U.S. 78, 84–85, 107 S.Ct. 2254, (1987)………………15

T.W. Elec. Service v. Pacific Elec. Contractors,
   809 F.2d 626, 631 (9th Cir. 1987)………………………………………8

## **STATUTES**

Federal Rules of Civil Procedure:

Fed. R. Civ. P. 56(c)………………………………………………..………..7

Fed. R. Civ. P. 56(e)…………………………………………...………..8, 9


42 UNITED STATES CODE:

   Section 1983 …………………………………………...…………………3, 9

# I

## INTRODUCTION

On May 31, 2016 Heron Moriarty (age 44) committed suicide while in custody at the Vista Detention Center (VDF).  Earlier that day, Nurse Practitioner Amanda Daniels recommended placing Moriarty in a Safety Cell. Moriarty initially told Daniels that he was not homicidal however, when he was advised that he might be moved to a medical unit Moriarty told Daniels that he would kill anyone who came into his cell to move him. This prompted her to recommend that Mr. Moriarty be moved to a Safety Cell, not because he was suicidal, but because he made homicidal statements.

Shortly thereafter, Deputy Lois Guillory (acting as a Liaison Deputy between the mental health professionals and the sworn staff at the jail) relayed this request by telephone to Sgt. Dale Weidenthaler.  She confirmed that the basis for the safety cell recommendation was homicidal ideation.  There was no mention of  suicide.

When he took Guillory's call, Weidenthaler was organizing a tactical team of deputies to remove another inmate from a cell to administer forced medication.  He declined the request to move Mr. Moriarty from Administrative Segregation ("Ad-Seg") because "Ad-Seg" was the appropriate cell for homicidal inmates.  Ad Seg cells keep the homicidal inmate away from other inmates, depriving them of any opportunity to carry out their homicidal thoughts.  Weidenthaler explained that the express wording of the Jail Policy, reinforced by his many years of experience, gave him discretion to decline placement of homicidal inmates into safety cells..

17cv1154-LAB(AGS)

The heirs of Heron Moriarty assert two claims against Sgt. Weidenthaler. The First Cause of Action under 42 *U.S.C.* Section 1983 alleges that Weidenthaler was "deliberately indifferent" to a serious medical need (suicidal behavior) when he declined to place Moriarty into a safety cell.   This claim is without merit because the safety cell recommendation was based upon homicidal behavior.   Nurse Daniels determined that Moriarty was not suicidal when she examined Moriarty early on May 31, 2016. Weidenthaler could not have been deliberately indifferent to an unknown and non-existent risk of suicide when he declined to place Moriarty in a safety cell.   Moreover, the Policy in effect at the time expressly gave Weidenthaler discretion to decline this housing transfer. The policy states that homicidal inmates "**may** be placed in a safety cell…."  (Exhibit "A" attached hereto.)

Also, the Section 1983 claim is barred under the doctrine of Qualified Immunity in that Weidenthaler's actions did not violate a clearly established constitutional right that caused Moriarty's death.   As a Homicidal inmate, Moriarty did not have a clearly established Constitutional right to suicide prevention measures.

Plaintiff's also assert a state law negligence claim (6th Cause of Action) based upon Weidenthaler's alleged knowledge of Moriarty's "imminent suicidal tendencies" (Paragraph 155 of First Amended Complaint).   The negligence claim is without merit because Sgt. Weidenthaler was told that Moriarty homicidal, not suicidal, when he declined the housing transfer request.

- 3 -

## II

## FACTUAL CHRONOLOGY

**A.    DISCRETION TO DECLINE SAFETY CELL FOR HOMICIDAL INMATES UNDER JAIL POLICY**

Section J.1 of the Sheriff's Department Manual of Policies and Procedure for Detention Services dated March 11, 2016, provides:

**POLICY:**

"Inmates who have been assessed for Inmate Safety Program housing and approved by the watch commander for placement, **may** be temporarily placed in a safety cell when necessary to prevent the inmate from **imminently** inflicting physical harm on themselves or others, or destroying property…"  (Exhibit "A" attached hereto. Emphasis added.)

