1   Christopher S. Morris, Esq., SBN 163188
    cmorris@morrislawfirmapc.com
2   Danielle R. Pena, Esq., SBN 286002
    dpena@morrislawfirmapc.com
3   MORRIS LAW FIRM, APC
    501 West Broadway, Suite 1480
4   San Diego, CA 92101
    Telephone:  (619) 826-8060
5   Facsimile:  (619) 826-8065

6   Attorneys for Plaintiffs

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SAN DIEGO

10

11  MICHELLE MORIARTY, an                Case No.: 3:17-cv-01154-LAB-AGS
    individual, as Successor in Interest to
12  the ESTATE OF HERON                  **PLAINTIFFS' MEMORANDUM OF**
    MORIARTY and as GUARDIAN AD          **POINTS AND AUTHORITIES IN**
13  LITEM to ALEXANDRIA                  **SUPPORT OF MOTION IN LIMINIE**
    MORIARTY, ELIJAH MORIARTY,           **NO. 3 TO EXCLUDE STATEMENTS**
14  and ETERNITY MORIARTY,               **REGARDING MICHELLE**
                                         **MORIARTY'S MARRIAGE AND**
15                       Plaintiff,      **DATING**

16      v.                              Date:      June 12, 2020
                                        Time:      2:00 p.m.
17  COUNTY OF SAN DIEGO, and            Dept:      1410
    DOES 1 through 10, Inclusive,       Judge:     Hon. Larry A. Burns
18
                         Defendants.
19

20

21

22

23

24

25

26

27

28

---

PLAINTIFFS' MOTION IN LIMINIE #3                Case No.: 3:17-cv-01154-LAB-AGS

Pursuant to the January 17, 2020, Minute Order (Dkt. 141), Plaintiffs submit the following motion *in limine* requesting this Court to preclude statements regarding Michelle Moriarty's Re-Marriage and efforts to date.

## I.

## INTRODUCTION

Defendants intend to introduce evidence and testimony relating to Michelle Moriarty's remarriage in 2018. Defendants claim Michelle's remarriage is relevant to her claim for economic and damages. Plaintiffs move this Court to exclude reference to Michelle's remarriage because it is irrelevant and highly prejudicial.

## II.

## EVIDENCE OF MICHELLE'S REMARRIAGE SHOULD BE EXCLUDED

In wrongful death cases, evidence of a surviving spouse's remarriage is inadmissible. *Cherrigan v. San Francisco*, 262 Cal. App. 2d 643, 650 (1968); *Benwell v. Dean*, 249 Cal. App. 2d 345 (1967); *Wood* v. *Alves Service Transp., Inc*., 191 Cal.App.2d 723, 727-729 (1961); *Gallo* v. *Southern Pac. Co*., 43 Cal.App.2d 339, 346-347 (1941).

In *Benwell,* the court held a defendant should not be allowed to profit by the widow's remarriage. Further, the fact that the surviving spouse has remarried since the death of decedent "is not to be considered in mitigation of the damages recoverable in behalf of such surviving spouse." *Wood v. Alves Service Transp., Inc*., 191 Cal. App. 2d 723, 728, 13 Cal. Rptr. 114, 117, 1961 Cal. App. LEXIS 2115, *7. In *Cherrigan*, the court noted that, "evidence of conditions occurring after a wrongful death is inadmissible on the issue of damages because the latter are to be determined only by conditions which existed at the time the death occurred." *Cherrigan v. San Francisco*, 262 Cal. App. 2d 643, 652 (1968).

In *Leahy*, plaintiffs filed suit alleging negligence causing wrongful death. There defendant argued "that it should be allowed to argue that Susan Leahy's remarriage limits the damages she is entitled to for "loss of service and support"

and for "loss of care, comfort and society" after her husband's death." *Leahy v. Lone Mt. Aviation, Inc*., 2013 U.S. Dist. LEXIS 61640, *10 (2013).  The court ruled that the evidence of plaintiff's remarriage should be excluded even if relevant, because any probative value is outweighed by the danger of unfair prejudice and confusion of the issues." *Id.* at 11*.

Based on the *Leahy* ruling, the probative value of Michelle's remarriage is outweighed by the danger of unfair prejudice and confusion of the issues in the current case.  Moreover, Michelle's remarriage does not erase the love that Michelle and Mr. Moriarty had for each other during their 18 years of marriage (Exhibit 1, 68:24-69:1-3), or the pain that she and her family are suffering after his tragic death.

### III.

### DEFENDANTS SHOULD ALSO BE PRECLUDED FROM ASKING QUESTIONS THAT WOULD OPEN THE DOOR

During meet and confer discussions, it is apparent that Defendants intend to ask questions that would open to the door to Michelle remarriage.  Defendants should be precluded from asking certain questions that would either open the door or lead to impeachment of her remarriage.  Accordingly, the following type of questions should be excluded:

- Have you been able to move on since Mr. Moriarty's suicide?
- Have you been able to recover since Mr. Moriarty's suicide?
- Have you been able to find happiness since Mr. Moriarty's suicide?
- Are you currently involved in a romantic/fulfilling relationship?
- Have you dated since Mr. Moriarty's suicide?
- How long after Mr. Moriarty's death did you wait to date?

Asking these questions is akin to introducing evidence of Michelle's remarriage.  Accordingly, questions if this nature should be excluded.

