1  Christopher S. Morris, Esq., SBN 163188
   cmorris@morrislawfirmapc.com
2  Danielle R. Pena, Esq., SBN 286002
   dpena@morrislawfirmapc.com
3  MORRIS LAW FIRM, APC
   501 West Broadway, Suite 1480
4  San Diego, CA 92101
   Telephone:  (619) 826-8060
5  Facsimile:  (619) 826-8065

6  Attorneys for Plaintiffs

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SAN DIEGO

10

11 MICHELLE MORIARTY, an               Case No.: 3:17-cv-01154-LAB-AGS
   individual, as Successor in Interest to
12 the ESTATE OF HERON               **OPPOSITION TO DEFENDANT
   MORIARTY and as GUARDIAN AD       AMANDA DANIELS PNP AND
13 LITEM to ALEXANDRIA               CORRECTIONAL PHYSICIANS
   MORIARTY, ELIJAH MORIARTY,        MEDICAL GROUP, INC.'S MOTION
14 and ETERNITY MORIARTY,            IN LIMINIE NO. 11 TO EXCLUDE
                                     PLAINTIFFS' TRIAL EXHIBIT NO. 46**
15                     Plaintiff,
                                     [Motion in *Liminie* No. 11 of 12]
16        v.
                                     Date:      July 13, 2020
17 COUNTY OF SAN DIEGO, and          Time:      2:00 p.m.
   DOES 1 through 10, Inclusive,     Dept:      1410
18                                   Judge:     Hon. Larry A. Burns
                       Defendants.
19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DANIELS AND CPMG MIL #11          3:17-cv-01154-LAB-AGS

# I.

## __INTRODUCTION TO THE MOTION__

Defendants Correctional Physician's Medical Group ("CPMG") and Amanda Daniels (collectively referred to herein as "Defendants") move this Court to exclude Exhibit 46, internal emails produced by the county.  The emails establish a pattern of similar events, lack of training, and some pertain directly to Heron Moriarty.  Exhibit 46 includes Exhibit 40 and Exhibit 41, the subject of Defendants' motions in limine No. 9 and No. 10.  The bases for exclusion of Exhibit 46 is identical to the basis for exclusion in Defendants' motions in limine No. 9 and No. 10.

Again, CPMG argues that the internal emails are not relevant to Daniels and CPMG.  For the most part, Plaintiffs agree with the exception of Exhibit 40 and Exhibit 41, and a handful of others.  However, Exhibit 46 is highly relevant to Plaintiffs' *Canton* claims, which, as the Court indicated, will not be bifurcated in this case.  Specifically, Exhibit 46 is a collection of internal emails produced by the county in relation to discovery in pursuant of Plaintiffs' *Canton* claims.  The emails were the subject of much debate and effort.  The scope of the emails was narrowly tailored but expansive within the context of suicide prevention.  Notably, the county did not object to the admissibility of Exhibit 46 because it is well aware of the relevancy those emails have to Plaintiffs' municipal claims.

However, Defendants do not take issue with any of the emails specifically other than that "the subject matter involves the County's consideration of a "for cause" termination of its contract with CPMG, coverage of the inmate deaths by San Diego CityBeat, and prison procedures and protocol  among various other topics." (Motion [Dkt. 176], 3:12-22.)

Defendants rely on the same legal arguments in support of preclusion as it did in motions in limine No. 9, No. 10, and No. 11. Plaintiffs opposed those motions and incorporates by reference its response herein.  [Dkt. 243.]  If the Court / / /

1   is inclined to admit Exhibit 40 and 41, that ruling should be controlling here as

2   well.

3                                            **II.**

4   **THE INTERNAL EMAILS ARE ADMISSIBLE FOR SEVERAL REASONS**

5          The issue with CPMG and Exhibit 46 is that it fails to see the global

6   relevancy of the internal emails to Plaintiffs' *Canton* claims.  Plaintiffs will not use

7   the documents to prove CPMG had a conforming habit, nor will Plaintiffs rely on

8   the emails to establish that CPMG had "routine practices."  Rather, these

9   documents illustrate direct notice and deliberate indifference on the part of the

10  county in regards to deliberately maintaining a deficient prevention policy.

