Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:  (619) 826-8065

Attorneys for Michelle Moriarty, as
Successor in Interest and *Guardian Ad Litem*
to Alexandria, Elijah and Eternity Moriarty

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the ESTATE OF HERON MORIARTY and as GUARDIAN AD LITEM to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No.: 3:17-cv-01154-LAB-AGS<br><br>**EX PARTE MOTION FOR LEAVE TO:**<br><br>1. **TAKE MS. WERNER'S DEPOSITION**<br>2. **ADD MS. WERNER TO THE PTO WITNESS LIST; AND**<br>3. **COMPEL DEFENDANTS TO PRODUCE MS. WERNER'S RECORDED STATEMENTS**<br><br>Magistrate:  Hon. Andrew G. Schopler<br>Judge:        Hon. Larry A. Burns |

1

1

**TABLE OF CONTENTS**

2   I. INTRODUCTION ..................................................................................... 4

3   II. GOOD CAUSE EXISTS FOR PLAINTIFFS TO TAKE MS. WERNER'S

4   DEPOSITION ............................................................................................ 6

5       *A.    Plaintiffs Were Diligent in Their Pursuit of Discovery* ................ 7

6       *B.    Plaintiffs Were Diligent in Filing this Motion* ............................ 9

7   III. DEFENDANTS SHOULD BE ORDERED TO PRODUCE MS. WERNER'S

8   RECORDED STATEMENTS .................................................................... 10

9   IV. MS. WERNER SHOULD BE ADDED TO PLAINTIFFS' WITNESS LIST ......

10  ................................................................................................................. 11

11  V. THE COUNTY'S CONTENTION THAT PLAINTIFFS' COUNSEL SHOULD

12  NOT HAVE SPOKEN TO MS. WERNER IS A DISTRACTION BOMB THAT

13  SHOULD NOT BE GIVEN CONSIDERATION ...................................... 12

14  VI. CONCLUSION .................................................................................... 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Byrd v. Guess*

   137 F.3d 1126 (9th Cir. 1998) ........................................................ 11

*Fresno Rock Taco, LLC v. Nat'l Surety Corp.*

   2014 U.S. Dist. LEXIS 58085 (E.D. Cal. 2014) ........................... 11

*Germain v. Aig Domestic Claims Servs.*

   2009 U.S. Dist. LEXIS 148023 (Mon. 2009) ............................... 11

*Guzman v. Bridgepoint Educ., Inc.*

   305 F.R.D. 594 (S.D. Cal. 2015) ...................................................... 8

*Johnson v. Mammoth Recreations, Inc.*

   975 F.2d 604 (9th Cir.1992) ............................................................ 6

*Morris v. Sutton*

   2019 U.S. Dist. LEXIS 109896, *5-6 ............................................. 7

*Snider v. Superior Court*

   113 Cal.App.4th 1187 (2003) ........................................................ 14

*Terry v. Wasatch Advantage Grp., LLC*

   327 F.R.D. 395 (E.D. Cal. 2019) .................................................... 7

## RULES

California State Bar Rule of Professional Conduct 1.13 ...................... 13

California State Bar Rule of Professional Conduct 1.7 ........................ 13

California State Bar Rule of Professional Conduct 4.2 .................. 13, 15

Federal Rule of Civil Procedure 16(b) .................................................. 6

Federal Rule of Civil Procedure 16(e) ................................................ 11

# I.

## __INTRODUCTION__

Unbeknownst to Plaintiffs, and this Court, Defendants withheld the existence of a county employee that was working on the morning of May 31, 2016, the day Hereon Moriarty killed himself in his cell. This witness recalls a vastly different account of the events pertaining to Moriarty's foreseeable suicide.[1] The employee, Jeannette Werner, vehemently disputes that county employees were unaware of Moriarty's suicidal ideations. In Ms. Werner's opinion, nearly everyone working in the jail knew Moriarty was a risk of suicide. Her account of events was known to County Counsel as of March 2018, but was withheld despite on-point discovery requests propounded by Plaintiffs.

On July 13, 2020, Ms. Werner, a current county employee, contacted Morris Law Firm seeking independent counsel relating to a matter adverse to the county; namely, what she saw as the county's failure to protect inmates and its employees from the Corona Virus Pandemic. During that conversation, Ms. Werner, on her own accord, began discussing a case that had continued to haunt her – the Moriarty case. When she realized that Morris Law Firm represented the Moriarty family, she stated she was willing to publicly come forward with, and is willing to testify to, the following information relevant to this matter:

    a.    Ms. Werner is a medical records clerk for the San Diego County Sheriff's Department.

    b.    She works at Vista Detention Facility and was present on the morning of May 31, 2016.

---

[1] Pleadings in this matter have been set since March 21, 2018, and discovery cutoff in this matter was February 20, 2019. On September 24, 2019, Plaintiffs' Section 1983 claims were dismissed on summary judgment because this Court found neither Defendant Daniels nor Defendant Weidenthaler knew Moriarty was suicidal on May 31, 2016, the day Defendant Daniels recommended a safety cell and Defendant Weidenthaler rejected it based on "homicidal ideation." (Order [Dkt. 123], p. 15.) Six hours later, Moriarty killed himself.

c.    During his detainment, Moriarty's suicidal condition was well known to medical staff.  Moriarty could be heard howling throughout the jail for at least two days.  Ms. Werner was forced to plug her ears during work because Moriarty was wailing and howling like a wounded animal.

d.    On May 31, 2016, it was well known throughout the nurses' station that Moriarty was refusing medication and decompensating.

e.    Ms. Werner, along with other county employees, knew Mr. Moriarty was a high risk of suicide on May 31, 2016.

f.    On the morning of May 31, 2016, Ms. Werner was informed that Defendant Weidenthaler rejected the safety cell placement ordered by Defendant Daniels.

g.    In response, Ms. Werner immediately approached Defendant Weidenthaler.

h.    Ms. Werner asked Defendant Weidenthaler if he rejected the safety cell order.  Defendant Weidenthaler said "Yes."  In response, Ms. Werner said "Really, don't you hear him howling?  He's been howling for two days!"  Defendant Weidenthaler responded, "It's my big five.  Do you want to do the paperwork?"  Ms. Werner responded, "Yes, I can type faster than you talk, I was a certified court reporter.  He needs to be placed in the safety cell."  Defendant Weidenthaler recoiled and told Ms. Werner to "Stand down."

i.    According to Ms. Werner, based on her conversation with Defendant Weidenthaler, he unequivocally knew Moriarty was a high risk of suicide and needed to be placed in a safety cell for suicidal ideations—not homicidal ideations.

j.    The following morning, after Moriarty's death, Defendant Weidenthaler walked into Ms. Werner's office and closed the door

5

behind him.  He threatened Ms. Werner not to discuss the conversation they had regarding Moriarty. (See Declaration of Jeannette Werner ("Werner Decl."), ¶¶ 1-11.)

Since then, Ms. Werner still hears Moriarty howling in her sleep.  (See Werner Decl., ¶ 12.)  She has lived with guilt and remorse for staying quiet.  She has thought about the Moriarty family countless times.  (See Werner Decl., ¶ 12.)  Now that she is considering retirement, and because of the county's continued apathy towards inmates, Ms. Werner is intent on coming forward.

Ms. Werner's statement, if testified to, hotly disputes Defendants' entire defense that county employees were unaware Moriarty was suicidal. Based on her proffered account, Plaintiffs request leave: 1) to take Ms. Werner's deposition prior to the motion *in limine* hearing, 2) to add Ms. Werner to Plaintiffs' witness list, and 3) to compel production of any recorded statement Defendants' have relating to Ms. Werner.

## II.

## GOOD CAUSE EXISTS FOR PLAINTIFFS TO TAKE MS. WERNER'S DEPOSITION

To seek discovery after the deadlines set in the scheduling order, a party must show good cause pursuant to Federal Rule of Civil Procedure 16(b).  The "good cause" standard "primarily considers the diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992).  To establish good cause, the party seeking the modification of a scheduling order must generally show that even with the exercise of due diligence, they cannot meet the requirement of that order.  *Id*.  The prejudice to other parties, if any, may be considered, but the focus is on the moving party's reason for seeking the modification.  *Id*.

"Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were

1   not, and could not have been, foreseeable at the time of the scheduling conference

2   caused the need for amendment; and whether the movant was diligent in seeking

3   amendment once the need to amend became apparent." *Terry v. Wasatch*

4   *Advantage Grp.*, LLC, 327 F.R.D. 395, 404 (E.D. Cal. 2019); *Morris v. Sutton*,

5   2019 U.S. Dist. LEXIS 109896, *5-6.

6         *A.*    *Plaintiffs Were Diligent in Their Pursuit of Discovery*

7         Plaintiffs seek leave to take Ms. Werner's deposition.  Pursuant to this

8   Court's scheduling order, the cutoff to take depositions was February 20, 2019.

9   Despite Plaintiffs' persistent and diligent discovery efforts, Plaintiffs were unable

10  to comply with the deadline because Ms. Werner's discussion with Weidenthaler,

11  and her account of events, were concealed from Plaintiffs.  (Declaration of

12  Christopher S. Morris ("Morris Decl.), ¶ 1.)  Defendants claim that they were not

13  obligated to disclose Ms. Werner's identity in their initial disclosures because

14  Defendants did not intend on calling Ms. Werner as a witness.  (Exhibit 1.)  Ms.

15  Werner's name did not appear in any of the medical, correctional, or death-

16  investigation documents produced by the county.  (Morris Decl., ¶2.)  And, every

17  person deposed in this case, including Defendant Weidenthaler, was silent about

18  Ms. Werner's discussion with Defendant Weidenthaler.  As such, Plaintiffs had no

19  way of discovering Ms. Werner's involvement.

20        Plaintiffs contend Ms. Werner's identity was responsive to Special

21  Interrogatory No. 29, which states "During his incarceration, did anyone

22  recommend MORIARTY be placed in a safety cell.  If so, who."  Without

23  objection, the county responded, "Yes. Nurse-practitioner Daniels."  Given Ms.

24  Werner's statement, and the plain meaning of the word "recommend," the County's

25  response is incomplete, if not fraudulent, as Ms. Werner repeatedly recommended

26  Moriarty be moved to a safety cell.  (Exhibit 2.)  This response was signed by Mr.

27  Welsh three months after Ms. Werner's interview with County Counsel and was

28  never supplemented.

During meet and confer efforts pertaining to the instant motion, the county claimed Ms. Werner's identity was disclosed by Defendant Daniels.[2]  The county is referring to a screenshot of a text chain between Defendant Daniels and Deputy Johnson, wherein Defendant Daniels asks Deputy Johnson to secure her evaluation note inferring that the county would destroy it or alter it. In response, Deputy Johnson said, "I can't right now.  I'll talk to Jeanette."  (Exhibit 3.)  When asked "who is that," Defendant Daniels simply testified "an admin person."  That was the extent of Plaintiffs' knowledge.  A benign reference to "an admin person" would not put a diligent party on notice that the "admin person" had knowledge of a discussion regarding Moriarty's suicidal ideations and repeated attempts to convince Defendant Weidenthaler to save Moriarty's life – especially when Defendants have taken steps to conceal that information.  To argue that every "admin person" referenced in documents or depositions should have been noticed for deposition is disingenuous and, quite frankly, impossible.  Notably, there are over 300 names of county employees that have been referenced in documents or depositions.  (Morris Decl., ¶ 12.)

"Courts have found the non-disclosure of a witness harmful where the witness was referenced in the same litigation." *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 607 (S.D. Cal. 2015) citing *Rhodes v. Sutter Health*, 949 F. Supp. 2d at 1010 (E.D. Cal. 2013) (finding a plaintiff's non-disclosure of a witness was not harmless where, although the witness had been referenced in depositions, the defendant "was not on sufficient notice that the witness possessed information that supported plaintiff's claims or defenses such that the defendant could make an informed decision about whether to pursue discovery as to the witness.").  The same is true here, although Ms. Werner was benignly referenced as an admin person, Plaintiffs were not on sufficient notice that the admin person was involved

---

[2] The County's reliance on a muted reference to "Jeanette" in a text message does not absolve its obligation to truthfully and completely respond to Special Interrogatory No. 29.

