1 | Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
2 | Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
3 | MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
4 | San Diego, CA 92101
Telephone: (619) 826-8060
5 | Facsimile: (619) 826-8065

6 | Attorneys for Michelle Moriarty, as
Successor in Interest and *Guardian Ad Litem*
7 | to Alexandria, Elijah and Eternity Moriarty

8

9 | IN THE UNITED STATES DISTRICT COURT

10 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11 | MICHELLE MORIARTY, an individual, | Case No.: 3:17-cv-01154-LAB-AGS
as Successor in Interest to the ESTATE
12 | OF HERON MORIARTY and as | **DECLARATION OF JEANNETTE**
GUARDIAN AD LITEM to | **WERNER IN SUPPORT OF EX**
13 | ALEXANDRIA MORIARTY, ELIJAH | **PARTE MOTION FOR LEAVE TO:**
MORIARTY, and ETERNITY
14 | MORIARTY, | **1. TAKE MS. WERNER'S DEPOSITION**
15 | Plaintiffs, | **2. ADD MS. WERNER TO THE PTO WITNESS LIST; AND**
16 | v. | **3. COMPEL DEFENDANTS TO PRODUCE MS. WERNER'S RECORDED STATEMENT**
17 | COUNTY OF SAN DIEGO, DR.
ALFRED JOSHUA, individually, and
18 | DOES 1 through 10, Inclusive, | Magistrate: Hon. Andrew G. Schopler
Judge: Hon. Larry A. Burns
19 | Defendants.

20

21

22

23

24

25

26

27

28

1

WERNER DECLARATION RE MOTION FOR LEAVE TO TAKE DEPOSITION     3:17-cv-01154-LAB-AGS

1  I, Jeanette Werner, declare as follows:

2  1. The facts set forth below are within my personal knowledge and belief, and if called as a witness, I will testify to the following:

3  2. I have worked for the San Diego County Sheriff's Department since August 5, 2008.

4  3. I currently work as a medical records clerk at the Vista Detention Facility. In that capacity, I was present certain days of Mr. Moriarty's detainment, including May 31, 2016. This is not a supervisory position and I am not considered management.

5  4. During Mr. Moriarty's detainment, Mr. Moriarty could be heard howling throughout the jail for at least two days. He sounded like a wounded animal crying out for help. I was forced to plug my ears during work because Mr. Moriarty's wailing and howling was extremely disturbing.

6  5. During Mr. Moriarty's detainment, it was well known throughout the nurses' station that Moriarty was refusing medication and decompensating.

7  6. Myself, and several other medical staff members, knew Mr. Moriarty was a high risk of suicide on May 31, 2016.

8  7. On the morning of May 31, 2016, I was informed by Louis Guillory that Sgt. Weidenthaler rejected the safety cell placement ordered by Amanda Daniels.

9  8. After hearing that, I immediately approached Sgt. Weidenthaler.

10  9. I asked Sgt. Weidenthaler if he rejected Amanda Daniels' safety cell order. Sgt. Weidenthaler said "Yes." In response, I said "Really, don't you hear him howling? He's been howling for two days!" Sgt. Weidenthaler responded, "It's my big five. Do you want to do the paperwork?" I said, "Yes, I can type faster than you talk, I was a certified court reporter. He needs to be placed in the safety cell." Sgt. Weidenthaler recoiled and told me to "Stand down."

///

2

10. Based on my conversation with Sgt. Weidenthaler there is no doubt in my mind that he knew Mr. Moriarty was suicidal because I mentioned it when we were arguing. There was no discussion, at any time, regarding Mr. Moriarty's homicidal ideations.

11. A few days after Mr. Moriarty's suicide, Sgt. Weidenthaler walked into my office and closed the door behind him. He said I should not talk about what had transpired to anyone.

12. Since then, I continue to hear Mr. Moriarty howling in my sleep. It has haunted me for years. I live with guilt and remorse for staying quiet and I have thought about the Moriarty family countless times.

13. But I cannot stay quiet any longer because the county continues to put inmates at risk of serious harm.

14. On July 13, 2020, I contacted Morris Law Firm to discuss my concerns about the county's failure to adequately safeguard inmates and its employees from infection of COVID-19. During this discussion, I began talking about Mr. Moriarty's suicide. I informed Mr. Morris of the facts set forth above.

15. On July 17, 2020, I met with Mr. Morris and Ms. Pena to discuss the information I stated over the phone. I brought an email with me from a county investigator requesting that I make myself available for an interview even though I "had already given a statement about Moriarty in the context of Nishimoto." At that time, I informed Mr. Morris and Ms. Pena that I was interviewed in connection with the *Nishimoto* case.

16. Following this discussion with Mr. Morris and Ms. Pena, with their assistance, I retained private counsel to represent me in this matter relating to future interviews or depositions. Since then, I have not had substantive conversations with Morris Law Firm.

17. In relation to this matter, I have been interviewed twice by county investigators. The first time was in connection with the *Nishimoto* case wherein I

1  was asked if I knew anything about Mr. Moriarty's suicide. I informed the
2  investigator of the facts set forth above. The second interview with county
3  investigators occurred on August 13, 2020.
4      18.    After staying silent for too long, I wish to be deposed and testify at
5  trial.
6      I declare under the laws of the United States of America that the foregoing is
7  true and correct under the penalty of perjury.

10  Dated: August 27, 2020                    _____
                                              Jeanette Werner