# EXHIBIT E

Dale Arthur Weidenthaler  8/29/2018

```
 1              IN THE UNTIED STATES DISTRICT COURT

 2           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3
     _____
 4   MICHELLE MORIARTY, an individual,)
     as Successor in Interest to the )
 5   ESTATE OF HERON MORIARTY and as )
     GUARDIAN AD LITEM to ALEXANDRIA )
 6   MORIARTY ELIJAH MORIARTY, and   )
     ETERNITY MORIARTY,              )
 7                                   )
              Plaintiffs,            )
 8                                   )
         vs.                         ) Case No.: 3:17-cv-
 9                                   )        01154-LAB-AGS
                                     )
10   COUNTY OF SAN DIEGO, DR. ALFRED )
     JOSHUA, individually, and DOES  )
11   1 through 10, Inclusive,        )
                                     )
12            Defendants.            )
     _____)
13

14

15      VIDEOTAPED DEPOSITION OF DALE ARTHUR WEIDENTHALER

16                   SAN DIEGO, CALIFORNIA

17                     AUGUST 29, 2018

18

19

20

21   REPORTED BY MANDY L. KERSH, CSR No. 10674

22

23

24

25
```

EXHIBIT E

Dale Arthur Weidenthaler  8/29/2018

1  associated with these movements and extractions would fall
2  on Nagy, were you disappointed that this had not been
3  handled earlier?
4      A.   No.  I did not even think of it in that context.
5      Q.   Okay.  And when you realized it was Moriarty, did
6  you then also connect that name Moriarty with what
7  Lieutenant McNeely had told you about the guy who had
8  gotten turned away because the safety cells were full?
9      A.   Yes.
10     Q.   Given that this is now the individual who had
11 admitted homicidal -- or suicidal -- suicidal thoughts on
12 the 27th that you had been informed of, and now was also
13 being requested by the psych nurse for a safety cell
14 placement, was it your intent to go ahead and place him in
15 a safety cell?
16     A.   No.
17          MR. WELSH:  It's vague and ambiguous and
18 misstates testimony.
19 BY MR. MORRIS:
20     Q.   Okay.  Help me out, Dale.  You know that this is
21 the guy that had gotten turned away because safety cells
22 were full and said he was suicidal.  Now five days later
23 this is the guy that the psych nurse is saying he needs to
24 be in a safety cell.  Why didn't you have an intent -- I
25 realize right now you had other things going on.  I got

Dale Arthur Weidenthaler  8/29/2018

1   what you're going through on that.  Why wasn't it your
2   intent, then, to at least put him in a safety cell at some
3   point in time that day?
4        A.    He was housed appropriately.  He said that "If
5   somebody comes into my cell today, I'm going to kill
6   them."
7              Things to consider:  How is he going to kill
8   them, particularly if nobody comes in the cell and we only
9   pass through food through a food flap?  How is he going to
10  kill anyone?  He was housed appropriately for the behavior
11  he was currently demonstrating.
12       Q.    Earlier in your testimony I talked about the
13  discretion that came for homicidal inmates.  And you said
14  one thing we don't do, though, is second-guess the medical
15  opinion by refusing this request from Nurse Practitioner
16  Daniels to put him in a safety cell.  Aren't you doing
17  that exact thing?  Aren't you second-questioning --
18  second-guessing her medical opinion?
19             MR. WELSH:  Misstates his earlier testimony.
20  It's argumentative, incomplete hypothetical.
21             THE WITNESS:  As I said earlier, there is
22  discretion.  And I wasn't getting my information directly
23  from the psych nurse.  I was getting my information from
24  Deputy Guillory.  I did not have time at that time for
25  further discussion or to search out Nurse Daniels, not

```
 1    STATE OF CALIFORNIA

 2    COUNTY OF SAN DIEGO

 3

 4         I, Mandy L. Kersh  Certified Shorthand Reporter,

 5    in and for the State of California, Certificate No. 10674,

 6    do hereby certify:

 7         That the witness in the foregoing deposition was

 8    by me first duly sworn to testify to the truth, the whole

 9    truth and nothing but the truth in the foregoing cause;

10    that the deposition was then reported by me in shorthand

11    and transcribed, through computer-aided transcription,

12    under my direction; and that the above and foregoing

13    transcript, is a true record of the testimony elicited and

14    proceedings had at said deposition.

15         I do further certify that I am a disinterested

16    person and am in no way interested in the outcome of this

17    action or connection with or related to any of the parties

18    in this action or to their respective counsel.

19

20         In witness whereof, I have hereunto set my hand

21    this 13th day of September, 2018.

22
                              _____
23                            MANDY L. KERSH, CSR No. 10674

24

25
```

EXHIBIT E