Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:  (619) 826-8065

Attorneys for Michelle Moriarty, as
Successor in Interest and *Guardian Ad Litem*
to Alexandria, Elijah and Eternity Moriarty

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the ESTATE OF HERON MORIARTY and as GUARDIAN AD LITEM to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive,<br><br>    Defendants. | Case No.: 3:17-cv-01154-LAB-AGS<br><br>**EX PARTE APPLICATION FOR LEAVE TO RECONSIDER ORDER GRANTING IN PART DEFENDANT WEIDENTHALER AND DEFENDANT DANIELS' MOTION FOR SUMMARY JUDGMENT**<br><br>Magistrate:  Hon. Andrew G. Schopler<br>Judge:         Hon. Larry A. Burns |

1

Pursuant to the Hon. Judge Burns' chamber rules, based on new evidence, Plaintiffs move this Court *ex parte* for leave to file a motion to reconsider this Court's September, 24, 2019, Order dismissing Plaintiffs' Section 1983 claims against Defendant Weidenthaler and Defendant Daniels. (Declaration of Danielle Pena ("Pena Decl."), *generally.*)

## I. INTRODUCTION

New evidence in the form of a declaration from Jeanette Werner gives reason for this Court to reconsider its previous Order dismissing Defendant Weidenthaler and Defendant Daniels from Plaintiffs' Section 1983 claims. This Court dismissed Defendant Weidenthaler and Defendant Daniels from the Section 1983 claims because the Court found each defendant did not know Mr. Moriarty was suicidal on May 31, 2016.[1] However, Jeanette Werner hotly disputes that contention.

Jeanette Werner is a current San Diego County Sheriff's Department employee that works at Vista Detention Facility. Ms. Werner came forward on her own accord to tell a vastly different account of events pertaining to Mr. Moriarty's foreseeable suicide on May 31, 2016. In her declaration, Ms. Werner, vehemently disputes that county employees were unaware of Mr. Moriarty's suicidal ideations. (Declaration of Jeannette Werner ("Werner Decl.") ¶¶ 5-6.) In Ms. Werner's opinion, nearly everyone working in the jail knew Mr. Moriarty was a risk of suicide—especially Defendant Weidenthaler and Defendant Daniels. (Werner Decl., *generally*.)

According to Ms. Werner's declaration, she was working on the morning of May 31, 2016, the day Mr. Moriarty killed himself. (Werner Decl. ¶ 3.) Medical staff knew about Mr. Moriarty because he was acting bizarre and could be heard howling like a wounded animal for at least two days. (Werner Decl. ¶¶ 4-5.) According to Ms. Werner, on May 31, 2016, it was well known throughout the nurses' station that Mr. Moriarty was refusing medication and decompensating

---
[1] See Order (Dkt. 123) 11:9-19; 13:4-17; 15:3-7; 18:18-19; 18:24-28; 19:1-3.)

2

mentally. Ms. Werner, along with other county employees, knew Mr. Moriarty was a high risk of suicide on May 31, 2016. (Werner Decl. ¶ 6.)

Specifically, on the morning of May 31, 2016, according to the county's recent filing, it was Ms. Werner's concern about Mr. Moriarty risk of self-harm that led to Defendant Daniels' evaluation of Mr. Moriarty on the morning of May 31, 2016. [Dkt. 274, 3:5-8.] Following that, Ms. Werner was informed by Deputy Guillory that Defendant Weidenthaler rejected Defendant Daniels' safety cell order. (Werner Decl. ¶ 7.) In response, Ms. Werner immediately approached Defendant Weidenthaler and asked him if he rejected the safety cell order. (Werner Decl. ¶ 9.) Defendant Weidenthaler said "Yes." In response, Ms. Werner said "Really, don't you hear him howling? He's been howling for two days!" Defendant Weidenthaler responded, "It's my big five. Do you want to do the paperwork?" Ms. Werner responded, "Yes, I can type faster than you talk, I was a certified court reporter. He needs to be placed in the safety cell." Defendant Weidenthaler recoiled and told Ms. Werner to "Stand down." (Werner Decl. ¶ 9.) According to Ms. Werner, based on her conversation with Defendant Weidenthaler, he unequivocally knew Mr. Moriarty was a high risk of suicide and needed to be placed in a safety cell for suicidal ideations—not homicidal ideations—because she told Defendant Weidenthaler Mr. Moriarty was suicidal. (Werner Decl. ¶ 10.) In fact, according to Ms. Werner, there was no discussion at any time, with Deputy Guillory, Defendant Daniels, or Defendant Weidenthaler regarding homicidal ideations. (Werner Decl. ¶ 10.) Ms. Werner was shocked to learn the county's defense is that Mr. Moriarty was homicidal not suicidal! (Pena Decl. ¶ 5.)

