Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Michelle Moriarty, as Successor in Interest and *Guardian Ad Litem* to Alexandria, Elijah and Eternity Moriarty

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the ESTATE OF HERON MORIARTY and as GUARDIAN AD LITEM to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No.: 3:17-cv-01154-LAB-AGS<br><br>**DECLARATION OF JEANNETTE WERNER IN SUPPORT OF EX PARTE MOTION FOR LEAVE TO:**<br><br>1. **TAKE MS. WERNER'S DEPOSITION**<br>2. **ADD MS. WERNER TO THE PTO WITNESS LIST; AND**<br>3. **COMPEL DEFENDANTS TO PRODUCE MS. WERNER'S RECORDED STATEMENT**<br><br>Magistrate: Hon. Andrew G. Schopler<br>Judge: Hon. Larry A. Burns |

1

I, Jeanette Werner, declare as follows:

1. The facts set forth below are within my personal knowledge and belief, and if called as a witness, I will testify to the following:

2. I have worked for the San Diego County Sheriff's Department since August 5, 2008.

3. I currently work as a medical records clerk at the Vista Detention Facility. In that capacity, I was present certain days of Mr. Moriarty's detainment, including May 31, 2016. This is not a supervisory position and I am not considered management.

4. During Mr. Moriarty's detainment, Mr. Moriarty could be heard howling throughout the jail for at least two days. He sounded like a wounded animal crying out for help. I was forced to plug my ears during work because Mr. Moriarty's wailing and howling was extremely disturbing.

5. During Mr. Moriarty's detainment, it was well known throughout the nurses' station that Moriarty was refusing medication and decompensating.

6. Myself, and several other medical staff members, knew Mr. Moriarty was a high risk of suicide on May 31, 2016.

7. On the morning of May 31, 2016, I was informed by Louis Guillory that Sgt. Weidenthaler rejected the safety cell placement ordered by Amanda Daniels.

8. After hearing that, I immediately approached Sgt. Weidenthaler.

9. I asked Sgt. Weidenthaler if he rejected Amanda Daniels' safety cell order. Sgt. Weidenthaler said "Yes." In response, I said "Really, don't you hear him howling? He's been howling for two days!" Sgt. Weidenthaler responded, "It's my big five. Do you want to do the paperwork?" I said, "Yes, I can type faster than you talk, I was a certified court reporter. He needs to be placed in the safety cell." Sgt. Weidenthaler recoiled and told me to "Stand down."

///

10. Based on my conversation with Sgt. Weidenthaler there is no doubt in my mind that he knew Mr. Moriarty was suicidal because I mentioned it when we were arguing. There was no discussion, at any time, regarding Mr. Moriarty's homicidal ideations.

11. A few days after Mr. Moriarty's suicide, Sgt. Weidenthaler walked into my office and closed the door behind him. He said I should not talk about what had transpired to anyone.

12. Since then, I continue to hear Mr. Moriarty howling in my sleep. It has haunted me for years. I live with guilt and remorse for staying quiet and I have thought about the Moriarty family countless times.

13. But I cannot stay quiet any longer because the county continues to put inmates at risk of serious harm.

14. On July 13, 2020, I contacted Morris Law Firm to discuss my concerns about the county's failure to adequately safeguard inmates and its employees from infection of COVID-19. During this discussion, I began talking about Mr. Moriarty's suicide. I informed Mr. Morris of the facts set forth above.

15. On July 17, 2020, I met with Mr. Morris and Ms. Pena to discuss the information I stated over the phone. I brought an email with me from a county investigator requesting that I make myself available for an interview even though I "had already given a statement about Moriarty in the context of Nishimoto." At that time, I informed Mr. Morris and Ms. Pena that I was interviewed in connection with the *Nishimoto* case.

16. Following this discussion with Mr. Morris and Ms. Pena, with their assistance, I retained private counsel to represent me in this matter relating to future interviews or depositions. Since then, I have not had substantive conversations with Morris Law Firm.

17. In relation to this matter, I have been interviewed twice by county investigators. The first time was in connection with the *Nishimoto* case wherein I

1  was asked if I knew anything about Mr. Moriarty's suicide. I informed the
2  investigator of the facts set forth above. The second interview with county
3  investigators occurred on August 13, 2020.

4      18.    After staying silent for too long, I wish to be deposed and testify at
5  trial.

6  I declare under the laws of the United States of America that the foregoing is
7  true and correct under the penalty of perjury.

10  Dated: August 27, 2020                                DocuSigned by:
11                                                         Jeanette Werner
                                                               54DA8CC51054454...

4