Joseph T. Kutyla, Esq.
Law Office of Joseph T. Kutyla
10620 Treena Street, #230
San Diego, CA 92131
jtklaw@outlook.com

Attorneys for Defendant Dale Weidenthaler

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the Estate of HERON MORIARTY and as Guardian Ad Litem to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY,<br><br>v.<br><br>COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive,<br><br>Defendants. | No. 17-cv-01154-LAB(AGS)<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANT DALE WEIDENTHALER TO BIFURCATE TRIAL OF THE NEGLICENCE AND MONELL ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>DATE:  October 14, 2021<br><br>TIME:  1:30 p.m.<br><br>DEPT:  Courtroom 3A<br><br>HONORABLE TODD ROBINSON<br><br>**TRIAL DATE: NOVEMBER 1, 2021** |

NOTICE IS HERE BY GIVEN that on the 14th day of October, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard in Department 3A of the above captioned court, located at 221 West Broadway San Diego, CA 92101, defendant Dale Weidenthaler, will move this Court for an order that the trial of plaintiffs' state law negligence claim against defendant Dale Weidenthaler shall be tried first, and prior to the trial of plaintiffs' municipal liability (*Monell*) claim against defendant County of San Diego ("the County").

1   This motion is made pursuant to Fed. R. Civ. Proc. 42(b) on the ground that
2   separate trials of the *Monell* (vs County of San Diego) and state law negligence claim (vs.
3   Dale Weidenthaler) will serve the interests of justice, fairness, judicial economy, and will
4   prevent undue prejudice.  Furthermore, separate trials will not unnecessarily delay the
5   trial of this matter nor cause prejudice to plaintiffs.  Plaintiffs have reviewed this motion,
6   and they will file an opposition.  Defendants County of San Diego and CPMG, Dr. Ralph
7   Lissaur and Amanda Daniels have reviewed this motion. The County of San Diego and
8   Dr. Ralph Lissaur will not oppose this motion.  CPMG and Amanda Daniels do not take a
9   position regarding this motion.
10  This Motion is based upon this Notice, the attached Memorandum of Points
11  and Authorities, the papers and records on file in this action, and upon such additional
12  oral argument and documentary evidence as may be properly before the Court at the time
13  of the hearing on this matter.

Respectfully submitted,

DATED: September 2, 2021

By: s/ JOSEPH T. KUTYLA,
Attorney for Defendant DALE WEIDENTHALER
E-mail: jtklaw@outlook.com

# I

## Summary of Argument

Defendant requests bifurcation and a separate trial of plaintiff's "*Monell*" claim against the County of San Diego. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). The *Monell* claim will be tried after a jury decision on the sole remaining state law negligence claim against Dale Weidenthaler and the remaining defendants. Bifurcation is necessary to avoid the risk of prejudice to Dale Weidenthaler and confusion to the jury. Plaintiff's also assert negligence claims against the health care provider defendants (CPMG, Dr. Ralph Lissaur[1] and Nurse Practitioner Amanda Daniels). This request for bifurcation extends to all claims against the remaining parties. These defendants will also suffer the same prejudice if the *Monell* claim is tried with all other claims.

### A. The Monell Theory vs. County of San Diego and evidence

To prove liability under *Monell*, plaintiffs propose to present evidence of an unconstitutional policy or procedure relating to the intake of inmates under the County's "Pilot Program" at Central Jail. Plaintiffs also propose to introduce evidence of a pattern of other suicide deaths at County detention facilities to establish the County's policy or custom relating to its allegedly inadequate suicide prevention program. Finally, Plaintiffs are proposing to introduce evidence and expert testimony to show that San Diego County jails have had a higher inmate suicide rate than other jails and prisons.

To succeed on the municipal liability claims against the County, Plaintiffs must first establish an underlying constitutional violation by the individual defendants. If the jury does not find such a violation, that finding would dispose of Plaintiff's municipal liability claims against the County. For this reason, bifurcation of the municipal liability claims against the County would ensure an expeditious trial and best promotes judicial economy and resources. This is particularly true because in support of her municipal liability claims, Plaintiff presumably intends to offer evidence of numerous unrelated suicides that span multiple years. The days of trial such evidence would consume would be unnecessary if a jury first finds that the individual defendants did not violate the constitution in this particular incident.