The Safety Cell placement policy gives discretion to decline safety cell placement for homicidal inmates. (Ex. "B" *Weidenthaler DP*: pg. 69 L. 21- pg. 71 L. 1)  As a matter of custom and practice, suicidal inmates must be placed in a safety cell if available, but not homicidal inmates..  (Ex. "B" *Weidenthaler DP*: pg. 71 L. 2- pg. 72 L. 9)  The discretion to treat homicidal and suicidal inmates in this way pre-dated the March 11, 2016 written policy (J.1 above) and was a custom and practice that "goes very far back"  (Ex. "B" *Weidenthaler DP*: pg. 77 L. 24- pg. 78 L. 15.) extending Weidenthaler's entire career. (*id.* pg. 79 L. 15 – pg. 81 L. 4.)  Weidenthaler has worked as a detention's deputy since 1990. (Ex. "B" *Weidenthaler* DP pg. 16 L. 23 – pg. 18 L. 13)

Sgt. Weidenthaler used his discretion to decline a psychiatric staff recommendation for a safety cell placement for a homicidal inmate 2-3 times prior to May 31, 2016.  (Ex.

- 4 -

17cv1154-LAB(AGS)

"B" *Weidenthaler DP*: pg. 72 L. 10-15)   He is aware of other sergeants and watch commanders acting similarly for homicidal inmates.  (Ex. "B" *Weidenthaler DP*: pg. 72 L. 16- pg. 73 L. 14)

### B.  5/27/16: WEIDENTHALER TOLD THAT MORIARTY *NOT* SUICIDAL UPON ARRIVAL AT VDF

On the morning of May 27, 2016, Sgt. Weidenthaler attended a change of shift briefing at VDF given by the previous night shift supervisor, Sgt. Hightower.  (Ex. "B" *Weidenthaler DP*: pg. 85 L. 7 – pg. 87 L. 11) Weidenthaler was told about an inmate diverted from Central Jail to VDF for placement in a safety cell. (*id.*)  A safety cell was not available at Central Jail for this same inmate. (*id.*)

After the Hightower briefing, watch commander Lt. McNeely came into Weidenthaler's office. McNeely informed Weidenthaler that Moriarty told the nurse at Central Jail that he was suicidal (Ex. "B" *Weidenthaler DP:* pg. 90 L. 25 – pg. 93 L. 2) however, Weidenthaler was also told that Moriarty was NOT suicidal when he arrived at VDF.  (Ex. "B" *Weidenthaler DP*: pg. 95 L. 13-22)

### C.  WEIDENTHALER GIVEN NO INFORMATION ABOUT MORIARTY AFTER MAY 27, 2016 MEETING WITH WATCH COMMANDER MCNEELY UNTIL MAY 31, 2016

Sgt. Weidenthaler was not given any additional information or updates concerning Heron Moriarty after the May 27 meeting with McNeely and prior to the May 31, 2016 phone call from Deputy Guillory.  (Ex. "B" *Weidenthaler DP*: pg. 97 L. 25 - pg. 98 L. 5) Weidenthaler had no interaction with Moriarty after the McNeely meeting.  (*id.*)  In fact, he had never seen Moriarty.  (Ex. "B" *Weidenthaler DP*: pg. 102 L. 4-8)

- 5 -

**D. MAY 31, 2016:  WEIDENTHALER DECLINES TO PLACE HOMICIDAL INMATE MORIARTY IN A SAFETY CELL; TOLD MORIARTY IS _NOT_ SUICIDAL.**