3

## III.

## <u>CONCLUSION</u>

It is a longstanding principle that Michelle's remarriage on July 21, 2018, is not admissible evidence in a wrongful death lawsuit.  Therefore, Defense counsel, and their experts, should be excluded from referencing Michelle's remarriage or asking her any questions during their examination that open the door.

MORRIS LAW FIRM, APC


Dated: May 8, 2020                         By:   s/ Christopher S. Morris
                                                Christopher S. Morris, Esq.
                                                Danielle R. Pena, Esq.
                                                Attorney for Plaintiffs

PLAINTIFFS' MOTION IN LIMINIE #3                    Case No.: 3:17-cv-01154-LAB-AGS

1

## <u>INDEX OF EXHIBITS TO PLAINTIFFS' MEMORANDUM OF POINTS</u>

2

## <u>AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINIE NO. 3 TO</u>

3

## <u>EXCLUDE STATEMENTS REGARDING MICHELLE MORIARTY'S</u>

4

## <u>MARRIAGE AND DATING</u>

5

| Exhibit | Description | Pages |
|---|---|---|
| 1 | Pertinent Portions of the Deposition Transcript of Michelle Moriarty | 6-11 |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION IN LIMINIE #3                    Case No.: 3:17-cv-01154-LAB-AGS

EXHIBIT 1

Michelle Moriarty  11/14/2017

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4   MICHELLE MORIARTY, an individual, )
    As Successor in Interest to the   )
5   Estate of HERON MORIARTY and as   )
    Guardian Ad Litem to ALEXANDRIA   )
6   MORIARTY, ELIJAH MORIARTY, and    )
    ETERNITY MORIARTY,                )
7                                     )
                Plaintiffs,           )
8                                     )
         v.                           ) Case No.: 17-cv1154-LAB(AGS)
9                                     )
    COUNTY OF SAN DIEGO, DR. ALFRED   )
10  JOSHUA, individually, and         )
    DOES 1 through 10, Inclusive,     )
11                                    )
                Defendants.           )
12  _____)

13

14

15

16        VIDEOTAPED DEPOSITION OF MICHELLE MORIARTY

17                SAN DIEGO, CALIFORNIA

18                NOVEMBER 14, 2017

19

20

21

22  REPORTED BY CARLINE A. FONSECA, CSR NO. 8068

23

24

25

Michelle Moriarty  11/14/2017

1      **Q      Did Mesquite already live on Pioneer Way before**

2  **you moved there?**

3      A      No.  We bought it together.

4      **Q      And there were two full houses at that address?**

5      A      Yes.

6      **Q      Does Mesquite have a family?**

7      A      No, he doesn't.

8      **Q      Just him?**

9      A      Yes.  Except --

10             THE WITNESS:  Should I bring up my son?

11             MS. PENA:  Okay.

12             THE WITNESS:  My son is going to be moving back

13  here to live with him, because he is depressed over

14  there and needs a different environment.  He needs to

15  come back to be with -- you know, the environment he was

16  in, he was a lot happier here.

17  BY MR. WELSH:

18      **Q      Okay.  Have you been married just one time or**

19  **more than one time?**

20      A      One time.

21      **Q      How about your husband, one time or more than**

22  **one time?**

23      A      One time.

24      **Q      As I understand it, you were married about**

25  **18 years?**

Michelle Moriarty  11/14/2017

1      A     Correct.

2      Q     What was the date of your wedding?

3      A     March 7th, 1998.

4      Q     Can you give me just a brief description of how

5  you met?

6      A     Yeah.  We met at church at a singles group that

7  they had, like a Bible study, and then we would all do,

8  like, events together and hang out and stuff and that's

9  how we met.

10     Q     And that was at the Calvary church?

11     A     Calvary Chapel San Diego.

12     Q     What year was it when you switched from Calvary

13  Chapel to The Rock?

14     A     Like, maybe a year-and-a-half, two years later.

15  I don't remember.

16     Q     About 2000?

17     A     Yeah, or maybe the beginning of 2001.  It was

18  somewhere in that time period.

19     Q     Okay.  And then you were at The Rock for how

20  long?

21     A     Oh, like, eight or nine -- eight to ten years.

22  It's a blur.  We were there for a while.

23     Q     Why did you switch from The Rock to C3?

24     A     Actually, before we went to C3, we went to

25  Bonita Valley Christian.  The Rock was just getting

Michelle Moriarty  11/14/2017

1      I, MICHELLE MORIARTY, do hereby declare under

2  penalty of perjury under the laws of the State of

3  California that I have read the foregoing transcript;

4  that I have made such corrections as noted herein, in

5  ink, initialed by me, or attached hereto; that my

6  testimony as contained herein, as corrected, is true and

7  correct.

8      Executed this _____ day of _____, _____, at

9  _____, _____.

10

11

12

13

14

15              _____

16                  MICHELLE MORIARTY

17

18

19

20

21

22

23

24

25

Michelle Moriarty  11/14/2017

1        I, Carline A. Fonseca, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken before me

4    at the time and place herein set forth; that any

5    witnesses in the foregoing proceedings, prior to

6    testifying, were placed under oath; that a verbatim

7    record of the proceedings was made by me using machine

8    shorthand which was thereafter transcribed under my

9    direction; further, that the foregoing is an accurate

10   transcription thereof.

11

12

13   Dated:  This _____ day of _____, _____,

14           at San Diego, California.

15

16

17

18

19

20               _____
                        Carline A. Fonseca
21                      CSR No. 8068

22

23

24

25