11         *A.*     *Relevancy*

12         Defendants argue that many of the internal emails do not apply to Daniels

13  and CPMG.  Defendants are correct.  But that does not mean they are not relevant

14  to the claims against the county.  For example, Defendants take issue with internal

15  emails that relate to "suicide and self-harm attempts by other inmates, occasions of

16  inmates falling off top bunks, San Diego City Best news article from 2013

17  regarding inmate deaths, laundering routine for blankets, suicide prevention

18  blankets to be used by inmates, and razor restriction protocol."  (Motion [Dkt. 176],

19  5:13-22.)  With the exception of laundering routine, the relevancy of the above-

20  mentioned documents speaks to the heart of Plaintiffs' second cause of action, as

21  well as to the burden of establishing a pattern of pre-existing preventable suicides

22  that would have put the county on notice that it was maintaining a deficient, injury-

23  causing prevention program.  Defendants argue that some of the previous suicides

24  referenced in Exhibit 46 involve dissimilar instances of previous suicides, i.e,

25  different methods of suicide.  However, the method, jail, or time of day is

26  immaterial.  The ultimate question is foreseeability and preventability.

27         The emails pertaining to other instances where a CPMG providers fell below

28  the standard of care is relevant to the burden Plaintiffs' must establish against the

                                            3

1    county, i.e., a pattern of similar events where inadequate psychiatric treatment

2    caused the injury or death of an inmate.  This is proof of a pattern and proof that the

3    county was maintaining untrained and unsupervised mental health providers.

4    Accordingly, these emails are highly relevant to Plaintiffs' *Canton* claims.

5        B.    *Party Admission*

6       Again, the internal emails are not hearsay because they are not being offered

7    for the truth of the matter, but to establish notice of inadequacy in care.  However,

8    pursuant to Federal Rule of Evidence 801(d), certain types of statements are "not

9    hearsay."  These include party admissions and employee party admissions.

10   801(d)(2); *Oracle U.S.A. v. SAP AG*, 2012 U.S. Dist. LEXIS 107147, *6 (Cal. N.D.

11   2012).  An employee party admission is a statement offered against an opposing

12   party, made by a declarant who was an employee of the party at the time the

13   statement was made, and which concerns a matter "within the scope of the agency

14   or employment."  See *Sea-Land Serv., Inc. v. Lozen Int'l*, LLC, 285 F.3d 808, 821

15   (9th Cir. 2002).  The term "[W]ithin the scope of the agency or employment" is

16   generally interpreted as meaning that the statement is "related to the declarant's

17   duties."  5 Weinstein's Federal Evidence § 801.33[2][c]; *Oracle U.S.A. v. SAP AG*,

18   2012 U.S. Dist. LEXIS 107147, *6 (Cal. N.D. 2012).  Admissions by a party-

19   opponent are excluded from the category of hearsay, and no guarantee of

20   trustworthiness is required in the case of an admission.  *Id.*

21       Here, all of the emails are internal communications (Exhibit 46) between the

22   county regarding suicide prevention, training, CityBeat articles, previous suicides,

23   and specifically Moriarty's suicide.  These communications are party admissions

24   and as such are admissible to use against the county.  Notably, the county did not

25   object to Exhibit 46.

26       C.    *Then Existing State of Mind*

27       Again, the documents not hearsay because they not being offered for the

28   truth of the matter, but to establish notice of inadequacy in care and program

1    deficiency.  However, pursuant to Rule 803(3), the documents do illustrate Dr.

2    Joshua's then existing state of mind pertaining to his plan to terminate CPMG for

3    cause based on its systemic failures in training and supervising its psychiatrists.

4    Meaning, it is direct evidence that the county made a deliberate and conscious

5    choice to maintain course in 2015 and later knowing that the mental health

6    treatment offered in jails were inadequate and causing preventable suicides.  See

7    *City of Canton v. Harris,* 489 U.S. 378, 389 (1989).

8         D.    <u>Subsequent Remedial Measures are Admissible in Monell Claims</u>

9         Defendants argue that because the internal emails illustrate a pre-existing

10   problem with CPMG's lack of training and supervising, which if addressed earlier

11   could have prevented Moriarty's suicide, it is evidence of subsequent remedial

12   measures and therefore are not admissible.  However, Rule 407 explicitly carves

13   out an exception if there is another purpose of admissibility, such as notice.