1   in Moriarty's treatment and would have knowledge disputing the defense that

2   county employees did not know Moriarty was suicidal.

3       Accordingly, Plaintiffs were diligent in their discovery pursuits.  They should

4   not be punished—to the extent of silencing the truth—because Ms. Werner's name

5   was referenced in passing.  Nor should Defendants benefit from their concealment.

6   Not only did the county conceal Ms. Werner's identity in its disclosures, it

7   incompletely/fraudulently responded to Special Interrogatory No. 29.  But it doesn't

8   stop there.  None of the 25 percipient witnesses testified about the conversation Ms.

9   Werner had with Defendant Weidenthaler despite the conversation occurring in the

10  nurses' station with several people around.  Accordingly, Plaintiffs' ex parte motion

11  to take Ms. Werner's deposition should be granted because Plaintiffs were left in

12  the dark and could not pursue what they did not know.

13              B.      *Plaintiffs Were Diligent in Filing this Motion*

14      Plaintiffs have been diligent since the discovery of Ms. Werner's account.

15  The same day Ms. Werner came forward, Plaintiffs' counsel emailed Defendants

16  informing them that Ms. Werner came forward.  The email included a summation

17  of Ms. Werner's statement.  (Exhibit 4.)  On July 15, 2020, Plaintiffs filed a

18  supplemental pretrial disclosure adding Ms. Werner to Plaintiffs' witness list.  [Dkt.

19  262.]  Since July 15, 2020, the Parties have been meeting and conferring regarding

20  a joint motion to take Ms. Werner's deposition.

21      Because Ms. Werner's account of events is highly relevant, Plaintiffs

22  suggested that the county stipulate to a joint motion moving this court to grant leave

23  to take Ms. Werner's deposition.  Plaintiffs diligently tried to work with County

24  Counsel to file a joint motion so that the specifics of Ms. Werner's statement would

25  not be publically filed until she testified under oath.  Plaintiffs were concerned of

26  the media firestorm and the expected backlash Ms. Werner would face if her

27  account of events was publicly filed prior to her testimony being taken under oath.

28  (Morris Decl., ¶ 8.)  Plaintiffs made several attempts to file this motion jointly to

avoid such troubles; however, despite agreeing that Ms. Werner should be deposed, County Counsel was unwilling to inform the Court that it withheld Ms. Werner's identity.  Plaintiffs were unwilling to file a pleading with misleading language. (Exhibit 5; Morris Decl., ¶ 9.)  As of August 13, 2020, the parties were unable to agree to the language to be included in a joint motion. Plaintiffs filed the instant motion within 12 days.[3]

      *C.*     *Prejudice to Defendants' Should Not be Considered*

      The only prejudice that the Court should consider is the prejudice Plaintiffs' will endure if Mr. Werner continues to be silenced.  Defendants' prejudice, if any, is self-made by intentionally concealing the identity of Ms. Werner.

## III.

## DEFENDANTS SHOULD BE ORDERED TO PRODUCE MS. WERNER'S RECORDED STATEMENTS

      Piggybacking on the arguments above, Defendants should also be ordered to produce any recorded statement in its possession relating to Ms. Werner's account of events.  Had Ms. Werner's identity been disclosed during discovery, Plaintiffs would have timely requested Defendants to produce all relevant recorded statements.

      It is imperative to obtain Ms. Werner's recorded statements for two reasons. First, the recorded statements are discoverable and relevant to Plaintiffs' claims. Defendants should not be the only party that has her recorded statements that could be used to cross-examine or impeach Ms. Werner.[4]  Second, depending on what Ms. Werner said, and what County Counsel knew, their conduct in concealing Ms.

---

[3] Plaintiffs intended to file this motion last week; however Ms. Pena's father-in-law was placed on hospice on Sunday, August 16, 2020.  Ms. Pena drove to Tucson, Arizona on Monday, August 17, 2020, and did not return until Saturday, August 22, 2020. (Morris Decl. ¶ 10.)

[4] Plaintiffs' Counsel has requested the county to produce Ms. Werner's recorded statement on both occasions.  Each time, the county failed to respond.  (Exhibit 6; Morris Decl. ¶ 11.)

EX PARTE MOTION FOR LEAVE TO TAKE DEPOSITION OF WERNER    3:17-cv-01154-LAB-AGS

Werner's identity could warrant extreme sanctions.  Ms. Werner was initially interviewed in relation to another preventable suicide case, *Nishimoto v. San Diego County*, 16-cv-1974-BEN-LL.[5]  In relation to the *Nishimoto* interview, Ms. Werner told the investigator that county officials had altered documents. County Counsel concealed that information, and Ms. Werner's identity, in the *Nishimoto* case.  As the *Nishimoto* interview was ending, Ms. Werner was asked about her knowledge of Moriarty's suicide.  Ms. Werner told the investigator her account of the facts.  The investigator responded, "You're actually going to testify to that?"

Plaintiffs wish to preserve any motion for sanctions until Ms. Werner's testimony is made under the penalty of perjury and her recorded statements have been provided.  Once Plaintiffs' discover exactly what Ms. Werner told County Counsel, Plaintiffs will be better situated to request appropriate sanctions for withholding evidence and filing false, incomplete or fraudulent pleadings.

## IV.

## MS. WERNER SHOULD BE ADDED TO PLAINTIFFS' WITNESS LIST

The Final Pretrial Order may be modified "only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).  The party seeking an amendment bears the burden of establishing that the requested amendments are necessary to prevent "manifest injustice" to that party.  *Byrd v. Guess*, 137 F.3d 1126, 1132 (9th Cir. 1998); *Germain v. Aig Domestic Claims Servs.*, 2009 U.S. Dist. LEXIS 148023, *3-4 (Mon. 2009).

In *Fresno Rock Taco, LLC v. Nat'l Surety Corp.*, 2014 U.S. Dist. LEXIS 58085, *5-6 (E.D. Cal. 2014), the court held "The need for this testimony and evidence did not become clear until after Mr. Young… testified at the first trial that the City of  Fresno refused to issue permits based on the work completed."  The Court concluded amendment of the pretrial order was warranted with respect to the addition of Ms. Richard and documents from the City of Fresno."

[5] Plaintiffs' counsel also represented the Nishimoto family.

Here, adding Ms. Werner to Plaintiffs' exhibit list is the only way to prevent a manifest injustice because without her testimony the jury will not know that Defendant Weidenthaler knew Moriarty was suicidal, howling like a wounded animal, and that he threatened Ms. Werner to stay quiet. The need to add Ms. Werner as witness was not known until July 13, 2020. Two days later, Plaintiffs filed a supplemental pretrial disclosure adding only Ms. Werner to the witness list. [Dkt. 262.] Only Defendant Weidenthaler objected to the amendment based on a procedural objection. When Plaintiffs' counsel met and conferred with Defendant Weidenthaler regarding the alleged need to file a motion to amend the PTO, and where such a rule is located, Defendant Weidenthaler did not respond. (Exhibit 7.)

**V.**

### THE COUNTY'S CONTENTION THAT PLAINTIFFS' COUNSEL SHOULD NOT HAVE SPOKEN TO MS. WERNER IS A DISTRACTION BOMB THAT SHOULD NOT BE GIVEN CONSIDERATION

Instead of falling on its sword once Ms. Werner came forward, County Counsel doubled-down on its misconduct by accusing Morris Law Firm of misconduct. According to County Counsel, Morris Law Firm was precluded from speaking with Ms. Werner because she is a county employee, and is therefore a represented party. Specifically, during meet and confer discussions with County Counsel regarding the instant motion, County Counsel claimed Morris Law Firm was wrong to speak with Ms. Werner knowing she had been interviewed by County Counsel in March 2018.[6] If County Counsel had it their way, every single adverse witness that is a county employee could be interviewed, and then his/her identity concealed, and then that witness would be forever precluded from coming forward

---

[6] Even though it is of no consequence according to the applicable law and rules of ethics, Plaintiffs' counsel did not know Ms. Werner had been interviewed by County Counsel until the end of the second discussion with Ms. Werner. Following the second discussion with Ms. Werner, Plaintiffs' counsel saw it prudent to help Ms. Werner retain independent counsel that could represent her best interests. Since then, Plaintiffs' counsel has not had substantive conversations with Ms. Werner.

as she is a "represented" party and any adverse lawyer would be forbidden to speak with him/her.  Inculpatory evidence could then be forever shielded from discovery and witnesses possessing that evidence would be prohibited from seeking independent counsel.  That is not the law.

Instead, the law does, in fact, prohibit the county from representing Ms. Werner in the first place.  Under California State Bar Rule of Professional Conduct 1.13, an attorney representing an organization, as County Counsel does, must conform his/her representation to the ideal that the organization itself, and not an individual, is the client.  Rule 1.13 does allow for the dual representation of an organization and an individual by a single attorney but only if that representation complies with Rule 1.7 which strictly forbids an attorney to represent clients with adverse interests.  This is why in this case Mr. Weidenthaler is being represented by Mr. Kutyla.

Ms. Werner came forward to discuss her concerns about the county workplace and the county's failure, in her opinion, to protect inmates and its employees from infection.  On this issue, there can be no dispute that Ms. Werner was adverse to the county and was entitled to seek individual representation. During that discussion, she began discussing Moriarty and began voluntarily disclosing damaging information related to the Moriarty case.  Ms. Werner had already been told to "stand down" on Moriarty, but her conscious would not allow her to remain silent forever.  And her need to clear the record is strictly adverse to the county's desire to conceal this information.

In the lead up to this motion, County Counsel has taken the position that Morris Law Firm violated California Rule of Professional Conduct 4.2 (formerly Rule 2-100) which prohibits a lawyer from communicating with "a current employee, member, agent, or other constituent of the organization, if the subject of the communication is any act or omission of such person in connection with the

/ / /

matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability."

In *Snider v. Superior Court,* 113 Cal.App.4th 1187, 1197–1198 (2003), the court concluded that this rule would only prohibit a lawyer from contacting employees that 1) he/she knew were represented and 2) were capable of binding the entity either through their own misconduct or because they were of capable, or possessed the authority, to speak on behalf of the organization.  In that case, an attorney interviewed two current employees of an organization.  The court reasoned:

> We conclude that there was no violation of Rule 2-100 as the contacted employees were not "represented parties" within the scope of that rule as (1) they were not "officer[s], director[s] or managing agent[s]" of the organization;(2) the subject matter of the communications was not an act or omission of the employees that could be binding or imputed to the organization; and (3) they were not employees whose statements might constitute admissions on behalf of the organization. We further conclude that if the employees were subject to rule 2-100, the court still erred in ordering the disqualification of Larabee as the evidence did not show that he had actual knowledge the employees were represented parties. (*Id.*)

In this case, Ms. Werner is a medical records clerk.  She is not a supervisor or director.  She has not been involved in this matter to date and does not supervise, direct, or regularly consult with County Counsel.  (Werner Decl., ¶ 3.)  She has no authority to obligate the county in respect to this lawsuit and lacks the authority to bind the county legally.  In fact, County Counsel has, incredibly, taken the position that because Ms. Werner lacked the authority to "recommend" a safety cell, they were under no obligation to disclose her identity in response to Special Interrogatory No. 29.  The county cannot now claim she has the authority to obligate or bind the county legally.  In addition, Ms. Werner's conduct does not create liability for the county – in fact just the opposite is true.  Had others acted as Ms. Werner did, Moriarty would still be alive.  Her candid recommendation to house Moriarty in a safety cell cannot/will not be imputed to the county for

purposes of civil or criminal liability because Ms. Werner acted appropriately. Accordingly, Ms. Werner does not have the necessary relationship to the county in order to deem her "represented" under California Rule of Professional Conduct 4.2.

In addition, there was no actual knowledge that Ms. Werner was represented by the county because she is not represented by County Counsel, nor could she be as outlined above. But even if she was, Rule 4.2, Note 5, explicitly allows for a known represented party to contact an independent lawyer for the purposes of seeking legal advice. Rule 4.2 Note 5 reads, "This rule does not prohibit communications initiated by a represented person seeking advice or representation from an independent lawyer of the person's choice."