Based on Ms. Werner's account of events, disputed material facts exist because she claims it was well known to Defendant Daniels and Defendant Weidenthaler that Mr. Moriarty was suicidal on the morning of May 31, 2016. In fact, Ms. Werner's account of events calls into questions the county's entire defense, i.e., homicidal ideation. As such, the dismissal of Defendant Weidenthaler

3

and Defendant Daniels should be reconsidered.

## II. <u>MR. WERNER'S ACCOUNT OF EVENTS IS NEW EVIDENCE</u>

Ostensibly, Ms. Werner's verbal concern of Mr. Moriarty's risk of self-harm expressed to both Defendant Daniels and Defendant Weidenthaler creates a material dispute as to whether they acted reasonably to abate Mr. Moriarty's risk of self-harm. However, the other primary focus is whether this evidence is "new."

It is undisputed that Ms. Werner was not identified in Defendants' initial disclosures. Defendants claim that they were not obligated to disclose Ms. Werner's identity in their initial disclosures because Defendants did not intend on calling Ms. Werner as a witness. Ms. Werner's name did not appear in any of the medical, correctional, or death-investigation documents produced by the county. (Pena Decl. ¶ 4.) And, every person deposed in this case, including Defendant Weidenthaler, Defendant Daniels, and Deputy Guillory, were silent about Ms. Werner's discussion with Defendant Daniels, Deputy Guillory, and Defendant Weidenthaler. As such, Plaintiffs had no way of passively discovering Ms. Werner's involvement.

Plaintiffs also actively pursued the identity of personnel who could speak to Mr. Moriarty's need for a safety cell. Plaintiffs' Special Interrogatory No. 29, explicitly stated, "During his incarceration, did anyone recommend MORIARTY be placed in a safety cell. If so, who." The county did not object to this request. The county simply responded, "Yes. Nurse-practitioner Daniels."[2] However, given Ms. Werner's concern for Mr. Moriarty's risk of self-harm, as expressed to both Defendant Daniels and Defendant Weidenthaler, and her repeated recommendations to place Mr. Moriarty in a safety cell, the county's response is incomplete, if not fraudulent.

---

[2] This response was signed by Mr. Welsh three months after Ms. Werner's interview with County Counsel and was never supplemented. (Exhibit 1.)

4

1    The county claims it did not identify Ms. Werner in response to Special
2  Interrogatory No. 29 because Ms. Werner did not have the authority to
3  "recommend" Mr. Moriarty be placed in a safety cell as she was not a psychiatric
4  provider.  Ms. Werner's psychiatric credentials are beside the point.  Special
5  Interrogatory No. 29 did not quote the word "recommend," nor did the request
6  define the word "recommend" as a medical term of art.  Moreover, the county
7  failed to object that the term "recommend" as vague and ambiguous given the
8  county's understanding of the word as a medical term of art.  Rather, the word
9  "recommend," in its plain-language meaning, was used to ferret-out who thought
10 Mr. Moriarty should be housed in a safety cell and why.  Because, Ms. Werner was
11 not identified, Plaintiffs had no way of knowing her account of events.