The sole remaining claim against the County of San Diego is brought under *Monell*. All individually named County employees other than Weidenthaler have been dismissed. It is undisputed that Weidenthaler was not involved in the jail intake process with respect to Moriarty and was not involved in any of the other jail suicides Plaintiffs propose to refer to in support of their Monell theory.

This Court previously granted the County of San Diego's Motion to Dismiss as to all theories against the County employees who dealt with Mr. Moriarty on May 25, 2016, the day of his arrest.

The Court Order, beginning at page 1, (**Docket no. 87**) states:

---

[1] Section 1983 claims against Dr. Ralph Lissaur remain but the core facts are identical to the

> "Six Defendants, all employees of the County—Deputy Escobar, Deputy Dwyer, Nurse Preechar, Dr. Joshua, Captain Schroeder, and Lt. Mitchell— moved to dismiss for failure to state a claim (Docket no. 27), and to strike certain portions of the FAC. (Docket no. 28) But Schroeder and Mitchell have since settled with Plaintiff and have been dismissed (Docket no. 48), and the motion is moot as to them.
> (**Docket No. 87** page 1 L. 27- page 2 L. 4.)
>
> ….Three of the Defendants—Deputy Escobar, Deputy Dwyer, and Nurse Preechar—are only alleged to have had any involvement with Moriarty on May 25, six days before he died. Their liability, if any, must arise from whatever they did or failed to do that day. The FAC faults them for failing to recognize that Moriarty was suicidal or communicate that fact to others at VDF, failing to send him for a psychiatric evaluation, and failing to make sure he was confined in a safe cell. But none of these acts or failures to act proximately caused Moriarty's death six days later.
> (**Docket No. 87** page 8 L. 11-17.)
>
> Whatever these three Defendants may have done or failed to do on May 25 was not a proximate cause of Moriarty's death on May 31. For this reason, they cannot be liable for either negligence or a § 1983 violation.
> (**Doc. 87**. Pg. 9 L. 4-6.)

As to the other named County Defendant, Sheriff's Department Medical Director - Dr. Joshua, the court ruled:

> "The FAC's claims against Dr. Joshua arise solely under state law; no claims are brought against him under § 1983.
> The allegations against him are almost wholly conclusory. The FAC identifies only two policies that Dr. Joshua might have had anything to do with: a temporary policy, under which arrestees were taken directly to Central Jail without first being evaluated, and a policy requiring that detainees who say they are not suicidal are not to be placed in safety cells. For reasons discussed above, neither of these led to Moriarty's death. Furthermore, the FAC alleges that because of poor training, personnel were actually unaware of the details of the temporary policy and mistakenly thought it also applied at VDF.

> The FAC brings a medical malpractice claim against Dr. Joshua, but this is pled in even less detail. The FAC does not allege that he treated Moriarty or had any role in treating him, or that he was even at VDF.
> (**Docket No. 87** at page 11 Line 7-18)

> "….The Court concludes that medical malpractice claims against Dr. Joshua are barred because Plaintiff failed to comply with Cal. Govt. Code § 911.2.  His other state law claims are inadequately pled.
> (**Docket No. 87** at page 12 Line 9-11.)

In issuing this ruling, the Court has confirmed that there is no causal connection between Mr. Moriarty's May 31, 2016, suicide and what was or was not done with respect to Mr. Moriarty by the arresting deputies, the San Diego Central Jail intake personnel and/or the VDF intake personnel on May 25, 2016.  Only the alleged negligent conduct of Sgt. Weidenthaler in declining to place Moriarty in a safety cell when doing so was recommended by the psychological nurse-practitioner on May 31, 2016, is at issue.

Since the Court has previously ruled that conduct prior to the assessments of Moriarty by Co-defendants Lissaur and Daniels on May 28-31, 2016, is not at issue, the testimony and evidence to prove and defend the negligence claims should largely be confined to events which occurred between May 28 and 31, and questions related to standard of care and damages.  By contrast, the timeframe at issue to prove and defend the "Monell" claim spans many years.  The custom and policies at other detention facilities will be explained in depth.  Evidence of other inmate suicides having nothing to do with the circumstances confronting Dale Weidenthaler will be described, and

hundreds of pages of documents may be introduced into evidence. The risk of confusion of the issues and prejudice to Weidenthaler is very real unless the negligence and Monell issues are tried separately. It would be difficult for jurors to separate evidence of other jail suicides which is relevant to the Monell theory, from evidence of Weidenthaler's conduct which is relevant to the negligence cause of action.