No later than 9:30 a.m. on May 31, 2016, Sgt. Weidenthaler speaks by telephone with Psychiatric Liaison Deputy[i], Lois Guillory (Ex. "B" *Weidenthaler* DP: pg. 129 L. 12-18).  Daniels told Weidenthaler that Nurse Daniels wanted inmate Moriarty to go to the safety cell for homicidal ideation.  (Ex. "B" *Weidenthaler* DP: pg. 120 L. 7-22)  She told Weidenthaler that Moriarty "said that if anybody comes in his cell today, he's going to kill them."  (Ex. "B" *Weidenthaler* DP: pg. 121 L. 5 - 122 L. 10-17 ) When he took Guillory's call, Weidenthaler was organizing a tactical team of deputies to remove another inmate from a cell to administer forced medication.  (Ex. "B" id. Pg. 112 L 11 – pg. 120 L. 12)

Weidenthaler did not put Moriarty in a safety cell because he felt Moriarty, as an inmate expressing homicidal ideation,  was housed appropriately.  (Ex. "B" *Weidenthaler* DP: pg. 130 L. 24 – pg. 131 L. 11)  Weidenthaler and co-defendant Dr. Ralph Lissaur agree that Moriarty was housed appropriately in Administrative Segregation (Ad-Seg) because placement in that module provides the best means of depriving the inmate the opportunity to cause harm to sworn staff and inmates.  (Ex. "B" *Weidenthaler* DP: pg. 131 L. 1-11) see also Ex. "C" *Lissaur* DP: pg. 59 L. 11 -  pg. 60 L. 10)

**E. NURSE PRACTITIONER DANIELS SAFETY CELL RECOMMENDATION WAS BASED SOLELY UPON HOMICIDAL IDEATION**

Nurse Practitioner Amanda Daniels testified that "homicidal ideation" was the only reason for her safety cell recommendation for Heron Moriarty on May 31, 2016.  (Ex. "D"

- 6 -

*Daniels* DP pg. 122 L. 11-16)  Daniels' criteria for placement in a safety cell requires "imminent" suicidal ideation or behavior that is "presently" manifested.  (Ex. "D" *Daniels* DP pg. 122 L 21- pg. 123 L. 19)  Safety Cell placement under Jail Policy requires a finding of "imminent" suicidal behavior.  (Exhibit "A")

On May 31, 2016, Mr. Moriarty initially told Daniels that he was not homicidal; but when told that he might be moved to a hospital or mental unit Moriarty responded by stating to Nurse Daniels that he would kill anyone who came into his cell to move him.  (Ex. "D" *Daniels* DP: pg. 48 L. 10-20; see also *Daniels* DP pg. 121 L. 17-21)

## F.  DEPUTY LOIS GUILLORY CONFIRMS THAT SHE TOLD WEIDENTHALER THAT THE REASON FOR THE TRANSFER WAS HOMICIDAL, NOT SUICIDAL THOUGHTS

During the phone call with Sgt. Weidenthaler, Deputy Guillory said that Nurse Practitioner Daniels' reason for the safety cell transfer recommendation was Inmate Moriarty's homicidal, not suicidal thoughts.  (Ex. "E" *Guillory* DP pg. 217 L. 17 – pg. 218 L. 7)

### III

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett, 477 U.S. 317, 323-24 (1986)*. The moving party "always

- 7 -

bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id. at 323* (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id. at 322-23*.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*. The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)*. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986)*.

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc., 501 U.S. 496 (1991) (citing Anderson, 477 U.S. at 255); Matsushita, 475 U.S. at 588 (1986)*. It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed

- 8 -

background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987)*. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248*. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita, 475 U.S. at 587*.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ..., the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." *Rule 56(e) (2010)*.

## IV

## WEIDENTHALER IS ENTITLED TO QUALIFIED IMMUNITY

### A.  APPLICABLE LAW

Qualified immunity shields federal and state officials from civil liability under 42 *U.S.C.* § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the

- 9 -

officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016). The court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) citing *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). The Supreme Court has cautioned that clearly established law should not be defined at a high level of generality. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. It is not necessary to find a case directly on point, "in which the very action in question has been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " Id. citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The plaintiff bears the burden of proving the existence of a clearly established right at the time of the alleged misconduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). If the plaintiff meets this burden, the defendant then bears the burden to show that her actions were reasonable, even if they might have violated the plaintiff's rights. Id. "[R]egardless of whether the constitutional violation occurred, the officer should

- 10 -

prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap Cty*., 931 F.2d 624, 627 (9th Cir. 1991).