14        In *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), the Ninth

15   Circuit held, "we reiterate our rule that post-event evidence is not only admissible

16   for purposes of proving the existence of a municipal defendant's policy or custom,

17   but is highly probative with respect to that inquiry."  Subsequent remedial measures

18   can also be relied on in *Monell* cases in order to establish a pattern of similar

19   events.  See *George v. Sonoma County Sheriff's Dep't,* 2010 U.S. Dist. LEXIS

20   111193 (Cal. N. D. 2010; *Clouthier v. County of Contra Costa*, 591 F.3d 1232,

21   1249, 1251 (9th Cir. 2010).

22        Here, the internal emails illustrate that the county knew that publicly

23   admitting CPMG was terminated for cause, due to their non-existent training and

24   supervising, would put the county in hot water as they are the contracting and

25   supervising agency.  This is post-event evidence proving the existence of the

26   county's inadequate prevention program, as well as prove of notice and deliberate

27   indifference.  The emails also admit that the county knew it had a problem with

28   suicide prevention, and that its training program was inadequate and outdated.

E. _Authentication and Foundation_

Both Dr. Joshua and Dr. Mannis are included in Plaintiffs' witness list.  Dr. Joshua will be called to authenticate and lay proper foundation for his emails, and the emails of his direct subordinates.  Notably, typically the county and Plaintiffs stipulate to authenticity of produced documents.  The county did not object to Exhibit 46.

## III.

## THE EMAIL CHAIN AND TERMINATION FOR NOTICE ARE NOT OVERLY PREJUDICIAL

CPMG argues, "The admission of evidence that the county contemplated 'for cause' termination or was otherwise critical as to the quality of CPMG providers will only serve to confuse the issues and mislead the jury." (Motion [Dkt. 176], 10:20-22.)  While CPMG may not like it, this evidence is highly relevant to Plaintiffs' _Canton_ claims because <u>if</u> the county was critical as to the quality of care prior to Heron Moriarty's suicide yet chose not address the issue,  that is direct proof of notice on the part of the county.

CPMG argues that a certain portion of the documents that directly addresses the preventability of Heron Moriarty's suicide is misleading and highly prejudicial but CPMG does not explain why it is misleading or prejudicial.  It is only "misleading" because both CPMG and the County claim there was no wrongdoing by Daniels and Lissaur; but, behind closed doors the county was blaming Daniels, Lissaur, and CPMG for Heron Moriarty's suicide.

As for the other emails referencing previous inmate suicides, those emails establish a pattern (and notice of) a pre-existing pattern of preventable and foreseeable suicides.

Without these documents, Plaintiffs do not have any other evidence illustrating _**direct**_ notice and admission that the county knowingly maintained an

/ / /

6

inadequate suicide prevention policy.  Exclusion of this evidence would be damming to Plaintiffs' *Canton* claims.

## IV.

## **THE GIRTH OF EMAILS**

Plaintiffs are mindful that the focus of this opposition is the relevancy of the internal emails to the claims alleged against CPMG and Daniels.  In response, Plaintiffs contend the relevancy of Exhibit 46 is to their *Canton* claims.  With that said, Plaintiffs acknowledge that volume of emails contained in Exhibit 46 is daunting.  If this Court requests, Plaintiffs will review Exhibit 46 for only those emails Plaintiffs will certainly rely on.

## V.

## **CONCLUSION**

As argued above, Exhibit 46 is Plaintiffs' only pieces of evidence illustrating notice and admission on the part of the county.  It is relevant and relied on to prove notice, not the truth of the matter.  Accordingly, Defendants' motion should be denied.

MORRIS LAW FIRM, APC

Dated: June 1, 2020                    By: __s/ Christopher S. Morris_____
                                       Christopher S. Morris, Esq.
                                       Danielle R. Pena, Esq.
                                       Attorney for Plaintiffs

OPPOSITION TO DANIELS AND CPMG MIL #11                    3:17-cv-01154-LAB-AGS