Finally, County Counsel will no doubt argue that once Ms. Werner indicated that she had been interviewed, Mr. Morris knew she was "represented." This argument is nonsensical. First, Ms. Werner had been interviewed as part of the *Nishimoto* case, not *Moriarty*. Second, Ms. Werner was interviewed by a county investigator, not a lawyer from County Counsel. But even if a lawyer had been present, simply interviewing a witness does not ipso facto create an attorney client relationship, especially when that witness did not voluntarily reach out to the interviewing lawyer but was compelled to speak as part or her employment. But even if a compelled employee interview could have conceivably created an attorney client relationship, in this case, given the adverse nature of that relationship, no such relationship could actually be known to Plaintiffs' counsel.

Lastly, as set forth in the Declarations of Ms. Werner and Mr. Morris, this was a rapidly unfolding conversation. Ms. Werner had no idea that Mr. Morris was representing the Moriarty family. Ms. Werner quickly downloaded her most salient recollections. It was cathartic for her. She remains haunted by what she saw and heard. It was not until the end of a second conversation that Ms. Werner showed Mr. Morris an email from a county investigator requesting that she make herself available for an interview even though she "had already given a statement about

1   Moriarty in the context of Nishimoto." Ms. Werner told Mr. Morris that when she

2   had been interviewed as part of the *Nishimoto* investigation in 2018 she also told

3   the county investigator about Moriarty. Following the second conversation, Mr.

4   Morris took efforts to assist Ms. Werner in procuring independent counsel to assist

5   her in the interview process and has had limited contact with her since. (Werner

6   Decl., ¶ 16; Morris Decl., ¶ 4.)

**VI.**

**CONCLUSION**

9       Plaintiffs respectfully request that it be given the opportunity to take Ms.

10   Werner's deposition. While Ms. Werner has relayed some of the salient facts

11   regarding her recollections pertaining to the circumstances surrounding Moriarty's

12   death, there are many gaps that still need to be filled in – for all parties. Given the

13   accusations being made by the county, and in light of its conduct towards Ms.

14   Werner, a deposition will provide a controlled environment in which all parties can

15   freely receive and examine this information. In that vein, the notes and/or

16   transcripts of Ms. Werner's two interviews by county investigators should also be

17   produced.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated:  August 27, 2020          s/ Christopher S. Morris
Christopher S. Morris, Esq.
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq.
dpena@morrislawfirmapc.com
Attorneys for Plaintiffs Michelle Moriarty, as
Successor in Interest and *Guardian Ad Litem* to
Alexandria, Elijah and Eternity Moriarty

# EXHIBIT 1

## Leanna Pierce

**Subject:**                          FW: email 1

**From:** Welsh, Christopher [mailto:Christopher.Welsh@sdcounty.ca.gov]
**Sent:** Friday, July 31, 2020 1:29 PM
**To:** Chris Morris <cmorris@morrislawfirmapc.com>; Danielle Pena <dpena@morrislawfirmapc.com>
**Cc:** Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>
**Subject:** Moriarty - Ms. Werner and witness contact issues.

Ms. Pena & Mr. Morris:

The purpose of this email is to respond to your email dated July 23, 2020 regarding Jeanette Werner and to follow up on our conversation regarding the same that occurred this Monday, July 27, 2020. We agreed to get back to you by today, July 31, 2020.

### Werner's Deposition & Court Permission

The County will not oppose your efforts to obtain Court permission depose Ms. Werner. As you know, any such deposition requires permission from the court because discovery in this case was closed long ago. If you would like us to join in a motion on this issue, please refrain from including any inflammatory accusations or statements about the County or Sgt. Weidenthaler. Telling the Court that Ms. Werner has been crying every day over this case, or fears retaliation of some sort from somebody, does not add to the basis for taking her deposition. The motion should state that she may have facts or information about the day Moriarty killed himself, and should make it clear that while her identity has been known for two years, Plaintiffs recently learned that she may have significant information. Although we do not oppose the effort to take this deposition, we will respond to any false or misleading accusation plaintiffs put in their request for the deposition. In addition, even if the Court allows this deposition, we will still object to any effort to use Ms. Werner at trial.

### Rule 26 Obligations

First, in your email and during our call, you accused us of "unconscionable conduct" for purportedly failing to disclose Ms. Werner's name in the County's initial disclosure. This accusation is without merit. As you know, disclosure requirements in this matter are governed by FRCP Rule 26. Under that rule, a party is obligated to disclose "each individual likely to have discoverable information--along with the subjects of that information--**that the disclosing party may use** to support its claims or defenses, unless the use would be solely for impeachment" FRCP rule 26(a)(1)(A)(i) (emphasis added). "Rule 26 was amended in 2000 with the explicit purpose of 'narrow[ing]' a party's disclosure obligation 'to cover only information that the disclosing party may use to support its position.'" *Thompson v. Gonzales*, 2016 WL 5404436, at *3, fn. 4. As such, "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." Fed.R.Civ.P. 26 Advisory Committee Notes, 2000 Amendment (emphasis added); see also *J & M Associates, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 2008 WL 5102246, at *1. In short, the County was under no obligation to disclose Ms. Werner.

In addition, plaintiffs' claim that they were unaware of Ms. Werner's existence connection to the case is incorrect. Ms. Werner's name was first disclosed to plaintiffs in August of 2018, when Defendant Amanda Daniels produced text messages that included Ms. Werner name. Then, Deputy Guillory was asked in her deposition about Ms. Werner and provided her last name. This was almost two years ago, and several months before the close of discovery in this case. Those text message not only revealed Ms. Werner's name; they also provided some context about her involvement. While you may assert that you did not know Ms. Werner had her own issues with Sgt. Weidenthaler,

1

Plaintiffs cannot now claim ignorance of her identity and of the fact that she had some connection with the Moriarty events.

## Attorney-Client Privilege & Rules of Professional Conduct

What is troubling is your decision to speak with Ms. Werner about this case and the Nishimoto case knowing that she is a County employee and had previously spoken to County Counsel about these cases. Your email unequivocally admits that Mr. Werner told you that she had been interviewed by County Counsel and our investigator. Despite that acknowledgment, you pressed forward and invaded what you knew to be attorney-client privileged communications. You went even further to disrupt our communications with Ms. Werner by instructing her to get personal counsel and expressly referring to attorneys. You essentially advised a County employee who had been in contact with County Counsel not to talk to or cooperate with County Counsel regarding the Moriarty case. This will not be tolerated.

We are not making any blanket assertion that every single County employee under any circumstance is covered by the attorney-client privilege. However, under these particular circumstances, our communications with Ms. Werner were covered by the privilege. We are not even suggesting that you are not entitled to Ms. Werner's percipient knowledge. But the way you went about obtaining that knowledge is not appropriate. Every other County witness in this case has been contacted through County Counsel, and we set up depositions at your request. This is what should have been done here.

## Whistleblower

You have described Ms. Werner as a "whistleblower;" however, I see no indication that she has engaged in any protected activity that would implicate the whistleblower rules under relevant law. My much like your, Rule 26 accusation, your whistleblower characterization seems to be predicated on an incomplete reading or misunderstanding of the applicable law.

We wish to avoid any unnecessary motion work where possible. To that end, we are open to further discussions on this issue.

*Christopher J. Welsh*
**SENIOR DEPUTY COUNTY COUNSEL**
**OFFICE OF COUNTY COUNSEL**
**1600 PACIFIC HIGHWAY, ROOM 355**
**SAN DIEGO, CA 92101**
**(619)557-4039**

2

# EXHIBIT 2

THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By CHRISTOPHER WELSH, Senior Deputy (State Bar No. 120766)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 557-4039; Fax: (619) 531-6005
E-mail: christopher.welsh@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Dr. Alfred Joshua,
Nurse Jaime Preechar, Deputy Luis Escobar, Deputy Sean Dwyer,
Lt. Rob Mitchell (Ret), and Captain Edwin Schroeder

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the Estate of HERON MORIARTY and as Guardian Ad Litem to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY,<br><br>       Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive,<br><br>       Defendants. | No. 17cv1154-LAB(AGS)<br><br>COUNTY OF SAN DIEGO'S RESPONSES TO PLAINTIFF MICHELLE MORIARTY'S SPECIAL INTERROGATORIES, SET SEVEN |

PROPOUNDING PARTY:    Plaintiff, MICHELLE MORIARTY

RESPONDING PARTY:    Defendant, COUNTY OF SAN DIEGO

SET NUMBER:    SEVEN (7)

Defendant County of San Diego ("Responding Party") hereby responds to Plaintiff's Seventh Set of Interrogatories as follows:

## PRELIMINARY STATEMENT

All the following responses are based solely upon such information and documents that are presently available to and specifically known to Responding Party. Further, these responses are made without prejudice to Responding Party's right to supplement or

17cv1154-LAB(AGS)

1  amend these responses in the event that information previously available to Responding

2  Party may have been omitted by oversight, inadvertence, or good faith error or mistake.

3       Except for the facts explicitly stated herein, no incidental or implied admissions are

4  intended.  Responding Party does not waive any claims or potential claims in this

5  litigation.

6  **SPECIAL INTERROGATORY NO. 29:**

7       During his incarceration, did anyone recommend MORIARTY be placed in a

8  safety cell. If so, who.

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 29:**

10       Yes.  Nurse-practitioner Daniels.

11  **SPECIAL INTERROGATORY NO. 30:**

12       During his incarceration, did anyone recommend MORIARTY be placed in

13  the PSU. If so, who.

14  **RESPONSE TO SPECIAL INTERROGATORY NO. 30:**

15       No.

16  **SPECIAL INTERROGATORY NO. 31:**

17       Who was involved in the decision not to place MORIARTY into a safety

18  cell, as recommended by Nurse Daniels.

19  **RESPONSE TO SPECIAL INTERROGATORY NO. 31:**

20       Sgt. Weidenthaler.

21  **SPECIAL INTERROGATORY NO. 32:**

22       Who was involved in the decision not to place MORIARTY in the PSU, as

23  recommended by Dr. Goldstein.

24  **RESPONSE TO SPECIAL INTERROGATORY NO. 32:**

25       Objection.  This interrogatory assumes facts and cannot be answered as currently

26  phrased.

27  ///

28  ///

-2-

17cv1154-LAB(AGS)

**SPECIAL INTERROGATORY NO. 33:**

If MORIARTY was going to be transferred to Tri-City on a 5150 hold after his release from VDF, why was MORIARTY not placed in the PSU once that determination was made.

**RESPONSE TO SPECIAL INTERROGATORY NO. 33:**

Objection. This interrogatory calls for speculation and assumes facts. Without waiving said objections the County responds: The County is informed and believes the determination regarding a 5150 hold was made by a non-County mental health professional, CPMG's Dr. Lissaur, who kept Moriarty in Ad Seg housing. The decision not to contact Central Jail about placing Moriarty in the PSU was made at the multidisciplinary meeting by non-County mental health professional – CPMG's Nurse-practitioner Daniels, who indicated Moriarty should stay at VDF.

**SPECIAL INTERROGATORY NO. 34:**

At the time of MORIARTY's death, assuming a contract psychiatrist/ psychiatric nurse recommends an inmate be placed in the PSU or safety cell, describe in detail (including but not limited to name, title, role, and contact information) who at VDF has the ability to approve or deny that recommendation.

**RESPONSE TO SPECIAL INTERROGATORY NO. 34:**

Objection. This interrogatory is vague, ambiguous, compound, assumes facts, is an incomplete hypothetical and calls for speculation. Without waiving said objections, the County responds: No recommendation was made by CPMG mental health professionals for placement of Moriarty in the PSU. At the time Nurse-practitioner Daniels recommended Safety Cell placement for homicidal ideation, Stg. Weidenthaler denied the recommendation.

**SPECIAL INTERROGATORY NO. 35:**

In connection with SDSO 000558, what role did William Nagy, Kevin McNeely, and Arnold Fajayan have in determining whether MORIARTY should be sent to Tri-City on a 5150?

- 3 -

1  **RESPONSE TO SPECIAL INTERROGATORY NO. 35:**

2      Objection. This interrogatory is vague, ambiguous, compound, assumes facts, is

3  an incomplete hypothetical and calls for speculation. Without waiving said objections,

4  the County responds: No role.