12   The county will no doubt argue that this is not new evidence because Ms.
13 Werner's identity was disclosed by Defendant Daniels.[3]  The county is referring to
14 a screenshot of a text chain between Defendant Daniels and Deputy Johnson,
15 wherein Defendant Daniels asks Deputy Johnson to secure her evaluation note
16 inferring that the county would destroy it or alter it.  In response, Deputy Johnson
17 said, "I can't right now.  I'll talk to Jeanette."  (Exhibit 2.)  When asked "who is
18 that," Defendant Daniels simply testified "an admin person."  That was the extent
19 of Plaintiffs' knowledge.  A benign reference to "an admin person" would not put a
20 diligent party on notice that the "admin person" had knowledge of a discussion
21 regarding Moriarty's suicidal ideations and repeated attempts to convince
22 Defendant Weidenthaler to save Moriarty's life – especially when Defendants have
23 taken steps to conceal that information.  To argue that every "admin person"
24 referenced in documents or depositions should have been noticed for deposition is
25 disingenuous and, quite frankly, impossible.  Notably, there are over 300 names of

---

[3] The County's reliance on a muted reference to "Jeanette" in a text message does not absolve its obligation to truthfully and completely respond to Special Interrogatory No. 29.

county employees that have been referenced in documents or depositions.  (Pena Decl., ¶ 4.)

"Courts have found the non-disclosure of a witness harmful where the witness was referenced in the same litigation." *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 607 (S.D. Cal. 2015) citing *Rhodes v. Sutter Health*, 949 F. Supp. 2d at 1010 (E.D. Cal. 2013) (finding a plaintiff's non-disclosure of a witness was not harmless where, although the witness had been referenced in depositions, the defendant "was not on sufficient notice that the witness possessed information that supported plaintiff's claims or defenses such that the defendant could make an informed decision about whether to pursue discovery as to the witness.")  The same is true here, although Ms. Werner was benignly referenced as an admin person, Plaintiffs were not on sufficient notice that the admin person was involved in Mr. Moriarty treatment and would have knowledge disputing the defense that county employees did not know Mr. Moriarty was suicidal.  As such, Ms. Werner's account of events is new evidence.

### III. CONCLUSION

Accordingly, Plaintiffs should not be punished—to the extent of extinguishing their civil right claims on the merits—because Defendants' went to great lengths to conceal Ms. Werner and her account of events.  Had Ms. Werner not bravely come forward, the horror story that lead to Heron Moriarty's premature death would have never surfaced.  But, now that evidence exists indicating that both Defendant Daniels and Defendant Weidenthaler knew Mr. Moriarty was a heightened risk of suicide on May 31, 2016, the Court's Order should be reconsidered.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated:  September 9, 2020      s/ Danielle R. Pena
                               Danielle R. Pena, Esq.
                               Attorneys for Plaintiffs

# EXHIBIT 1

THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By CHRISTOPHER WELSH, Senior Deputy (State Bar No. 120766)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 557-4039; Fax: (619) 531-6005
E-mail: christopher.welsh@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Dr. Alfred Joshua,
Nurse Jaime Preechar, Deputy Luis Escobar, Deputy Sean Dwyer,
Lt. Rob Mitchell (Ret), and Captain Edwin Schroeder

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the Estate of HERON MORIARTY and as Guardian Ad Litem to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive,<br><br>Defendants. | No. 17cv1154-LAB(AGS)<br><br>COUNTY OF SAN DIEGO'S RESPONSES TO PLAINTIFF MICHELLE MORIARTY'S SPECIAL INTERROGATORIES, SET SEVEN |

PROPOUNDING PARTY: Plaintiff, MICHELLE MORIARTY

RESPONDING PARTY: Defendant, COUNTY OF SAN DIEGO

SET NUMBER: SEVEN (7)

Defendant County of San Diego ("Responding Party") hereby responds to Plaintiff's Seventh Set of Interrogatories as follows:

## PRELIMINARY STATEMENT

All the following responses are based solely upon such information and documents that are presently available to and specifically known to Responding Party. Further, these responses are made without prejudice to Responding Party's right to supplement or

17cv1154-LAB(AGS)

1  amend these responses in the event that information previously available to Responding
2  Party may have been omitted by oversight, inadvertence, or good faith error or mistake.
3       Except for the facts explicitly stated herein, no incidental or implied admissions are
4  intended. Responding Party does not waive any claims or potential claims in this
5  litigation.