### B. <u>Sole Negligence claim against Sgt. Weidenthaler</u>

The factual and legal issues related to the alleged negligence of Weidenthaler, are relatively straightforward. The negligence claim is based upon a single decision on May 31, 2016, to decline a safety cell transfer for an inmate he was told was homicidal. Sgt. Weidenthaler's decision allegedly prevented the inmate from access to medical care. (See *Government Code, §* 845.6 no liability for failure to obtain medical care for prisoner except those known to be in need of immediate medical care). Plaintiff's negligence claim also seeks punitive damages against Weidenthaler.

The negligence of private health care professionals CPMG, Daniels and Lissaur is based upon alleged breaches of the standard of care in the diagnosis and treatment of Mr. Moriarty when they assessed him three times between May 28 and May 31, 2016.

In ruling on Sgt. Weidenthaler's Motion for Summary Judgment, the Court found that qualified immunity protected Sgt. Weidenthaler against liability for potential section 1983 civil rights violations, but not against Plaintiffs' negligence claim. The Court's discussion of the facts illustrates the Weidenthaler's conduct is confined to the period of Mr. Moriarty's incarceration (May 25-31).

"For purposes of the qualified immunity analysis, the issue is not whether Weidenthaler's actions were reasonable, but whether he reasonably could have believed his conduct was constitutional. Here, Weidenthaler has met his burden of showing that he could have. Even accepting that he had reason to believe Moriarty was suicidal days earlier, Weidenthaler was told in the interim that Moriarty had been determined not to be suicidal. Weidenthaler knew Nurse Practitioner Daniels, a psychiatric nurse, had recommended that Moriarty be housed in a safety cell, and he personally overruled that recommendation. <u>But he also knew the basis for Nurse Practitioner Daniels' recommendation was that Moriarty was homicidal, not that he was suicidal.</u> (Jt. Stmt. of Undisputed Facts, ¶ 10.) Her examination notes confirm that she believed that Moriarty was homicidal but not suicidal, and Plaintiffs agree this is what she believed.

Plaintiffs correctly point out that Weidenthaler had no particular medical or psychological expertise and had to rely on the advice of others who did. As a layman, Weidenthaler was not responsible for making a diagnosis or attempting to confirm or rebut Daniels'. Once a psychiatric nurse gave him to understand that Moriarty was not at that time a suicide risk, he could reasonably have believed it, and no clearly established law would have told him otherwise. In light of this, he could reasonably have believed that he was not ignoring a serious risk of suicide. That is enough to entitle him to qualified immunity as to the federal constitutional claim.

Plaintiffs' other evidence is likewise insufficient to counter Weidenthaler's position. For example, they cite a general warning that watch commander McNeeley gave Weidenthaler several days earlier. But a warning to "watch out" for Moriarty would only have raised generalized concerns; it cannot reasonably be construed as a warning that Moriarty was, or might be, suicidal. There is no evidence that Weidenthaler would have known, based on what he was told or what happened days earlier, on May 25, that Moriarty was suicidal on May 31.

If Moriarty had acted on his homicidal ideations, and if housing him in a safety cell rather than an ad-seg cell would have reduced the risk, Weidenthaler would probably be liable. But that did not happen. Instead, a different risk—one he had less reason to be aware of—tragically played out. Even if he was negligent in failing to appreciate that risk or failing to take the steps Plaintiffs' expert suggests he should have, he has shown that he could

> reasonably have thought he was acting lawfully.  The Court finds Weidenthaler has met his burden of establishing qualified immunity.  There is, however, sufficient evidence to support the negligence claims against him." (**Doc. 123**, Order filed September 24, 2019, at15:3-16:8)

The anticipated *Monell* evidence does not touch upon cell placement decisions after a detainee has been placed at VDF.  Weidenthaler's decision took place 6 days after Moriarty was transferred to VDF.  He was not involved in the intake process for Mr. Moriarty.