## B.   NO CONSTITUTIONAL RIGHT TO SUICIDE PREVENTION FOR NON-SUICIDAL DETAINEES

Plaintiff is unable to cite any clearly established law giving a non-suicidal inmate the right to suicide prevention measures.  It is true that "A heightened suicide risk or an attempted suicide is a serious medical need". *Conn v. City of Reno* (9th Cir. 2009) 572 F.3d 1047, 1055  However, "[i]t is insufficient that the broad principle underlying a right is well-established." *Mitchell v. Washington*, 818 F.3d 436, 447 (9th Cir. 2016). See also Saucier *v. Katz*, 533 U.S. 194, 202 (2001). "The clearly established right must be framed in light of the specific context and particular facts of the case. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Here, the question is whether it would have been clear to a reasonable officer in Sgt. Weidenthaler's position that his conduct was unlawful when he declined to place Moriarty in a safety cell for homicidal ideation.

Here, Plaintiff cannot cite any case finding a clearly established constitutional right to suicide intervention when the detainee was not exhibiting a specific suicide risk. At most, Moriarty said he was suicidal during the intake processing at Central Jail on May 25th; a fact made known to Weidenthaler on May 27th during a shift change briefing. However, Weidenthaler was also told that Moriarty was determined not to be a suicide risk upon arrival at VDF later on the 25th.  Weidenthaler was not involved in the original

- 11 -

housing placement decision at VDF.  When Deputy Guillory relayed the transfer request on May 31, she said nothing about suicidal behavior or thoughts.  Nurse Daniels confirmed in her deposition that the safety cell recommendation was based upon imminent "homicidal", not suicidal ideation.

Plaintiff's will argue that Weidenthaler was aware of Moriarty's statement to the intake nurse at Central Jail 7 days earlier.  Plaintiff's cannot ignore all that happened in the intervening time.  They cannot cite any evidence that Weidenthaler was aware of any suicidal behavior or ideation while Moriarty was at VDF.  He was told that Moriarty was not suicidal upon arrival at VDF.  Moriarty was seen and evaluated by a licensed health care provider (Nurse Daniels) on May 31 who found no evidence of "imminent" or "present" suicidal ideation or behavior.  Daniels' criteria for placement in a safety cell requires "imminent" suicidal ideation or behavior that is "presently" manifested.  (Ex. "D" *Daniels* DP pg. 122 L 21- pg. 123 L. 19)  Daniels' assessment was that Moriarty was homicidal, not suicidal when she made the safety cell recommendation. (*id.*  At L. 11-16)

In every case where qualified immunity was rejected, the decedent had exhibited a specific suicide risk by threatening suicide or making suicidal statements, attempting suicide. See e.g. *Clouthier v. County. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010) overruled on other grounds in *Castro v County of Los Angeles, supra*; *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010).  Here, it is undisputed that Moriarty did not threaten suicide or make any specific suicidal statements to Sgt. Weidenthaler. Importantly, Nurse Daniels' safety cell recommendation was based solely upon Moriarty's present homicidal threats.

- 12 -

She was not aware of Moriarty's alleged suicidal statements made at Central Jail before transfer to VDF and she did not know why Moriarty was moved to VDF.  (Ex "D" *Daniels DP* pg. 74 L. 16 - pg. 75 L. 2)

### C.  CONCLUSION RE QUALIFIED IMMUNITY

Weidenthaler is entitled to Qualified Immunity because a homicidal inmate did NOT have a clearly established constitutional right to placement in a safety cell as a suicide prevention measure at the time Weidenthaler declined the transfer recommendation.  A reasonable official with discretion under Jail Policy to decline a housing recommendation would not have understood from existing law that a homicidal inmate's constitutional rights were violated by the exercise of that same discretion.