5  **SPECIAL INTERROGATORY NO. 36:**

6      Identify and describe in detail (including but not limited to name, title, role in

7  determination as it pertains to MORIARTY and contact information) the attendees

8  of the Multidisciplinary Group Meeting that took place on May 31, 2016, as

9  referenced on SDSO 000560.

10  **RESPONSE TO SPECIAL INTERROGATORY NO. 36:**

11      Objection. This interrogatory calls for speculation, is overly broad and vague and

12  ambiguous. Without waiving said objections, the County responds:

13      Arnold Fajayan is a supervising nurse at VDF. He prepared information for the

14  group to review regarding several inmates and he attended the meeting.

15      Dr. Goldstein had retired from his medical position, but was asked to facilitate this

16  meeting in a non-medical role and prompt discussion.

17      Captain Schroeder attended the meeting but did not make any medical decisions or

18  cell placement decisions regarding Mr. Moriarty.

19      Lt. Mitchell attended the meeting but did not make any medical decisions or cell

20  placement decisions regarding Mr. Moriarty.

21      Lt. McNeely attended the meeting but does not recall making any medical

22  decisions or cell placement decisions regarding Mr. Moriarty.

23  **SPECIAL INTERROGATORY NO. 37:**

24      What was the purpose and motivation behind the implementation of the Pilot

25  Program?

26  **RESPONSE TO SPECIAL INTERROGATORY NO. 37:**

27      To allow the intake nurses at Central Jail to admit arrestees without requiring them

28  to first be transported to CDF.

-4-

17cv1154-LAB(AGS)

1  **SPECIAL INTERROGATORY NO. 38:**

2      Who is the leading official that is responsible for the implementation of the

3  Pilot Program?

4  **RESPONSE TO SPECIAL INTERROGATORY NO. 38:**

5      Dr. Alfred Joshua.

6  **SPECIAL INTERROGATORY NO. 39:**

7      Under what criteria can a correctional deputy overrule a housing

8  recommendation from a psychiatrist?

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 39:**

10     Objection. This interrogatory is vague, ambiguous, overly broad, is an incomplete

11  hypothetical and is not calculated to lead to the discovery of admissible evidence.

12  Without waiving said objections, the County responds: The CPMG psychiatrist who

13  evaluated Mr. Moriarty at VDF, Dr. Lissaur, did not recommend a change in Mr.

14  Moriarty's housing.

15  DATED: July 9, 2018                THOMAS E. MONTGOMERY, County Counsel

16

17                                     By: _____
                                            CHRISTOPHER WELSH, Senior Deputy
18                                     Attorneys for Defendants County of San Diego,
                                       Dr. Alfred Joshua, Nurse Jaime Preechar,
19                                     Deputy Luis Escobar, Deputy Sean Dwyer,
                                       Lt. Rob Mitchell (Ret) and Captain Edwin Schroeder

20

21

22

23

24

25

26

27

28

17cv1154-LAB(AGS)

1    **VERIFICATION**

2    I, ROBERT FAIGIN, declare that I am Director of the Legal Affairs Unit of the

3    San Diego County Sheriff's Department; that I am authorized to and do execute this

4    Verification for and on behalf of said defendant; that I have read the foregoing

5    **COUNTY OF SAN DIEGO'S RESPONSES TO PLAINTIFF MICHELLE**

6    **MORIARTY'S SPECIAL INTERROGATORIES (SET SEVEN),** and know the

7    contents thereof, and certify that upon information and belief, I believe them to be true.

8    I declare under penalty of perjury under the laws of the State of California that the

9    foregoing is true and correct.

10   Executed on this 5th day of July, 2018, at San Diego, California.

11

12

13   ROBERT FAIGIN
     Director, Legal Affairs Unit

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Michelle Moriarty, et al. v. County of San Diego, et al.; U.S. District Court Case No. 17-cv-1154-L(AGS)

*Michelle Moriarty, etc., et al. v. County of San Diego, et al.;*
USDC No. 17-cv-1154-LAB(AGS)

## DECLARATION OF SERVICE BY MAIL

I, Joy M. Nagal, declare: I am over the age of eighteen years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California where the mailing occurs; and my business address is: 1600 Pacific Highway, Room 355, San Diego, California.

I further declare that I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

On July 10, 2018, I caused to be served the following document(s): COUNTY OF SAN DIEGO'S RESPONSES TO PLAINTIFF MICHELLE MORIARTY'S SPECIAL INTERROGATORIES, SET SEVEN by placing a true copy of each document in a separate envelope addressed to each addressee, respectively, as follows:

## SEE ATTACHED SERVICE LIST

I then sealed each envelope and, with the postage thereon fully prepaid, I placed each for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 10, 2018, at San Diego, California.

_____
Joy M. Nagal

*Michelle Moriarty, etc., et al. v. County of San Diego, et al.*;
USDC No. 17-cv-1154-LAB(AGS)

## SERVICE LIST

| | |
|---|---|
| Christopher S. Morris, Esq.<br>Danielle R. Pena, Esq.<br>Chanell A. Kachi, Esq.<br>MORRIS LAW FIRM APC<br>501 West Broadway, Suite 1480<br>San Diego, California 92101<br>Tel:  (619) 826-8060;<br>Fax: (619) 826-8065<br>Email: cmorris@morrislawfirmapc.com;<br>dpena@morrislawfirmapc.com;<br>ckachi@morrislawfirmapc.com | Attorneys for Plaintiffs<br>MICHELLE MORIARTY, as Successor<br>in Interest and Guardian Ad Litem to<br>ALEXANDRIA MORIARTY,<br>ELIJAH MORIARTY, and<br>ETERNITY MORIARTY |
| Joseph T. Kutyla, Esq.<br>10620 Treena Street, Suite 230<br>San Diego, California 92131-1140<br>Tel:  (858) 345-9560<br>Email:  jtklaw@outlook.com | Attorney for Defendant DALE<br>WEIDENTHALER |
| Jeffrey S. Doggett, Esq.<br>Lauren E. Hardisty, Esq.<br>LOTZ, DOGGETT & RAWERS, LLP<br>101 West Broadway, Suite 1110<br>San Diego, CA 92101<br>Tel:  (619) 233-5565<br>Fax: (619) 233-5564<br>Email:  jdoggett@ldrlaw.com,<br>lhardisty@ldrlaw.com | Attorneys for Defendants<br>CORRECTIONAL PHYSICIANS<br>MEDICAL GROUP INC. (sued and<br>served as CORRECTIONAL<br>FACILITIES MANAGEMENT<br>GROUP) and AMANDA DANIELS |
| Robert W. Harrison, Esq.<br>Marty B. Ready, Esq.<br>WILSON, ELSER, MOSKOWITZ,<br>  EDELMAN & DICKER LLP<br>401 West A Street, Suite 1900<br>San Diego, CA 92101<br>Tel:  (619) 321-6200<br>Fax: (619) 321-6201<br>Email:<br>Robert.harrison@wilsonelser.com,<br>Marty.ready@wilsonelser.com | Attorneys for Defendant<br>RALPH LISSAUR, M.D. |

# EXHIBIT 3

🔲 📷 ∞ 👤 📺 🛡 📱 ⋯   ⚡ 📶 📶 85% 🔋 10:45 AM

⟨   **Johnson**                    📞   🔍   ⋮

Tuesday, May 31, 2016

(J)   Sorry for the lateness. Just
      heads up. Moriarty killed
      himself tonight.
                                        11:42 PM

(J)   You saw him today?   11:43 PM

                    11:44 PM  Yes. How

(J)   He stuffed his thirty down his
      throat and choked

      I heard you had recommended
      safety cell but we're overruled?
                                        11:45 PM

Omg. Thank you for letting
me know

                          11:45 PM  Yes

            11:46 PM  I asked but sergeant said no

                    11:47 PM  He denied si

(J)   This was Nishimoto all
      over again.
                                        11:47 PM

                                        ⌄
            11:48 PM  Ughh. I feel sick.

✛   Enter message              😊   🎙

SDSO 001041

   ⚡ 📷 📶 85% 🔋 10:45 AM

‹ **Johnson**      📞  🔍  ⋮


11:48 PM

(J) Yea apparently he ate his shirt
but you could see anything
when they are under those two
thick blankets                          11:49 PM

(J) It looks bad cause tiger had
already set it.

Rigormortis   11:51 PM


11:51 PM

(J) Yea this one is gonna cost
the county                              11:52 PM

Wednesday, June 1, 2016

Do you have access to my note?
Can you print it?                       
12:36 AM

I put the safety cell was
discussed. I don't want someone        
getting rid of it
12:37 AM

(J) I can't right now. I'll talk to
jeanette when she come in and
have her get it.                        ˅
                                        1:...

➕   Enter message              😮  

SDSO 001042

📱 📷 ∞ ⋌ 🖼 ⊛ 🖼 ⋯ ✳ 📷 📶 85% 🔋 10:45 AM

**‹  Johnson**        📞  🔍  ⋮

(J) I can't right now. I'll talk to jeanette when she come in and have her get it.
1:45 AM

(J) I read the whole history with this guy. He was supposed to go into a safety cell at CJ. Bit they were full that Thursday night so he was brought here to VDF. And I don't know why he never went into the safety cell or at least EOH.
1:55 AM

(J) Jeanette has all your notes printed and saved in her office.
5:07 AM

5:08 AM   Awesome thank u  

(J) Yep right at the bottom is your note about discussing with the sgt. About the safety cell and he said no.
5:10 AM

5:11 AM   K good

(J) Try to have a nice day. Don't worry as usual everyone else dropped the ball not you.
5:13 AM

 Thank you. I just know they need a scapegoat...  
5:14 AM        ⌄

➕   Enter message        📳  

SDSO 001043

   

**Johnson**

5:08 AM  Awesome thank u

(J) Yep right at the bottom is your note about discussing with the sgt. About the safety cell and he said no.
5:10 AM

5:11 AM K good

(J) Try to have a nice day. Don't worry as usual everyone else dropped the ball not you.
5:13 AM

5:14 AM  Thank you, I just know they need a scapegoat...  

(J) EOH is a good thing but they have to use it.
5:53 AM

(J) There was no reason he should have not gone in. I was working when he was brought in and they stuck into S5
5:54 AM

5:54 AM Who decided that 

(J) Lt banks and sgt. Estrada   6:53 AM

─┼─   Enter message    

SDSO 001044

# EXHIBIT 4

**Leanna Pierce**

| | |
|---|---|
| **From:** | Chris Morris |
| **Sent:** | Monday, July 13, 2020 5:28 PM |
| **To:** | Joseph Kutyla; Ready, Marty B.; Welsh, Christopher; Kish, Fernando; Jeff Doggett; Brian Bloodworth |
| **Cc:** | Leanna Pierce; Danielle Pena |
| **Subject:** | New Witness |

All:

Today I was contacted by a witness who works for the county who was present for some of the events at issue in this matter. Her name is Jeannette Werner. She is the medical records clerk for the Vista jail facility. In short, she will testify that she too contacted Sargent Weidenthaler right after Guillory and offered to assist in the paperwork required to have Moriarty transferred to a safety cell but, like Guillory, she was rebuffed. She remembers hearing Moriarty howling and crying in the cell and asking Weidenthaler to stop and to listen to the screams. But, just like Guillory, Sargent Weidenthaler indicated he was anxious to leave, stating that he did not want to do the paper work as he had "his big five" coming up. She will also testify that the next time she saw Sargent Weidenthaler he told her, in no uncertain terms, that she was not to tell anybody about their interaction related to Moriarty.

It should not be lost on anybody that Ms. Werner is a whistleblower and her employment status is protected. Please refrain from any attempts to dissuade her cooperation in this matter. Her courage should be applauded not condemned. Any further attempts to dissuade her will be brought before the jury. It is my intent that this email will serve as my official notice that I intend to add Ms. Werner to our witness list. Thank you.