6  **SPECIAL INTERROGATORY NO. 29:**
7       During his incarceration, did anyone recommend MORIARTY be placed in a
8  safety cell. If so, who.
9  **RESPONSE TO SPECIAL INTERROGATORY NO. 29:**
10      Yes. Nurse-practitioner Daniels.
11 **SPECIAL INTERROGATORY NO. 30:**
12      During his incarceration, did anyone recommend MORIARTY be placed in
13 the PSU. If so, who.
14 **RESPONSE TO SPECIAL INTERROGATORY NO. 30:**
15      No.
16 **SPECIAL INTERROGATORY NO. 31:**
17      Who was involved in the decision not to place MORIARTY into a safety
18 cell, as recommended by Nurse Daniels.
19 **RESPONSE TO SPECIAL INTERROGATORY NO. 31:**
20      Sgt. Weidenthaler.
21 **SPECIAL INTERROGATORY NO. 32:**
22      Who was involved in the decision not to place MORIARTY in the PSU, as
23 recommended by Dr. Goldstein.
24 **RESPONSE TO SPECIAL INTERROGATORY NO. 32:**
25      Objection. This interrogatory assumes facts and cannot be answered as currently
26 phrased.
27 ///
28 ///

**SPECIAL INTERROGATORY NO. 33:**

If MORIARTY was going to be transferred to Tri-City on a 5150 hold after his release from VDF, why was MORIARTY not placed in the PSU once that determination was made.

**RESPONSE TO SPECIAL INTERROGATORY NO. 33:**

Objection. This interrogatory calls for speculation and assumes facts. Without waiving said objections the County responds: The County is informed and believes the determination regarding a 5150 hold was made by a non-County mental health professional, CPMG's Dr. Lissaur, who kept Moriarty in Ad Seg housing. The decision not to contact Central Jail about placing Moriarty in the PSU was made at the multidisciplinary meeting by non-County mental health professional – CPMG's Nurse-practitioner Daniels, who indicated Moriarty should stay at VDF.

**SPECIAL INTERROGATORY NO. 34:**

At the time of MORIARTY's death, assuming a contract psychiatrist/ psychiatric nurse recommends an inmate be placed in the PSU or safety cell, describe in detail (including but not limited to name, title, role, and contact information) who at VDF has the ability to approve or deny that recommendation.

**RESPONSE TO SPECIAL INTERROGATORY NO. 34:**

Objection. This interrogatory is vague, ambiguous, compound, assumes facts, is an incomplete hypothetical and calls for speculation. Without waiving said objections, the County responds: No recommendation was made by CPMG mental health professionals for placement of Moriarty in the PSU. At the time Nurse-practitioner Daniels recommended Safety Cell placement for homicidal ideation, Stg. Weidenthaler denied the recommendation.

**SPECIAL INTERROGATORY NO. 35:**

In connection with SDSO 000558, what role did William Nagy, Kevin McNeely, and Arnold Fajayan have in determining whether MORIARTY should be sent to Tri-City on a 5150?

- 3 -

**RESPONSE TO SPECIAL INTERROGATORY NO. 35:**

Objection. This interrogatory is vague, ambiguous, compound, assumes facts, is an incomplete hypothetical and calls for speculation. Without waiving said objections, the County responds: No role.

**SPECIAL INTERROGATORY NO. 36:**

Identify and describe in detail (including but not limited to name, title, role in determination as it pertains to MORIARTY and contact information) the attendees of the Multidisciplinary Group Meeting that took place on May 31, 2016, as referenced on SDSO 000560.

**RESPONSE TO SPECIAL INTERROGATORY NO. 36:**

Objection. This interrogatory calls for speculation, is overly broad and vague and ambiguous. Without waiving said objections, the County responds:

Arnold Fajayan is a supervising nurse at VDF. He prepared information for the group to review regarding several inmates and he attended the meeting.

Dr. Goldstein had retired from his medical position, but was asked to facilitate this meeting in a non-medical role and prompt discussion.

Captain Schroeder attended the meeting but did not make any medical decisions or cell placement decisions regarding Mr. Moriarty.

Lt. Mitchell attended the meeting but did not make any medical decisions or cell placement decisions regarding Mr. Moriarty.