Once the jury hears evidence related to the cell placement decision (including percipient and expert witnesses), the issue is ready to decide.  Any further testimony about unrelated events, other jail suicides and intake policies completely unconnected to Weidenthaler will confuse the jury.  The likelihood of prejudice cannot be brushed aside.  The only remedy is to try the *Monell* claim, if necessary, after the jury decides the claims against the remaining parties.

### C. Claims against CPMG, Daniels and Lissaur are based upon professional negligence

The negligence of the non-County co-defendants CPMG, Daniels and Lissaur are based upon alleged breaches of the standard of care in the diagnosis and treatment of Mr. Moriarty when they assessed him three times between May 28 and May 31, 2016.  The Court also partially granted Daniels' motion for summary judgment as to all federal claims under §1983, leaving only a negligence claim. (Doc. 123, page 16-19).  The §1983 claim against Dr. Lissaur is based upon the same facts and evidence as the

professional negligence claim.

## II
## The District Court Has Broad Discretion
## To Order Separate Trials On Negligence and Monell Issues

Fed. R. Civ. P. 42(b) states: "Separate Trials.  For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial."

"Bifurcation of the trial of liability and damage issues is well within the scope of a trial court's discretion under Fed.R.Civ.P. 42(b). [Citations]." *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 697 (9th Cir. 1977).  "The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused. [Citations]." *Easton v. City of Boulder, Colo*., 776 F.2d 1441, 1447 (10th Cir. 1985).

"Whether to separate the issues of liability and damages in a civil case is reserved to the discretion of the trial court. [Citations]." *Davis v. Freels*, 583 F.2d 337, 343 (7th Cir. 1978).  "The district court bifurcated the proceedings for judicial economy and to avoid prejudice and confusion. The district court had broad discretion to try the liability phase first and did not abuse its discretion in bifurcating the trial. [Citation]." *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1088 (9th Cir. 2005).  "[T]he court in ordering separate trials must consider several issues such as potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy

which would result. [Citation] [fn. omitted]." *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982).

"Under Rule 42(b), the district court has broad discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues. [Citation]." *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001). "[W]hether resolution of a single issue would likely be dispositive of an entire claim is highly relevant in determining the efficacy of bifurcation." *In re Beverly Hills Fire Litigation, supra*, 695 F.2d at 216. "A court might bifurcate a trial to 'avoid [] a difficult question by first dealing with an easier, dispositive issue,' [Citation], or to avoid the risk of prejudice. [Citation]. Further, '[i]t is clear that Rule 42(b) gives courts the authority to separate trials into liability and damage phases.' [Citations]." *Huizar v. City of Anaheim (Estate of Diaz)*, 840 F.3d 592, 601 (9th Cir. 2016).

### III

### Trial Of Plaintiffs' Claims Against The Individual Defendants Before the Municipal Liability Claims Against The County Needed to Avoid Prejudice

**A The "Monell" evidence will prejudice Sgt. Weidenthaler's right to a fair trial.**

In *Amato v. City of Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999), the Court explained: "Section 1983 actions are particularly well suited for bifurcation because the evidence needed to show a 'policy or custom' on behalf of the municipal entity is often unnecessary in the suit against the individual official. Furthermore, if a plaintiff fails to

show that a constitutional violation occurred in the suit against the individual official, the corresponding cause of action against the municipality will be mooted since a claim of negligent training is only actionable where some constitutional violation actually occurred. [citation].  For these reasons, trial courts will, with some frequency, exercise their discretion pursuant to Rule 42(b) of the Federal Rules of Civil Procedure and sever the proceedings." *Amato, supra*, 170 F.3d at 320.

"[B]ecause the great majority of the evidence relevant to the federal claim against the City will not be relevant to the claims against the individual defendants, submission of such evidence is likely to be unfairly prejudicial to such individual defendants, and, in particular, to defendant Artiga."  *Hwang, supra,* 2008 U.S. Dist. LEXIS 83022, at *8. "Accordingly, the Court, 'in the interest not only of convenience and judicial economy but also the avoidance of potential prejudice and confusion,' finds it appropriate, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, to bifurcate the trial such that the federal claims against the defendant officers, as well as the state law claims, will be tried prior to and separately from the federal claim against the City. [Citation]." *Hwang, supra,* 2008 U.S. Dist. LEXIS 83022, at *8-9.