Sgt. Weidenthaler is entitled to Qualified Immunity for the acts alleged herein.

### V

### THE SECTION 1983 DELIBERATE INDIFFERENCE CLAIM IS WITHOUT MERIT

The Ninth Circuit has recently revised the elements of a "deliberate indifference" claim brought under *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976).  In *Gordon v. County of Orange* (9th Cir. 2018) 888 F.3d 1118 at 1124-1125 the court announced a new "objective: standard.  The elements of a pre-trial detainee's medical care claim are:

1. The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

- 13 -

2. Those conditions put the plaintiff at substantial risk of suffering serious harm;

3. The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

4. By not taking such measures, the defendant caused the plaintiff's injuries.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.' " *Id.* at 1071 [quoting *Kingsley*, 135 S.Ct. at 2473; *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)]

The undisputed evidence shows that plaintiff cannot raise a question of fact regarding the second and third elements.

## A.   WEIDENTHALER'S DECISION DID *NOT* PUT MORIARTY AT SUBSTANTIAL RISK FOR SUICIDE

It is undisputed that Moriarty was not suicidal when Weidenthaler declined the safety cell transfer. Moriarty was NOT placed *"at substantial risk of suffering serious harm"* precisely because "Ad-Seg" is the appropriate housing for homicidal inmates (*Weidenthaler* and *Lissaur* testimony). "Ad-Seg" protects other inmates and sworn staff from homicidal behavior. Moriarty's placement in "Ad-Seg" did not create a foreseeable risk that he would commit suicide. Weidenthaler acted well within his discretion as a matter of policy and custom.

- 14 -

**B.    A REASONABLE OFFICIAL WOULD *NOT* HAVE APPRECIATED A HIGH DEGREE OF RISK IN KEEPING A HOMICIDAL INMATE IN "AD-SEG" (<u>OBJECTIVE STANDARD</u>)**

*Gordon* instructs us to look to the factors outlined by the Supreme Court in *Kingsley v. Hendrickson*, ⸺ U.S. ⸺, 135 S.Ct. 2466, (2015) and *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) to determine whether Weidenthaler's housing placement decision was "objectively reasonable". *Gordon v. County of Orange* (9th Cir. 2018) 888 F.3d 1118, 1123-4.  Although *Kingsley* was an excessive force claim, the objective reasonableness standard discussed therein is equally applicable to medical care claims.  *Gordon v. County of Orange* (9th Cir. 2018) 888 F.3d 1118, 1123-25; *Castro v supra,* 833 F3d 1060 at 1070-72.

The court in *Kingsley* recognized these non-exclusive factors:

A. The use of an objective standard adequately protects an officer who acts in good faith. "We recognize that '[r]unning a prison is an inordinately difficult undertaking."

B. That "safety and order at these institutions requires the expertise of correctional officials, who must have **substantial discretion** to devise reasonable solutions to the problems they face."

C. Officers facing disturbances "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." (citing *Graham v Connor*, 490 U.S., at 397, 109 S.Ct. 1865 (1989).

D. A court must judge the reasonableness of the force used **from the perspective**

- 15 -

1  **and with the knowledge of the defendant officer**.

2  E.  A court must take account of the **legitimate interests in managing a jail**,

3  acknowledging as part of the objective reasonableness analysis that **deference to policies**

4  **and practices** needed to maintain order and institutional security is appropriate. *Kingsley*

5  *v. Hendrickson* (2015) 135 S.Ct. 2466, 2474–2475 (Emphasis Added.) *Gordon,* supra at

6  1123-4.

7

8

9  Weidenthaler's decision to keep Moriarty in "Ad-Seg" was objectively reasonable.

10  From Weidenthaler's perspective at the time, homicidal inmates are appropriately housed

11  in "Ad-Seg" to protect staff and other inmates.  Weidenthaler and Dr. Lissaur agree that

12  homicidal inmates should be segregated from the jail population.  Moriarty's contact with

13  sworn staff is also an important and legitimate concern.  Moving Moriarty to a safety cell

14  requires contact with a homicidal inmate, raising significant risks of harm to sworn staff.