Christopher S. Morris
Morris Law Firm, APC
501 West Broadway, Suite 1480
San Diego CA 92101
Ph: 619-826-8060
Fx: 619-826-8065

1

# EXHIBIT 5

**Leanna Pierce**

**Attachments:**                    Joint Motion for Leave to Take Depoistion of Jeannette Werner - draft.doc

**From:** Danielle Pena
**Sent:** Tuesday, August 4, 2020 5:42 PM
**To:** Welsh, Christopher <Christopher.Welsh@sdcounty.ca.gov>; Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>
**Cc:** Chris Morris <cmorris@morrislawfirmapc.com>
**Subject:** RE: Moriarty - Ms. Werner and witness contact issues & withholding evidence issues

Mr. Welsh,

Please see the attached joint motion to take Ms. Werner's deposition. This is a watered-down version of Ms. Werner's statement and excludes the details set forth in your email. I assume your agreeable? If not, let me know asap. As for the substantive contentions set forth in your July 31st email, each are addressed separately.

**Obligations to Disclose**
Ms. Werner's statement clarifies that Weidenthaler knew Mr. Moriarty needed a safety cell for suicidal ideation. Weidenthaler was told again and again that Mr. Moriarty was decompensating and at risk of suicide. In response, he told Ms. Werner "it's my big five" and to "stand down." Unlike other witnesses that had trouble recalling the events leading to Mr. Moriarty's suicide, Ms. Werner remembers it like yesterday. Her unbiased statement stands in stark contrast to the proffered defense that county employees were unaware of Mr. Moriarty's suicidal ideations. In fact, in light of Ms. Werner's statement, the County's defense is blatantly false.

Rule 26 is "rooted in fairness" and "promotes fairness both in the discovery process and at trial." *U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC.,* 268 F.R.D. 614, 624-25 (N.D. Cal. 2010); *VNUS Med. Techs. Inc. v. Biolitec,* 2010 U.S. Dist. LEXIS 70555, *7(N.D. Cal. 2010). Rule 26 does not allow a Defendant to fabricate a defense and withhold key contradicting witnesses.

Rule 26(b) obligates that any party served with written discovery requests provide truthful responses. *See* Fed. R. Civ. P. 26(g)(1). A responding party must supplement his initial disclosures and discovery responses if he learns that "in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e); *Lefever v. Nicholson,* 2012 U.S. Dist. LEXIS 158354, *5-6 (Nev. Dist. 2012.) When a party fails to disclose unfavorable information, the Court may impose sanctions on the disobedient party under Rule 37(b)(2)(C). "Rule 37(b)(2) provides more severe sanctions when a party's failure to comply with the General Order is particularly egregious." *FTC v. Hite Media Grp., LLC,* 2018 U.S. Dist. LEXIS 220830, *50 (Az. Dist. 2018.)

Accordingly, Defendants had an absolute obligation to identify Ms. Werner in response to Plaintiff's Special Interrogatory No. 29, which states "During his incarceration, did anyone recommend MORIARTY be placed in a safety cell. If so, who." Without objection, Defendant responded, "Yes. Nurse-practitioner Daniels." Given Ms. Werner's statement, the County's response is incomplete if not fraudulent as Ms. Werner repeatedly recommended Mr. Moriarty be moved to a safety cell. This response was signed by you three months *after* the interview with Ms. Werner and was never supplemented.

Defendants reliance on the text message and Guillory's deposition testimony is without merit because Ms. Werner was only mentioned in passing as a records clerk. Her discussion with Guillory and Weidenthaler (or knowledge on the subject) was withheld from Plaintiffs. "Courts have found the non-disclosure of a witness

1

harmful where the witness was referenced in the same litigation." *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 607 (S.D. Cal. 2015) citing *Rhodes v. Sutter Health*, 949 F. Supp. 2d at 1010 (E.D. Cal. 2013) (finding a plaintiff's non-disclosure of a witness was not harmless where, although the witness had been referenced in depositions, the defendant "was not on sufficient notice that the witness possessed information that supported plaintiff's claims or defenses such that the defendant could make an informed decision about whether to pursue discovery as to the witness.")

Regardless, Defendants' reliance on a muted reference to a records clerk does not absolve the obligation to truthfully and completely respond to Special Interrogatory No. 29. We will take the position that Ms. Werner's identity was withheld from the county's response to Special Interrogatory No. 29 because disclosure of the truth would be damning. We will move the Court to impose monetary and evidentiary sanctions, and any other appropriate sanctions including an instruction to the jury that the county, and County Counsel, intentionally withheld unfavorable evidence.

## Attorney-Client Privilege & Rules of Professional Conduct
Defendants' take issue that Plaintiffs' counsel spoke with Ms. Werner "knowing that she is a County employee and had previously spoken to County Counsel about these cases." Your implication is that we "knew [there] to be attorney-client privilege." Both contentions are wrong.

ABA Rule 4.2 governs Communications with Persons Represented by Counsel. The Rule states, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter..." The comment section further states, "The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has *actual knowledge* of the fact of the representation..." Moreover, The State Bar of California Rule 2-100 explicitly states that the Communication with a Represented Party rule "shall not prohibit communications initiated by a party seeking advice or representation from an independent lawyer of the party's choice."

Here, Mr. Werner called the firm seeking independent counsel for matters against the county. She came forward about what she knew regarding Mr. Moriarty and that Defendant Weidenthaler threatened her to stay quiet or lose her job. It wasn't until a second discussion that she showed us an email referencing the initial 2018 interview. Because Ms. Werner called the firm seeking independent legal counsel for matters against the county, we knew she was not represented by county counsel. Going a step further, given her statement, and desire to seek independent counsel, it is unethical for County Counsel to claim an attorney-client privilege when a county officer threatened to terminate her if she disclosed their discussion. See ABA Rule 1.7.

## California Whistleblower Act
According to California Labor Code Section 1102.5, Ms. Werner meets the criteria of a "whistleblower" because she is an employee attempting to testify at trial regarding the counties' constitutional violations. She should be afforded every protection allowable under the law.

## Other Rules Implicated By Defense Counsel's Conduct
From our perspective, your office intentionally withheld Ms. Werner's identity to avoid damning testimony that would have debunked Defendants' homicidal-ideations defense. That desire manifested in incomplete or fraudulent discovery responses and pleadings.

"Rule 26(g) requires attorneys to vouch for the completeness, truthfulness and good faith nature of disclosures, discovery requests, responses and objections. If a party violates 26(g), the rule empowers the Court to impose 'an appropriate sanction.'" *SCADIF, S.A., v. First Union Nat'l Bank*, 208 F. Supp. 2d at 1377 (S.D. Fl. 2002) (quoting Fed. R. Civ. P. 26(g)(3)); see *Malautea v. Suzuki Motor Co., LTD.*, 987 F.2d 1536, 1545 (11th Cir. 1993) ("Rule 26(g) makes the imposition of 'an appropriate sanction' mandatory if a discovery . . . response . . .

is interposed for an improper purpose.") Similarly, Rule 11 provides for various sanctions when a party files a false pleading. *McLaughlin v. Castro*, 2019 U.S. Dist. LEXIS 103679, *13 (E.D. Cal. 2019.)

Failing to truthfully or completely respond to Special Interrogatory No. 29 also implicates ABA Rule 3.3, Candor Towards the Tribunal, which prohibits a lawyer from making a false statement of fact. Your continued pursuit to represent Ms. Werner, and claim the attorney-client privilege, violates ABA Rule 1.7, which forbids a lawyer from representing a client if the representation is directly adverse to another client.

To be candid, your office's behavior is unconscionable: 1) hiding witnesses, 2) falsely responding to discovery, 3) attempting to assert dominion over county employees seeking independent counsel, 4) and frivolously attacking our firm for helping an employee seek justice. This behavior is shameful.

We have intentionally approached this matter with sensitivity in an effort to avoid a firestorm, but the filing of any motion by your office will necessarily require Plaintiffs to bring all the underlying conduct to light. Given the authority cited above, we suggest you move cautiously in what will be an unsuccessful attempt to exclude Ms. Werner's testimony.

Danielle R. Pena, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments.  Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**From:** Welsh, Christopher <Christopher.Welsh@sdcounty.ca.gov>
**Sent:** Friday, July 31, 2020 1:29 PM
**To:** Chris Morris <cmorris@morrislawfirmapc.com>; Danielle Pena <dpena@morrislawfirmapc.com>
**Cc:** Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>
**Subject:** Moriarty - Ms. Werner and witness contact issues.

Ms. Pena & Mr. Morris:

The purpose of this email is to respond to your email dated July 23, 2020 regarding Jeanette Werner and to follow up on our conversation regarding the same that occurred this Monday, July 27, 2020.  We agreed to get back to you by today, July 31, 2020.

**Werner's Deposition & Court Permission**

The County will not oppose your efforts to obtain Court permission depose Ms. Werner.  As you know, any such deposition requires permission from the court because discovery in this case was closed long ago.  If you would like us to join in a motion on this issue, please refrain from including any inflammatory accusations or statements about the County or Sgt. Weidenthaler.  Telling the Court that Ms. Werner has been crying every day over this case, or fears retaliation of some sort from somebody, does not add to the basis for taking her deposition.  The motion should state

that she may have facts or information about the day Moriarty killed himself, and should make it clear that while her identity has been known for two years, Plaintiffs recently learned that she may have significant information. Although we do not oppose the effort to take this deposition, we will respond to any false or misleading accusation plaintiffs put in their request for the deposition. In addition, even if the Court allows this deposition, we will still object to any effort to use Ms. Werner at trial.

## Rule 26 Obligations

First, in your email and during our call, you accused us of "unconscionable conduct" for purportedly failing to disclose Ms. Werner's name in the County's initial disclosure. This accusation is without merit. As you know, disclosure requirements in this matter are governed by FRCP Rule 26. Under that rule, a party is obligated to disclose "each individual likely to have discoverable information--along with the subjects of that information--**that the disclosing party may use** to support its claims or defenses, unless the use would be solely for impeachment" FRCP rule 26(a)(1)(A)(i) (emphasis added). "Rule 26 was amended in 2000 with the explicit purpose of 'narrow[ing]" a party's disclosure obligation 'to cover only information that the disclosing party may use to support its position.'" *Thompson v. Gonzales*, 2016 WL 5404436, at \*3, fn. 4. As such, "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." Fed.R.Civ.P. 26 Advisory Committee Notes, 2000 Amendment (emphasis added); see also *J & M Associates, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 2008 WL 5102246, at \*1. In short, the County was under no obligation to disclose Ms. Werner.

In addition, plaintiffs' claim that they were unaware of Ms. Werner's existence connection to the case is incorrect. Ms. Werner's name was first disclosed to plaintiffs in August of 2018, when Defendant Amanda Daniels produced text messages that included Ms. Werner name. Then, Deputy Guillory was asked in her deposition about Ms. Werner and provided her last name. This was almost two years ago, and several months before the close of discovery in this case. Those text message not only revealed Ms. Werner's name; they also provided some context about her involvement. While you may assert that you did not know Ms. Werner had her own issues with Sgt. Weidenthaler, Plaintiffs cannot now claim ignorance of her identity and of the fact that she had some connection with the Moriarty events.

## Attorney-Client Privilege & Rules of Professional Conduct

What is troubling is your decision to speak with Ms. Werner about this case and the Nishimoto case knowing that she is a County employee and had previously spoken to County Counsel about these cases. Your email unequivocally admits that Mr. Werner told you that she had been interviewed by County Counsel and our investigator. Despite that acknowledgment, you pressed forward and invaded what you knew to be attorney-client privileged communications. You went even further to disrupt our communications with Ms. Werner by instructing her to get personal counsel and expressly referring to attorneys. You essentially advised a County employee who had been in contact with County Counsel not to talk to or cooperate with County Counsel regarding the Moriarty case. This will not be tolerated.

We are not making any blanket assertion that every single County employee under any circumstance is covered by the attorney-client privilege. However, under these particular circumstances, our communications with Ms. Werner were covered by the privilege. We are not even suggesting that you are not entitled to Ms. Werner's percipient knowledge. But the way you went about obtaining that knowledge is not appropriate. Every other County witness in this case has been contacted through County Counsel, and we set up depositions at your request. This is what should have been done here.

## Whistleblower

You have described Ms. Werner as a "whistleblower;" however, I see no indication that she has engaged in any protected activity that would implicate the whistleblower rules under relevant law. My much like your , Rule 26

4

accusation, your whistleblower characterization seems to be predicated on an incomplete reading or misunderstanding of the applicable law.

We wish to avoid any unnecessary motion work where possible.  To that end, we are open to further discussions on this issue.