Lt. McNeely attended the meeting but does not recall making any medical decisions or cell placement decisions regarding Mr. Moriarty.

**SPECIAL INTERROGATORY NO. 37:**

What was the purpose and motivation behind the implementation of the Pilot Program?

**RESPONSE TO SPECIAL INTERROGATORY NO. 37:**

To allow the intake nurses at Central Jail to admit arrestees without requiring them to first be transported to CDF.

**SPECIAL INTERROGATORY NO. 38:**

Who is the leading official that is responsible for the implementation of the Pilot Program?

**RESPONSE TO SPECIAL INTERROGATORY NO. 38:**

Dr. Alfred Joshua.

**SPECIAL INTERROGATORY NO. 39:**

Under what criteria can a correctional deputy overrule a housing recommendation from a psychiatrist?

**RESPONSE TO SPECIAL INTERROGATORY NO. 39:**

Objection. This interrogatory is vague, ambiguous, overly broad, is an incomplete hypothetical and is not calculated to lead to the discovery of admissible evidence. Without waiving said objections, the County responds: The CPMG psychiatrist who evaluated Mr. Moriarty at VDF, Dr. Lissaur, did not recommend a change in Mr. Moriarty's housing.

DATED: July 9, 2018

THOMAS E. MONTGOMERY, County Counsel

By: _____
CHRISTOPHER WELSH, Senior Deputy
Attorneys for Defendants County of San Diego,
Dr. Alfred Joshua, Nurse Jaime Preechar,
Deputy Luis Escobar, Deputy Sean Dwyer,
Lt. Rob Mitchell (Ret) and Captain Edwin Schroeder

# VERIFICATION

I, ROBERT FAIGIN, declare that I am Director of the Legal Affairs Unit of the San Diego County Sheriff's Department; that I am authorized to and do execute this Verification for and on behalf of said defendant; that I have read the foregoing **COUNTY OF SAN DIEGO'S RESPONSES TO PLAINTIFF MICHELLE MORIARTY'S SPECIAL INTERROGATORIES (SET SEVEN)**, and know the contents thereof, and certify that upon information and belief, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 5th day of July, 2018, at San Diego, California.

ROBERT FAIGIN
Director, Legal Affairs Unit

Michelle Moriarty, et al. v. County of San Diego, et al.; U.S. District Court Case No. 17-cv-1154-L(AGS)

*Michelle Moriarty, etc., et al. v. County of San Diego, et al.*;
USDC No. 17-cv-1154-LAB(AGS)

## DECLARATION OF SERVICE BY MAIL

I, Joy M. Nagal, declare: I am over the age of eighteen years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California where the mailing occurs; and my business address is: 1600 Pacific Highway, Room 355, San Diego, California.

I further declare that I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

On July 10, 2018, I caused to be served the following document(s): COUNTY OF SAN DIEGO'S RESPONSES TO PLAINTIFF MICHELLE MORIARTY'S SPECIAL INTERROGATORIES, SET SEVEN by placing a true copy of each document in a separate envelope addressed to each addressee, respectively, as follows:

### SEE ATTACHED SERVICE LIST

I then sealed each envelope and, with the postage thereon fully prepaid, I placed each for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 10, 2018, at San Diego, California.

*/s/ Joy M. Nagal*
Joy M. Nagal

*Michelle Moriarty, etc., et al. v. County of San Diego, et al.*;
USDC No. 17-cv-1154-LAB(AGS)