"A trial may be bifurcated under Rule 42(b) for 'the avoidance of potential prejudice and confusion' of a jury. [Citation].  Where 'the great majority of the evidence relevant to [an entity liability claim] will not be relevant to the claims against the individual defendants, submission of such evidence is likely to be unfairly prejudicial to such individual defendants.' [Citation]." *White v. Baca*, 2014 U.S. Dist. LEXIS 200459,

*10, 2014 WL 12700946 (C.D. Cal., Feb. 6, 2014).

The *Monell* claims and evidence against Weidenthaler do not cross paths. Plaintiff's do not allege that Weidenthaler was inadequately trained. Nor do they allege that Weidenthaler was involved in any of other the jail suicides. The risk of confusion of issues can only be avoided through the bifurcation of issues and claims.

**B. The Court has ruled that Weidenthaler is entitled to Qualified Immunity. All Federal Constitutional claims (42 U.S.C. § 1983) are dismissed leaving no Federal claims against any public employee.**

A prerequisite to any municipal civil rights claim is proof that a municipal employee violated at least one of the plaintiff's constitutional rights. See: *City of Los Angeles v. Heller* ("*Heller*"), 475 U.S. 796, 799 (1986) *Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994) *Lowry v. City of San Diego*, 858 F.3d 1248, 1260 (9th Cir. 2017)

In *Figueroa v. Gates*, 207 F.Supp.2d 1085 (C.D. Cal. 2002), the district court granted Defendants' motion to bifurcate the "individual capacity" claims from the *Monell* claims: "The court finds that the issues presented... are distinct from any of the questions involved in the individual liability claims. Furthermore, if the officers are found to be not liable, then there would be no need to proceed to the *Monell* and punitive damages questions, as they are premised on a finding of unconstitutional action by the shooting officers. [citation][fn. omitted]. Accordingly, the court exercises its discretion to bifurcate the individual liability claims from the *Monell* claims. [citations]." *Figueroa, supra*, 207 F.Supp.2d at 1101-1102.

Thus, if there is no deprivation of a constitutional right, evidence of other incidents is "wholly immaterial" and highly prejudicial. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). *See also: Quintanilla vs. City of Downy* 84 F.3d 353, 856 (9th Cir. 1996) ("Admitting evidence pertaining to the *Monell* issue could well have unfairly prejudiced the Chief and city and confused the jury as it considered the individual officers' actions.")

Here, the Court has determined that all jail personnel, including Sgt. Weidenthaler, did not violate Mr. Moriarty's constitutional rights. Under *Baker*, supra, evidence of other incidents is irrelevant because plaintiff's have not, and cannot, present evidence that any public employee violated Inmate Moriarty's constitutional rights. All such claims have been dismissed or eliminated by Qualified Immunity.

## CONCLUSION:

Here, evidence of multiple inmate suicides, alleged violations of public policy and procedures and related issues is highly likely to confuse the jury regarding the very limited negligence claims against Weidenthaler, Dr. Lissaur and Nurse Practitioner Daniels. Weidenthaler's liability is to be based solely upon whether he knew or should have known that Mr. Moriarty was at risk for suicide if he was not immediately placed in a safety cell. Evidence of custom and policy, other inmate suicides have no relevance to the questions the jury will be called upon to decide.

Lastly, plaintiff's seek punitive damages against Weidenthaler. The highly prejudicial and inflammatory grand jury reports, statistics, news articles that are at the

core of the *Monell* evidence has no place in the unrelated negligence case against Weidenthaler.

Defendant requests this court to grant this motion and enter an order that the trial of the municipal liability claim against the County of San Diego under *Monell* shall be tried only after the trial of the remainder of this case against Weidenthaler and the remaining defendants, and for such other and further relief as the court deems just and proper.

DATED: September 2, 2021

By: s/ JOSEPH T. KUTYLA,
Attorney for Defendant DALE WEIDENTHALER
E-mail: jtklaw@outlook.com