15  The information given by Guillory did not compel Weidenthaler to weigh the risks of

16  keeping a suicidal inmate in Ad-Seg.  Moriarty was not suicidal.  Weidenthaler acted

17  reasonably when he declined placement in a safety cell.

18

19

20  Finally, Jail Policy confers discretion upon Weidenthaler to decline the move to a

21  safety cell.  It would be inappropriate to allow a jury to impose liability based upon an

22  unwarranted conclusion that Weidenthaler should have made a different choice with the

23  benefit of 20/20 hindsight when Policy and practices allowed him to make that same choice

24  based upon the undisputed facts known to him at the time.  Imposing liability under these

25  facts will force jail personnel to "guess correctly" about remote and unknowable risks of

- 16 -

suicide.

Because Moriarty's placement in "Ad-Seg" did not create a foreseeable risk that he would commit suicide, Weidenthaler is entitled to Summary Judgment on the Section 1983 "deliberate indifference" claim.

# VI

## THE NEGLIGENCE CLAIM IS WITHOUT MERIT; NO DUTY TO PUT MORIARTY IN SAFETY CELL

Plaintiff's negligence claim is based upon the disproven allegation that Weidenthaler knew that Heron Moriarty was "imminently suicidal" and "would kill himself." (*FAC, paragraph 155*) Significantly, plaintiff's do not allege that Weidenthaler "should have known" of Moriarty's suicidal ideation. This motion has shown that Weidenthaler did not know that Moriarty was "imminently suicidal". He was given no contrary information. Further, Nurse Daniels found no suggestion of suicidal ideation when she examined Moriarty on the morning of May 31st.

Weidenthaler owed no "duty of care" to Moriarty because he was not aware that Moriarty was "imminently" suicidal (in fact, Moriarty was not suicidal as shown by the undisputed facts). In *Johnson v County of Los Angeles* (1983) 143 Cal. App. 3d 298 the Court found that Sheriffs knew of inmate's suicidal behavior and therefore owed a duty to notify the spouse of the inmate's release.

> "Whether a "duty" exists in a particular case is a question of law. "[L]egal duties are ... merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." (Citations omitted.) "Duty" is " 'an expression of the sum total of those considerations of policy which lead the

- 17 -

law to say that the particular plaintiff is entitled to protection.' (Citations omitted.) The most important policy consideration is the foreseeability of the harm: as a general principle a defendant owes a duty of care "to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298, 307–308.

Weidenthaler had no actual knowledge of "imminent" or "present" suicidal ideation or behavior.  Further, at the time he received the Guillory phone call, Weidenthaler owed no duty to investigate Moriarty's arrest records, reports concerning the entire period of confinement, confidential medical history and pre-confinement psychiatric care or arrest records (records Weidenthaler could not access due to privacy rules).  Weidenthaler owed no duty to place Moriarty in a safety cell.  Plaintiff's state negligence claim is without merit.

## VII
## CONCLUSION

Defendant Weidenthaler respectfully submits that he is entitled to Qualified Immunity from liability and that the Deliberate Indifference claim is factually without merit.

The negligence claim fails to establish a duty to place Moriarty in a safety cell under the circumstances presented to Weidenthaler.  Weidenthaler complied with Jail Policy by keeping Moriarty in Administrative Segregation due to homicidal ideation.  It would be incongruous to find that Weidenthaler's compliance with Policy was also a breach of the standard of care.

- 18 -

17cv1154-LAB(AGS)

1    Defendant respectfully requests this court to grant this motion.

2

3    DATED: October 8, 2018

4                                          By: /S/    Joseph T. Kutyla

5                                          Attorney for Defendant Dale Weidenthaler

6    _____                   E-mail: jtklaw@outlook.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28