*Christopher J. Welsh*
**SENIOR DEPUTY COUNTY COUNSEL**
**OFFICE OF COUNTY COUNSEL**
**1600 PACIFIC HIGHWAY, ROOM 355**
**SAN DIEGO, CA 92101**
**(619)557-4039**

Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:  (619) 826-8065

Attorneys for Michelle Moriarty, as
Successor in Interest and *Guardian Ad Litem*
to Alexandria, Elijah and Eternity Moriarty

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the ESTATE OF HERON MORIARTY and as GUARDIAN AD LITEM to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive, <br><br> Defendants. | Case No.: 3:17-cv-01154-LAB-AGS <br><br> **JOINT MOTION FOR AN ORDER FOR LEAVE TO TAKE THE DEPOSITION OF JEANNETTE WERNER** <br><br> Judge:      Hon. Andrew G. Schopler |

1

1         Plaintiffs and Defendants (collectively "the Parties") through their respective

2 attorneys of record, jointly move the Court for an order allowing leave to amend the

3 scheduling order to permit the deposition of Jeannette Werner.  The Parties hereby

4 make this application on the following grounds:

5     1.     On July 13, 2020, Ms. Werner, a current county employee, contacted

6 Morris Law Firm seeking independent counsel relating to a matter adverse to the

7 county.

8     2.     Ms. Werner stated she has significant information relating to Mr.

9 Moriarty's preventable suicide.

10     3.     Ms. Werner stated she wanted to publicly come forward with, and is

11 willing to testify to, the following information:

12         a. Ms. Werner is a medical records clerk for the San Diego County

13            Sheriff's Department.

14         b. She works at Vista Detention Facility and was present on the morning

15            of May 31, 2016, the same day Mr. Moriarty committed suicide.

16         c. Ms. Werner knew of Mr. Moriarty because he could be heard

17            "howling" throughout the jail for at least two days. She also knew Mr.

18            Moriarty was refusing medication and decompensating. Ms. Werner

19            knew Mr. Moriarty was a high risk for suicide.

20         d. On the morning of May 31, 2016, when Ms. Werner was informed that

21            Defendant Weidenthlaer rejected the safety cell placement, she

22            approached Defendant Weidenthaler.

23         e. Ms. Werner stated she had a conversation with Defendant

24            Weidenthaler regarding Mr. Moriarty's suicidal ideations and his need

25            for a safety cell. She repeatedly recommended Mr. Moriarty be housed

26            in a safety cell.  Defendant Weidenthaler told Ms. Werner to "stand

27            down."

28     4. Ms. Werner's testimony may be significant because it disputes Defendants'

2

1   theory that county employees (including Defendant Weidenthlaer) were
2   unaware of Mr. Moriarty's suicidal ideations.

3   5. This information was known to Defendants as of March of 2018. Plaintiffs
4      did not know this information until Ms. Werner came forward in July of
5      2020.

6   6. Plaintiffs contend Ms. Werner's identity was responsive to Special
7      Interrogatory No. 29, which states "During his incarceration, did anyone
8      recommend MORIARTY be placed in a safety cell. If so, who." Without
9      objection, Defendant responded, "Yes. Nurse-practitioner Daniels."
10     Defendants response did not include Ms. Werner. Now that Ms. Werner has
11     come forward, her deposition should be permitted.

12  7. Plaintiffs have been diligent since the discovery of Ms. Werner. The same
13     day Ms. Werner came forward, Plaintiffs' counsel disclosed to Defense
14     counsel Ms. Werner's identity and a summation of her statement.

15  8. On July 15, 2020, Plaintiffs filed a supplemental pretrial disclosure
16     disclosing the new witness. [Dkt. 262.]

17  9. Since July 15, 2020, the Parties have been meeting and conferring regarding
18     this joint motion.

19  10. The Parties agree that Ms. Werner's deposition will not prejudice the Parties
20      and will not cause further delay because the Parties have agreed to take the
21      deposition prior to the Motion in Limine hearing.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated:  August 27, 2020          s/ Danielle R. Pena
                                 Danielle R. Pena, Esq.
                                 dpena@morrislawfirmapc.com
                                 Attorneys for Plaintiffs Michelle Moriarty, as
                                 Successor in Interest and *Guardian Ad Litem* to
                                 Alexandria, Elijah and Eternity Moriarty

Dated:  August 27, 2020          THOMAS E. MONTGOMERY, County Counsel

3

1

2
          By: s/ Christopher Welsh
          CHRISTOPHER WELSH, ESQ.
3         Attorneys for Defendants County of San Diego and
          Alfred Joshua, M.D.
4

5    Dated:  August 27, 2020          LOTZ, DOGGETT & RAWERS, LLP

6

7         By: s/ Brian Bloodworth
          BRIAN BLOODWORTH, ESQ.
          Attorneys for Defendants Correctional Physicians
8         Medical Group Inc. and Amanda Daniels

9    Dated:  August 27, 2020          LAW OFFICE OF JOSEPH T. KUTYLA

10

11        By: s/ Joseph T. Kutyla
          JOSEPH T. KUTYLA, ESQ.
          Attorneys for Defendant Dale Weidenthaler
12

13   Dated:  August 27, 2020          WILSON, ELSER, MOSKOWITZ, EDELMAN &
          DICKER LLP
14

15        By: s/ Robert W. Harrison
          ROBERT W. HARRISON, ESQ.
16        Attorneys for Defendant Ralph Lissasur, M.D.

17   Signature Certification:

18        Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative

19   Policies and Procedures Manual, I hereby certify that the content of this document

20   is acceptable to Chris Welsh, Senior Deputy County Counsel, counsel for County of

21   San Diego and Alfred Joshua; Brian Bloodworth, counsel for Defendants

22   Correctional Physicians Medical Group, Inc. and Amanda Daniels; Joseph T.

23   Kutyla, counsel for Defendant Dale Weidenthaler; and Robert W. Harrison, counsel

24   for Defendant Ralph Lissaur, M.D.; and that I have obtained Mr. Welsh, Mr.

25   Bloodworth, Mr. Kutyla, and Mr. Harrison's authorization to affix their electronic

26   signatures to this document.

27

28   Dated: August 27, 2020                    s/ Danielle R. Pena

                                        4

JOINT FOR LEAVE TO TAKE DEPOSITION OF JEANNETTE WERNER          3:17-cv-01154-LAB-AGS

1          Danielle R. Pena, Esq.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT FOR LEAVE TO TAKE DEPOSITION OF JEANNETTE WERNER          3:17-cv-01154-LAB-AGS

**Leanna Pierce**

**From:** Welsh, Christopher [mailto:Christopher.Welsh@sdcounty.ca.gov]
**Sent:** Tuesday, August 11, 2020 5:42 PM
**To:** Danielle Pena <dpena@morrislawfirmapc.com>; Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>
**Cc:** Chris Morris <cmorris@morrislawfirmapc.com>; Leanna Pierce <lpierce@morrislawfirmapc.com>; Joseph Kutyla (jtklaw@outlook.com) <jtklaw@outlook.com>
**Subject:** RE: Moriarty - Ms. Werner and witness contact issues & withholding evidence issues

Dani and Chris:

Your proposed joint motion suggests we withheld information from discovery in responding to Special Interrogatory No. 29. In making this assertion you are assuming a records clerk, Jeanette Werner, had a role in deciding/recommending whether Mr. Moriarty should be placed in a safety cell. We know from depositions that Nurse Practitioner Daniels was the one who made this recommendation, and Sgt. Weidenthaler decided not to follow her recommendation at the time it was made. Ms. Werner's claim that she also made such a recommendation in discussions with Daniels and Weidenthaler appears to be inconsistent with facts and contradicted by witnesses. We deposed both Daniels and Weidenthaler, and neither of them recalled Ms. Werner recommending that Moriarty be placed in a safety cell. Plus, you assume our office had information about Ms. Werner making this claim at the time we responded to Special Interrogatory No. 29. We did not.

Ms. Werner's name came up in texts which were made exhibits, as well as in deposition testimony, so her identity was known to all counsel long ago. She could have been deposed to see what she knew, since she was present during the key timeframe. The fact that she came to you, reportedly saying she wanted to testify in this case about discussing Mr. Moriarty's cell placement with Weidenthaler and Daniels, makes us interested in taking her deposition rather than waiting to see what she may say if she is allowed to testify at trial.

If you want us to join your motion, please take out the assumptions and accusations and just inform the Court that while her identity was known to all counsel long ago, you recently learned she may have meaningful information from working at VDF the day Mr. Moriarty killed himself, as she claims to have discussed Mr. Moriarty with Defendants Daniels and Weidenthaler. The motion must be basic, and stick to facts. Including the fact that her identity was known. It must not be based on emotional accusations, untested claims and mistaken assumptions. If you can write the motion in this manner, we will not oppose your effort to take her deposition. We'll let the Court decide if it is too late.

*Christopher J. Welsh*
**SENIOR DEPUTY COUNTY COUNSEL**
**OFFICE OF COUNTY COUNSEL**
**1600 PACIFIC HIGHWAY, ROOM 355**
**SAN DIEGO, CA 92101**
**(619)557-4039**

**Leanna Pierce**

**From:** Chris Morris
**Sent:** Tuesday, August 11, 2020 6:45 PM
**To:** Welsh, Christopher <Christopher.Welsh@sdcounty.ca.gov>; Danielle Pena <dpena@morrislawfirmapc.com>; Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>
**Cc:** Leanna Pierce <lpierce@morrislawfirmapc.com>; Joseph Kutyla (jtklaw@outlook.com) <jtklaw@outlook.com>
**Subject:** RE: Moriarty - Ms. Werner and witness contact issues & withholding evidence issues

Chris, I think we are in a bit of a dilemma here. If we state the facts as you propose, it falsely makes plaintiff look dilatory and that they ignored the existence of credible witnesses which should have been pursued. We both know this was not the case. A mention by Johnson in a text of speaking with "Jeannette" in relation to the records possibly being altered in the Nishimoto case would not have put us on notice of her testimony in Moriarty. Anything that would lead the court to believe otherwise is highly misleading. As far as your duty to disclose, your argument that Jeannette lacked the authority to "recommend" and therefore her recommendation was non-responsive to the interrogatory is not well taken. The interrogatory did not request for information related to recommendations made by those with authority to do so; instead, it simply asked for anybody who made any such recommendation. Finally, you know you have an ongoing to supplement your answers upon the discovery of any new information.

Any mischaracterizations of these facts are not only misleading, but they will likely lead to the motion being denied for lack of diligence. Understandably, you will not simply agree to our statement of facts and we cannot agree to yours. That leaves us with filing the motion, explaining what the county knew and when, or you agreeing to some version of the facts that does not falsely paint plaintiffs as dilatory. If that is impossible, maybe we should get on the phone with the magistrate and see whether we can convince him to allow this deposition to be taken?

Christopher S. Morris
Morris Law Firm, APC
501 West Broadway, Suite 1480
San Diego CA 92101
Ph: 619-826-8060
Fx: 619-826-8065

**From:** Welsh, Christopher [mailto:Christopher.Welsh@sdcounty.ca.gov]
**Sent:** Tuesday, August 11, 2020 5:42 PM
**To:** Danielle Pena <dpena@morrislawfirmapc.com>; Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>
**Cc:** Chris Morris <cmorris@morrislawfirmapc.com>; Leanna Pierce <lpierce@morrislawfirmapc.com>; Joseph Kutyla (jtklaw@outlook.com) <jtklaw@outlook.com>
**Subject:** RE: Moriarty - Ms. Werner and witness contact issues & withholding evidence issues

Dani and Chris:

Your proposed joint motion suggests we withheld information from discovery in responding to Special Interrogatory No. 29. In making this assertion you are assuming a records clerk, Jeanette Werner, had a role in deciding/recommending whether Mr. Moriarty should be placed in a safety cell. We know from depositions that Nurse Practitioner Daniels was the one who made this recommendation, and Sgt. Weidenthaler decided not to follow her recommendation at the time it was made. Ms. Werner's claim that she also made such a recommendation in discussions with Daniels and

Weidenthaler appears to be inconsistent with facts and contradicted by witnesses. We deposed both Daniels and Weidenthaler, and neither of them recalled Ms. Werner recommending that Moriarty be placed in a safety cell. Plus, you assume our office had information about Ms. Werner making this claim at the time we responded to Special Interrogatory No. 29. We did not.