## SERVICE LIST

| | |
|---|---|
| Christopher S. Morris, Esq.<br>Danielle R. Pena, Esq.<br>Chanell A. Kachi, Esq.<br>MORRIS LAW FIRM APC<br>501 West Broadway, Suite 1480<br>San Diego, California 92101<br>Tel: (619) 826-8060;<br>Fax: (619) 826-8065<br>Email: cmorris@morrislawfirmapc.com;<br>dpena@morrislawfirmapc.com;<br>ckachi@morrislawfirmapc.com | Attorneys for Plaintiffs<br>MICHELLE MORIARTY, as Successor in Interest and Guardian Ad Litem to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY |
| Joseph T. Kutyla, Esq.<br>10620 Treena Street, Suite 230<br>San Diego, California 92131-1140<br>Tel: (858) 345-9560<br>Email: jtklaw@outlook.com | Attorney for Defendant DALE WEIDENTHALER |
| Jeffrey S. Doggett, Esq.<br>Lauren E. Hardisty, Esq.<br>LOTZ, DOGGETT & RAWERS, LLP<br>101 West Broadway, Suite 1110<br>San Diego, CA 92101<br>Tel: (619) 233-5565<br>Fax: (619) 233-5564<br>Email: jdoggett@ldrlaw.com,<br>lhardisty@ldrlaw.com | Attorneys for Defendants CORRECTIONAL PHYSICIANS MEDICAL GROUP INC. (sued and served as CORRECTIONAL FACILITIES MANAGEMENT GROUP) and AMANDA DANIELS |
| Robert W. Harrison, Esq.<br>Marty B. Ready, Esq.<br>WILSON, ELSER, MOSKOWITZ,<br>  EDELMAN & DICKER LLP<br>401 West A Street, Suite 1900<br>San Diego, CA 92101<br>Tel: (619) 321-6200<br>Fax: (619) 321-6201<br>Email:<br>Robert.harrison@wilsonelser.com,<br>Marty.ready@wilsonelser.com | Attorneys for Defendant RALPH LISSAUR, M.D. |

EXHIBIT 2

**Johnson**

Tuesday, May 31, 2016

**J:** Sorry for the lateness. Just heads up. Moriarty killed himself tonight. *11:42 PM*

**J:** You saw him today? *11:43 PM*

Yes. How *11:44 PM*

**J:** He stuffed his thirty down his throat and choked

I heard you had recommended safety cell but we're overruled? *11:45 PM*

Omg. Thank you for letting me know

Yes *11:45 PM*

I asked but sergeant said no *11:46 PM*

He denied si *11:47 PM*

**J:** This was Nishimoto all over again. *11:47 PM*

Ughh. I feel sick. *11:48 PM*

Enter message

SDSO 001041





11:48 PM **Ughh. I feel sick.**

(J) Yea apparently he ate his shirt but you could see anything when they are under those two thick blankets
11:49 PM

(J) It looks bad cause tiger had already set it.

**Rigormortis** 11:51 PM

11:51 PM **Omg**

(J) Yea this one is gonna cost the county
11:52 PM

Wednesday, June 1, 2016


12:36 AM **Do you have access to my note? Can you print it?**


12:37 AM **I put the safety cell was discussed. I don't want someone getting rid of it**

(J) I can't right now. I'll talk to jeanette when she come in and have her get it.



+ Enter message  

< **Johnson**

**J:** I can't right now. I'll talk to jeanette when she come in and have her get it. 1:45 AM

**J:** I read the whole history with this guy. He was supposed to go into a safety cell at CJ. Bit they were full that Thursday night so he was brought here to VDF. And I don't know why he never went into the safety cell or at least EOH. 1:55 AM

**J:** Jeanette has all your notes printed and saved in her office. 5:07 AM

5:08 AM Awesome thank u

**J:** Yep right at the bottom is your note about discussing with the sgt. About the safety cell and he said no. 5:10 AM

5:11 AM K good

**J:** Try to have a nice day. Don't worry as usual everyone else dropped the ball not you. 5:13 AM

5:14 AM Thank you. I just know they need a scapegoat....

+ Enter message

**SDSO 001043**

**< Johnson**

**5:08 AM** Awesome thank u

**J** Yep right at the bottom is your note about discussing with the sgt. About the safety cell and he said no.
5:10 AM

**5:11 AM** K good

**J** Try to have a nice day. Don't worry as usual everyone else dropped the ball not you.
5:13 AM

**5:14 AM** Thank you. I just know they need a scapegoat....

**J** EOH is a good thing but they have to use it.
5:53 AM

**J** There was no reason he should have not gone in. I was working when he was brought in and they stuck into S5
5:54 AM

**5:54 AM** Who decided that

**J** Lt banks and sgt. Estrada  6:53 AM

Enter message

SDSO 001044