Ms. Werner's name came up in texts which were made exhibits, as well as in deposition testimony, so her identity was known to all counsel long ago. She could have been deposed to see what she knew, since she was present during the key timeframe. The fact that she came to you, reportedly saying she wanted to testify in this case about discussing Mr. Moriarty's cell placement with Weidenthaler and Daniels, makes us interested in taking her deposition rather than waiting to see what she may say if she is allowed to testify at trial.

If you want us to join your motion, please take out the assumptions and accusations and just inform the Court that while her identity was known to all counsel long ago, you recently learned she may have meaningful information from working at VDF the day Mr. Moriarty killed himself, as she claims to have discussed Mr. Moriarty with Defendants Daniels and Weidenthaler. The motion must be basic, and stick to facts. Including the fact that her identity was known. It must not be based on emotional accusations, untested claims and mistaken assumptions. If you can write the motion in this manner, we will not oppose your effort to take her deposition. We'll let the Court decide if it is too late.

*Christopher J. Welsh*
**SENIOR DEPUTY COUNTY COUNSEL**
**OFFICE OF COUNTY COUNSEL**
**1600 PACIFIC HIGHWAY, ROOM 355**
**SAN DIEGO, CA 92101**
**(619)557-4039**

**Leanna Pierce**

| | |
|---|---|
| **Attachments:** | Joint Motion for Leave to Take Depoistion of Jeannette Werner - draft v2.doc |

**From:** Danielle Pena
**Sent:** Thursday, August 13, 2020 9:05 AM
**To:** Welsh, Christopher <Christopher.Welsh@sdcounty.ca.gov>
**Cc:** Chris Morris <cmorris@morrislawfirmapc.com>; Leanna Pierce <lpierce@morrislawfirmapc.com>; Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>
**Subject:** Werner - joint motion for deposition

Chris,

I am informed you spoke with (my) Chris. I have tried to re-work the language. Please see attached. This is the best I can do without misrepresenting the facts. If we cant agree to this, I will have to file something on my own. Let me know your thoughts asap. I am filing something on Monday if we don't hear back. Thanks.

Danielle R. Pena, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of this message and any attachments.  Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

1   Christopher S. Morris, Esq., SBN 163188
    cmorris@morrislawfirmapc.com
2   Danielle R. Pena, Esq., SBN 286002
    dpena@morrislawfirmapc.com
3   MORRIS LAW FIRM, APC
    501 West Broadway, Suite 1480
4   San Diego, CA 92101
    Telephone:  (619) 826-8060
5   Facsimile:  (619) 826-8065

6   Attorneys for Michelle Moriarty, as
    Successor in Interest and *Guardian Ad Litem*
7   to Alexandria, Elijah and Eternity Moriarty

8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11  MICHELLE MORIARTY, an individual,        Case No.: 3:17-cv-01154-LAB-AGS
    as Successor in Interest to the ESTATE
12  OF HERON MORIARTY and as                 **JOINT MOTION FOR AN ORDER**
    GUARDIAN AD LITEM to                     **FOR LEAVE TO TAKE THE**
13  ALEXANDRIA MORIARTY, ELIJAH              **DEPOSITION OF JEANNETTE**
    MORIARTY, and ETERNITY                   **WERNER**
14  MORIARTY,

15       Plaintiffs,                         Judge:      Hon. Andrew G. Schopler

16       v.

17  COUNTY OF SAN DIEGO, DR.
    ALFRED JOSHUA, individually, and
18  DOES 1 through 10, Inclusive,

19       Defendants.

20

21

22

23

24

25

26

27

28

                                    1

1   Plaintiffs and Defendants (collectively "the Parties") through their respective
2   attorneys of record, jointly move the Court for an order allowing leave to amend the
3   scheduling order to permit the deposition of Jeannette Werner.  The Parties hereby
4   make this application on the following grounds:

5   1.   On July 13, 2020, Ms. Werner, a current county employee, contacted
6   Morris Law Firm seeking independent counsel relating to a matter adverse to the
7   county.

8   2.   Ms. Werner stated she has significant information relating to Mr.
9   Moriarty's preventable suicide.

10   3.   Ms. Werner stated she wanted to publicly come forward with, and is
11   willing to testify to, the following information:

12   a.  Ms. Werner is a medical records clerk for the San Diego County
13   Sheriff's Department.

14   b.  She works at Vista Detention Facility and was present on the morning
15   of May 31, 2016, the same day Mr. Moriarty committed suicide.

16   c.  Ms. Werner knew of Mr. Moriarty because he could be heard
17   "howling" throughout the jail for at least two days. She also knew Mr.
18   Moriarty was refusing medication and decompensating. Ms. Werner
19   knew Mr. Moriarty was a high risk for suicide.

20   d.  On the morning of May 31, 2016, when Ms. Werner was informed that
21   Defendant Weidenthlaer rejected the safety cell placement, she
22   approached Defendant Weidenthaler.

23   e.  Ms. Werner stated she had a conversation with Defendant
24   Weidenthaler regarding Mr. Moriarty's suicidal ideations and his need
25   for a safety cell. She repeatedly recommended Mr. Moriarty be housed
26   in a safety cell.  Defendant Weidenthaler told Ms. Werner to "stand
27   down."

28   4. Ms. Werner's testimony may be significant because it disputes Defendants'

2

1  theory that county employees (including Defendant Weidenthlaer) were
2  unaware of Mr. Moriarty's suicidal ideations.

5.  This information was known to county officials as of March of 2018. The
   officials contacted Ms. Werner while investigating a separate claim against
   the county. During that interview, according to Ms. Werner, she informed
   county officials of her interactions with Defendant Weidenthaler, as detailed
   above. Mr. Welsh, lead counsel in this matter, was unaware of the statements
   made by Ms. Werner, and for that reason also agrees that Ms. Werner should
   be deposed. Plaintiffs did not know this information until Ms. Werner came
   forward in July of 2020.

6.  Plaintiffs have been diligent since the discovery of Ms. Werner. The same
   day Ms. Werner came forward, Plaintiffs' counsel disclosed to Defense
   counsel Ms. Werner's identity and a summation of her statement.

7.  On July 15, 2020, Plaintiffs filed a supplemental pretrial disclosure
   disclosing the new witness. [Dkt. 262.]

8.  Since July 15, 2020, the Parties have been meeting and conferring regarding
   this joint motion.

9.  The Parties agree that Ms. Werner's deposition will not prejudice the Parties
   and will not cause further delay because the Parties have agreed to take the
   deposition prior to the Motion in Limine hearing.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated: August 27, 2020         s/ Danielle R. Pena
                              Danielle R. Pena, Esq.
                              dpena@morrislawfirmapc.com
                              Attorneys for Plaintiffs Michelle Moriarty, as
                              Successor in Interest and *Guardian Ad Litem* to
                              Alexandria, Elijah and Eternity Moriarty

Dated: August 27, 2020         THOMAS E. MONTGOMERY, County Counsel

3

1

By: s/ Christopher Welsh
CHRISTOPHER WELSH, ESQ.
2                     Attorneys for Defendants County of San Diego and
Alfred Joshua, M.D.

3

4  Dated:  August 27, 2020      LOTZ, DOGGETT & RAWERS, LLP

5

By: s/ Brian Bloodworth
6                     BRIAN BLOODWORTH, ESQ.
Attorneys for Defendants Correctional Physicians
7                     Medical Group Inc. and Amanda Daniels

8  Dated:  August 27, 2020      LAW OFFICE OF JOSEPH T. KUTYLA

9

By: s/ Joseph T. Kutyla
10                  JOSEPH T. KUTYLA, ESQ.
Attorneys for Defendant Dale Weidenthaler
11

12  Dated:  August 27, 2020     WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
13

14                  By: s/ Robert W. Harrison
ROBERT W. HARRISON, ESQ.
15                  Attorneys for Defendant Ralph Lissasur, M.D.

16

Signature Certification:

17

      Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative
18

Policies and Procedures Manual, I hereby certify that the content of this document
19

is acceptable to Chris Welsh, Senior Deputy County Counsel, counsel for County of
20

San Diego and Alfred Joshua; Brian Bloodworth, counsel for Defendants
21

Correctional Physicians Medical Group, Inc. and Amanda Daniels; Joseph T.
22

Kutyla, counsel for Defendant Dale Weidenthaler; and Robert W. Harrison, counsel
23

for Defendant Ralph Lissaur, M.D.; and that I have obtained Mr. Welsh, Mr.
24

Bloodworth, Mr. Kutyla, and Mr. Harrison's authorization to affix their electronic
25

signatures to this document.
26

27  Dated: August 27, 2020               s/ Danielle R. Pena
                                 Danielle R. Pena, Esq.
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5

**Leanna Pierce**

**Attachments:**                    Moriarty Draft Jt Motion.docx

**From:** Welsh, Christopher [mailto:Christopher.Welsh@sdcounty.ca.gov]
**Sent:** Thursday, August 13, 2020 11:36 AM
**To:** Danielle Pena <dpena@morrislawfirmapc.com>; Chris Morris <cmorris@morrislawfirmapc.com>
**Cc:** Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>; Joseph Kutyla (jtklaw@outlook.com) <jtklaw@outlook.com>
**Subject:** Moriarty draft joint motion

Dani:

We're making progress, but we can't have some of the language you left in your draft.

We propose this wording, as it avoids side controversies over supplemental discovery responses and about the correct way to honor the attorney client privilege when a witness like Ms. Werner says she has met with County Counsel.

See if this works for you.

*Christopher J. Welsh*
**SENIOR DEPUTY COUNTY COUNSEL**
**OFFICE OF COUNTY COUNSEL**
**1600 PACIFIC HIGHWAY, ROOM 355**
**SAN DIEGO, CA 92101**
**(619)557-4039**

1   Christopher S. Morris, Esq., SBN 163188
    cmorris@morrislawfirmapc.com
2   Danielle R. Pena, Esq., SBN 286002
    dpena@morrislawfirmapc.com
3   MORRIS LAW FIRM, APC
    501 West Broadway, Suite 1480
4   San Diego, CA 92101
    Telephone:  (619) 826-8060
5   Facsimile:  (619) 826-8065

6   Attorneys for Michelle Moriarty, as
    Successor in Interest and *Guardian Ad Litem*
7   to Alexandria, Elijah and Eternity Moriarty

8

9               IN THE UNITED STATES DISTRICT COURT

10            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11   MICHELLE MORIARTY, an individual,        Case No.: 3:17-cv-01154-LAB-AGS
     as Successor in Interest to the ESTATE
12   OF HERON MORIARTY and as                 **JOINT MOTION FOR AN ORDER**
     GUARDIAN AD LITEM to                     **GRANTING LEAVE TO TAKE THE**
13   ALEXANDRIA MORIARTY, ELIJAH              **DEPOSITION OF JEANNETTE**
     MORIARTY, and ETERNITY                   **WERNER  AFTER THE**
14   MORIARTY,                                **DISCOVERY CUT-OFF**

15        Plaintiffs,                         Judge:     Hon. Andrew G. Schopler

16        v.

17   COUNTY OF SAN DIEGO, DR.
     ALFRED JOSHUA, individually, and
18   DOES 1 through 10, Inclusive,

19        Defendants.

20

21

22

23

24

25

26

27

28
                              1

Plaintiffs and Defendants (collectively "the Parties") through their respective attorneys of record, jointly move the Court for an order allowing leave to amend the scheduling order to permit the deposition of Jeannette Werner.  The Parties hereby make this application on the following grounds:

1.    On July 13, 2020, Ms. Jeannette Werner, a County of San Diego employee, contacted Plaintiffs' counsel, Morris Law Firm, seeking independent counsel relating to a matter adverse to the County.

2.    During her meeting with Plaintiffs' counsel, Ms. Werner stated she has significant information relating to Mr. Moriarty's suicide.

3.    Ms. Werner is a medical records clerk for the San Diego County Sheriff's Department.  She works at Vista Detention Facility and was present on the morning of May 31, 2016, the same day Mr. Moriarty committed suicide.   She claims to have had discussions regarding Mr. Moriarty that morning with two defendants: Sgt. Weidenthaler and Nurse-Practitioner Amanda Daniels.

4.    Ms. Werner's testimony may be significant because she says Sgt. Weidenthaler and Nurse-Practitioner Daniels were made aware of Mr. Moriarty's suicidal ideation that morning.

5.    Plaintiffs' counsel did not know Ms. Werner had information about her communications with defendants Weidenthaler and Daniels the morning of Mr. Moriarty's suicide until Ms. Werner came forward in July of 2020.

6.    Plaintiffs' counsel have been diligent since the discovery of Ms. Werner. The same day Ms. Werner came forward, Plaintiffs' counsel disclosed to Defense counsel Ms. Werner's identity and a

2

summation of her statement.

7.     On July 15, 2020, Plaintiffs filed a supplemental pretrial disclosure disclosing the new witness.  [Dkt. 262.]

8.     Since July 15, 2020, the Parties have been meeting and conferring regarding this joint motion.

9.     Counsel for the defendants agree that Ms. Werner should be deposed and join in this request.   A deposition would enable counsel to brief the Court regarding whether Ms. Werner should be allowed to testify at trial.

10.     The Parties agree that Ms. Werner's deposition will not prejudice the Parties and will not cause further delay because counsel the Parties have agreed to take the deposition prior to the Motion in Limine hearing.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated: August 27, 2020          s/ Danielle R. Pena
                                Danielle R. Pena, Esq.
                                dpena@morrislawfirmapc.com
                                Attorneys for Plaintiffs Michelle Moriarty, as
                                Successor in Interest and *Guardian Ad Litem* to
                                Alexandria, Elijah and Eternity Moriarty

Dated: August 27, 2020          THOMAS E. MONTGOMERY, County Counsel

                                By: s/ Christopher Welsh
                                CHRISTOPHER WELSH, ESQ.
                                Attorneys for Defendants County of San Diego and
                                Alfred Joshua, M.D.

Dated: August 27, 2020          LOTZ, DOGGETT & RAWERS, LLP

                                By: s/ Brian Bloodworth
                                BRIAN BLOODWORTH, ESQ.
                                Attorneys for Defendants Correctional Physicians
                                Medical Group Inc. and Amanda Daniels

3

Dated:  August 27, 2020       LAW OFFICE OF JOSEPH T. KUTYLA

By: s/ Joseph T. Kutyla
JOSEPH T. KUTYLA, ESQ.
Attorneys for Defendant Dale Weidenthaler

Dated:  August 27, 2020       WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP

By: s/ Robert W. Harrison
ROBERT W. HARRISON, ESQ.
Attorneys for Defendant Ralph Lissasur, M.D.

Signature Certification:

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Chris Welsh, Senior Deputy County Counsel, counsel for County of San Diego; Brian Bloodworth, counsel for Defendants Correctional Physicians Medical Group, Inc. and Amanda Daniels; Joseph T. Kutyla, counsel for Defendant Dale Weidenthaler; and Robert W. Harrison, counsel for Defendant Ralph Lissaur, M.D.; and that I have obtained Mr. Welsh, Mr. Bloodworth, Mr. Kutyla, and Mr. Harrison's authorization to affix their electronic signatures to this document.

Dated: August 27, 2020       *s/ Danielle R. Pena*
Danielle R. Pena, Esq.

**4**

**Leanna Pierce**

---

**From:** Chris Morris
**Sent:** Thursday, August 13, 2020 11:59 AM
**To:** Welsh, Christopher <Christopher.Welsh@sdcounty.ca.gov>; Danielle Pena <dpena@morrislawfirmapc.com>
**Cc:** Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>; Joseph Kutyla <jtklaw@outlook.com>
**Subject:** RE: Moriarty draft joint motion

So there is no way the court will go along with this as worded. This looks like it is geared to simply have the court deny it. I think we need to go it alone. We will file our motion on Friday. Thanks for the effort.

Christopher S. Morris
Morris Law Firm, APC
501 West Broadway, Suite 1480
San Diego CA 92101
Ph: 619-826-8060
Fx: 619-826-8065


**From:** Welsh, Christopher [mailto:Christopher.Welsh@sdcounty.ca.gov]
**Sent:** Thursday, August 13, 2020 11:49 AM
**To:** Danielle Pena <dpena@morrislawfirmapc.com>; Chris Morris <cmorris@morrislawfirmapc.com>
**Cc:** Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>; Joseph Kutyla <jtklaw@outlook.com>
**Subject:** RE: Moriarty draft joint motion

I think that we need to add something benign like "Although Ms. Werner's name was disclosed in discovery, her role was not, so plaintiffs' counsel did not become aware that she had discussions with Sgt. Wiedenthaler and Nurse-Practitioner Daniels until July 2020."

*Christopher J. Welsh*
**SENIOR DEPUTY COUNTY COUNSEL**
**OFFICE OF COUNTY COUNSEL**
**1600 PACIFIC HIGHWAY, ROOM 355**
**SAN DIEGO, CA 92101**
**(619)557-4039**


**From:** Welsh, Christopher
**Sent:** Thursday, August 13, 2020 11:36 AM
**To:** Danielle Pena (dpena@morrislawfirmapc.com) <dpena@morrislawfirmapc.com>; Chris Morris <cmorris@morrislawfirmapc.com>
**Cc:** Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>; Joseph Kutyla (jtklaw@outlook.com) <jtklaw@outlook.com>
**Subject:** Moriarty draft joint motion

1

Dani:

We're making progress, but we can't have some of the language you left in your draft.

We propose this wording, as it avoids side controversies over supplemental discovery responses and about the correct way to honor the attorney client privilege when a witness like Ms. Werner says she has met with County Counsel.

See if this works for you.

*Christopher J. Welsh*
**SENIOR DEPUTY COUNTY COUNSEL**
**OFFICE OF COUNTY COUNSEL**
**1600 PACIFIC HIGHWAY, ROOM 355**
**SAN DIEGO, CA 92101**
**(619)557-4039**

# EXHIBIT 6

**Leanna Pierce**

**From:** Chris Morris
**Sent:** Friday, August 21, 2020 10:23 AM
**To:** Welsh, Christopher <Christopher.Welsh@sdcounty.ca.gov>
**Cc:** Danielle Pena <dpena@morrislawfirmapc.com>
**Subject:** Moriarty

Hi Chris. Will you be making the investigator's notes and recording of Ms. Werner's interview(s) available?  Please let me know so I know how broad to make the request to the court.  Thanks.

Christopher S. Morris
Morris Law Firm, APC
501 West Broadway, Suite 1480
San Diego CA 92101
Ph: 619-826-8060
Fx: 619-826-8065

# EXHIBIT 7

**Leanna Pierce**

---

**Subject:**       FW: Activity in Case 3:17-cv-01154-LAB-AGS Moriarty v. County of San Diego et al Reply
- Other

**From:** Danielle Pena
**Sent:** Thursday, July 23, 2020 10:51 AM
**To:** Joseph Kutyla <jtklaw@outlook.com>
**Cc:** Chris Morris <cmorris@morrislawfirmapc.com>
**Subject:** FW: Activity in Case 3:17-cv-01154-LAB-AGS Moriarty v. County of San Diego et al Reply - Other

Joe,

I have scoured Burns' chamber rules and the local rules. What motion for leave are you referring to? I can't find
anything.

Honestly, if I have to file a motion I will have to detail Ms. Werner's statement regarding 1) her discussion with
Weidenthaler about Moriarty's risk of suicide and his need for a safety cell, 2) Weidenthaler's post-suicide
threat to keep her quiet, and 3) that the county (and Weidenthaler?) knew about Ms. Werner's statement as of
early 2018, yet did not disclose her as a potential witness pursuant to Rule 26. Joe, we were trying to avoid
putting that information in a public filing until we had a discussion with you and Welsh.

Either way, can you point me to the rule you're referring to in your Reply. Thanks.

Danielle R. Pena, Esq.
**MORRIS LAW FIRM, APC**
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel. (619) 826-8060
Fax. (619) 826-8065

CONFIDENTIAL NOTICE: This email message, including any attachments, is for the sole use of the intended
recipient(s) and may contain information protected by the attorney-client privilege, the attorney work product
doctrine or other applicable privileges or confidentiality laws or regulations. If you are not an intended
recipient, you may not review, use, copy, disclose or distribute this message or any of the information contained
in this message to anyone. If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of this message and any attachments. Unintended transmission shall not constitute waiver of
the attorney-client or any other privilege.

**From:** efile_information@casd.uscourts.gov [mailto:efile_information@casd.uscourts.gov]
**Sent:** Wednesday, July 22, 2020 4:06 PM
**To:** efile_information@casd.uscourts.gov
**Subject:** Activity in Case 3:17-cv-01154-LAB-AGS Moriarty v. County of San Diego et al Reply - Other

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to
this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits**

attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Southern District of California**

**Notice of Electronic Filing**

The following transaction was entered by Kutyla, Joseph on 7/22/2020 at 4:05 PM PDT and filed on 7/22/2020

| | |
|---|---|
| **Case Name:** | Moriarty v. County of San Diego et al |
| **Case Number:** | 3:17-cv-01154-LAB-AGS |
| **Filer:** | Dale Weidenthaler |
| **Document Number:** | 263 |

**Docket Text:**
**REPLY - Other re [262] Pretrial Disclosures *Objection to Plaintiff's Supplemental Pre Trial Disclosure* filed by Dale Weidenthaler. (Attachments: # (1) Proof of Service)(Kutyla, Joseph)**

**3:17-cv-01154-LAB-AGS Notice has been electronically mailed to:**

Brian T. Bloodworth    bbloodworth@ldrlaw.com

Christopher John Welsh    Christopher.Welsh@sdcounty.ca.gov, joy.nagal@sdcounty.ca.gov, liliana.gomez@sdcounty.ca.gov, Robyn.Padgett-Weingel@sdcounty.ca.gov, roxanne.phelps@sdcounty.ca.gov

Christopher S Morris    cmorris@morrislawfirmapc.com, dpena@morrislawfirmapc.com, jgillick@morrislawfirmapc.com, lpierce@morrislawfirmapc.com

Danielle Renee Pena    dpena@morrislawfirmapc.com, cmorris@morrislawfirmapc.com, jgillick@morrislawfirmapc.com, lpierce@morrislawfirmapc.com

Jeffrey Scott Doggett    jdoggett@ldrlaw.com, lhardisty@ldrlaw.com

Joseph T. Kutyla    jtklaw@outlook.com

Juan Fernando Kish    fernando.kish@sdcounty.ca.gov, az.thell@sdcounty.ca.gov, brittney.lubow@sdcounty.ca.gov, jennifer.rodriguez@sdcounty.ca.gov, nora.guerra@sdcounty.ca.gov, robyn.padgett-weingel@sdcounty.ca.gov, shelly.haight@sdcounty.ca.gov, yvonne.lopez@sdcounty.ca.gov

Marty B. Ready    marty.ready@wilsonelser.com, irene.gonzales@wilsonelser.com, sharon.villarreal@wilsonelser.com

Robert W Harrison    robert.harrison@wilsonelser.com, katelyn.kingsley@wilsonelser.com

Ronald Lenert    ronald.lenert@sdcounty.ca.gov, brittany.lubow@sdcounty.ca.gov,

jennifer.rodriguez@sdcounty.ca.gov, joy.nagal@sdcounty.ca.gov, nora.guerra@sdcounty.ca.gov, Robyn.Padgett-Weingel@sdcounty.ca.gov, shelly.haight@sdcounty.ca.gov, yvonne.lopez@sdcounty.ca.gov

**3:17-cv-01154-LAB-AGS Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=7/22/2020] [FileNumber=14580006-0] [79eca8300f2b613dc46d1931f63322236fd50713db74ccf29ca0843963736dfbc0 a6d6c9927d2c8d73ace0c441eeaac6c8c397edf1841c8bd6962447ac2877d6]]
**Document description:**Proof of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=7/22/2020] [FileNumber=14580006-1] [6c2dbe29d5601619652398fe2bd4eaafd077b53873b4058cb40aa7d4bec25e8610 7a6b2ecc505ba2194c5b49f454b3c353b209c907a02f4b9d22f60abeff82dd]]