Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Alexandria Moriarty, Elijah Moriarty, Michelle Moriarty, as Successor in Interest to Heron Moriarty and *Guardian Ad Litem* to Eternity Moriarty

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the ESTATE OF HERON MORIARTY and as GUARDIAN AD LITEM to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and E.M., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive, <br><br> Defendants. | Case No.: 3:17-cv-01154-TWR-AGS <br><br> **JOINT SUPPLEMENTAL BRIEF ON MOTION FOR APPROVAL OF AN EXPEDITED MINOR'S COMPROMISE AND DISMISSAL OF CLAIMS** <br><br> **PURSUANT TO 28 U.S.C. 626(C), THE PARTIES CONSENT TO HAVE MAGISTRATE SCHOPLER REVIEW AND APPROVE THE SETTLEMENT AND DISMISSAL** |

1

## I.

## INTRODUCTION

On October 27, 2021, Plaintiffs, the County of San Diego, Dale Weidenthaler, and Ralph Lissaur, M.D. jointly moved this Court for an order approving the proposed settlement of E.M.'s claims.[1] On November 8, 2021, this Court issued an Order stating, "the Court has identified two issues that require further briefing." (Dkt. 352)

As pointed out by this Court, "The first issue is the discrepancy between the proposed amount to be placed in trust—E.M.'s $291,113.50—and the initial funding of the trust as reported in the trust instrument—$250,000." This Court is correct. The total funding of the Trust is $291,113.50. From that, Michelle Moriarty requests permission from the Court to distribute $35,000 to be used for E.M.'s private education throughout her remaining three and a half years of high school. (Dkt. 352, 1:13-15.) An Amended Trust is attached setting forth the correct funding amount and a schedule of distributions to be used for E.M.'s high school tuition. (Exhibit 1.)

The second issue is the reasonableness of the attorney's fees given Plaintiff's counsel requests a 40% contingency fee. This Court held, "California courts, however, have generally held that a contingency fee of only up to 25% in a minor's case is reasonable. See *Schwall v. Meadow Wood Apartments*, 2008 WL 552432, at *1-2 (E.D. Cal. Feb. 27, 2008); 2 Weil & Brown, Cal. Practice Guide, *Civil Procedure Before Trial* (2007) Settlement Procedures, ¶¶ 12:576-12:577)." (Dkt. 352.)

## II.

## LEGAL STANDARD

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux*

---

[1] Plaintiffs maintain claims against Defendant Daniels and Defendant CPMG.

*v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).  A district "court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem." *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983).  In accordance with this special duty regarding proposed settlements involving minor plaintiffs, a district court must "[c]onduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978.)  "While [a guardian ad litem] may negotiate a proposed compromise to be referred to the court, he cannot render such a compromise effective merely by giving his consent." *Dacanay*, 573 F.2d at 1079.  It is, however, the district "[c]ourt's order approving the settlement that vests the guardian ad litem with the legal power to enforce the agreement." *Id.*

### III.

### THE TOTAL FUNDING FOR THE TRUST IS $291,113.50

As understood by counsel, the discrepancy pointed out by this Court is the difference between the proposed net settlement amount E.M. is to receive ($291,113.50) versus the proposed amount to be placed in trust ($250,000.)

This Court is correct that there was a mistake regarding the total funding of the Trust.  First and foremost, if the proposed settlement is approved the amount to be placed in trust on behalf of E.M. is $291,113.50.  As set forth in paragraph 28 of Dkt. 349, E.M. and Michelle Moriarty request $35,000 of E.M.'s net settlement funds be distributed throughout the next three and a half years to be used solely for E.M.'s private high school tuition.  See Exhibit 1, Article II.

/ / /

/ / /

/ / /

/ / /

3

JOINT SUPPLEMENTAL BRIEF                                            3:17-cv-01154-TWR-AGS
262690236v.1

*v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).  A district "court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem." *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983).  In accordance with this special duty regarding proposed settlements involving minor plaintiffs, a district court must "[c]onduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978.)  "While [a guardian ad litem] may negotiate a proposed compromise to be referred to the court, he cannot render such a compromise effective merely by giving his consent." *Dacanay*, 573 F.2d at 1079.  It is, however, the district "[c]ourt's order approving the settlement that vests the guardian ad litem with the legal power to enforce the agreement." *Id.*

### III.

### THE TOTAL FUNDING FOR THE TRUST IS $291,113.50

As understood by counsel, the discrepancy pointed out by this Court is the difference between the proposed net settlement amount E.M. is to receive ($291,113.50) versus the proposed amount to be placed in trust ($250,000.)

This Court is correct that there was a mistake regarding the total funding of the Trust.  First and foremost, if the proposed settlement is approved the amount to be placed in trust on behalf of E.M. is $291,113.50.  As set forth in paragraph 28 of Dkt. 349, E.M. and Michelle Moriarty request $35,000 of E.M.'s net settlement funds be distributed throughout the next three and a half years to be used solely for E.M.'s private high school tuition.  See Exhibit 1, Article II.

/ / /

/ / /

/ / /

/ / /

E.M. is a freshman at a Christian high school in Oklahoma. The proposed funds ($35,000) will pay for E.M.'s private school education for the next three and a half years. E.M.'s tuition is $10,000 per school year. Michelle Moriarty paid the first semester of E.M's tuition, the remaining balance of $5,000 is to be paid in January 2022.

## IV.

## **THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE AS TO E.M.**

As this Court knows, "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." This duty includes conducting "its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); see also *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) ("a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem").

Generally speaking, "where only state claims are involved, the typical practice of district courts in this Circuit is to apply state law when evaluating the proposed settlement. *Chung v. Wash. Interscholastic Activities* Ass'n, 2021 U.S. Dist. LEXIS 168043, *5-6 (Wash. W.D. 2021), quoting *Robidoux*, at 1181-82. However, in cases involving the settlement of a minor's federal claims, the Ninth Circuit has unequivocally stated that district courts should "limit the scope of its review to the reasonableness of minor plaintiffs' net recovery in light of the facts and specific claims at issue and recoveries in similar cases, without regard to the fee

/ / /

/ / /

4

the adult plaintiffs agreed to pay plaintiff's counsel." *Robidoux* at 1181-82.[2] "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Id*. See *Cortes v. Nat'l Cmty. Renaissance*, 2018 U.S. Dist. LEXIS 184100, *3-4 (Cal. S.D. 2018.)

In fact, the Ninth Circuit Court of Appeal in *Robidoux* noted that while district courts have typically applied state law and the local rules governing the award of attorney's fees to make the reasonableness and fairness determination, the court held that "this approach places an undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs under the proposed agreement." *Robidoux*, 638 F.3d at 1181-82. The court further held, the fairness of each minor plaintiff's net recovery should be evaluated "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel - whose interests the district court has no special duty to safeguard." *Id*. at 1182 (finding "[t]he district court erred when it focused on the 'admittedly large proportion' of the total settlement value going to Plaintiffs' counsel, instead of reviewing the fairness of each minor's net recovery in isolation.")

Here, the proposed settlement involves Fourteenth Amendment claims against Dr. Lissaur and the County of San Diego. If the proposed settlement terms are approved by this Court, E.M. will receive $291,113.50. In addition, if the proposed settlement terms are approved E.M. will be ¼ part owner of the family home to be purchased with the settlement funds not to exceed $500,000. (Dkt. 349, 6:1-5.) According to *Robidoux*, in order to determine if the proposed settlement is reasonable and fair as to E.M., this Court must review the facts of the case in conjunction with the alleged claims as well as other similar settlements.

---

[2] Notably, the plaintiffs in *Robidoux* alleged state and federal claims which were based on the same set of core facts.

1 As this Court knows, E.M.'s father committed suicide in-custody on May 31, 2016. Plaintiffs contend Mr. Moriarty's suicide was foreseeable and preventable given his decompensating mental health, refusal to take medication, and his threat of suicide six days prior to his death. Defendants claimed they did not know Mr. Moriarty was suicidal because he denied feeling suicidal throughout his detention at Vista Detention Facility. Defendants argued, according to the mental health provider, Mr. Moriarty was homicidal, not suicidal, and was therefore appropriately housed in isolation.

Factually speaking, *E.R. v. Cnty. of Stanislaus*, 2016 U.S. Dist. LEXIS 78787, *3-5 (Cal. E.D. 2016), is the most similar case involving settlement approval for three minors based on the wrongful death of their father. In that case, three minor plaintiffs brought suit against the County of Stanislaus and various police officers for failing to prevent the foreseeable suicide of the minors' father. The father admitted he was feeling suicidal and attempted to cut his wrist. The father was taken to a hospital for treatment. Upon the father's release back to the jail, hospital doctors instructed he be placed on a seventy-two-hour hold because he remained suicidal. Consistent with this instruction, the father was placed in a safety cell upon his return to the jail. However, the father remained there for only sixteen hours before being transferred to a regular cell. The father committed suicide by hanging two days later. *E.R. v. Cnty. of Stanislaus*, 2016 U.S. Dist. LEXIS 78787, *4-5 (Cal. E.D. 2016.)

In that case, the court approved the minors' settlement in the amount of $150,000 which was to be equally split amongst the father's wife and his three minor children. Each minor plaintiff received net settlement funds in the amount of $19,000 after the reduction of costs and attorney's fees. The court found, the proposed "net recovery to each minor Plaintiff is consistent with the average recovery in similar cases." *Id.* at *9.

///

In coming to that determination, the court in *E.R. v. Cnty. of Stanislaus* reviewed other similar settlements. See E.S. by and through *Gonzalez v. City of Visalia*, 2015 U.S. Dist. LEXIS 149960 (E.D. Cal. 2015) (approving minor's compromise for net payment of $130,444.83 in action involving the shooting and killing of minor's father); *Armstrong v. Dossey*, 2013 U.S. Dist. LEXIS 124786, (E.D. Cal. 2013) (finding fair and reasonable settlement of minors' section 1983 claims for their father's death for $22,500 and $11,000 respectively between the minors); *Doe ex rel. Scott v. Gill,* 2012 U.S. Dist. LEXIS 74250 (N.D. Cal. 2012) (approving minor's compromise in the net amount of $7,188.85 in action involving the shooting and killing of minor's mother by police officers); *Swayzer v. City of San Jose*, 2011 U.S. Dist. LEXIS 86659 (N.D. Cal. 2011) (approving minor's compromise for net amount of $2,054.17 in action involving alleged wrongful death of minor's father during his arrest).  *Id.* at *9.

In *Olaudah Dumas, et al., vs. Sunview Properties, et al.*, 2015 U.S. Dist. LEXIS 27878 *5 (S.D. Cal. 2015), a court in this district approved a minor's compromise that accounted for 71% of the settlement funds to be paid to the plaintiff's attorney for fees and costs.  The court made note of the ruling in *Robidoux* which instructed district courts to evaluate the fairness of the settlement without regard to attorney's fees.  The Court further held the net funds to be received by the minor, $10,000, was reasonable and fair.

Based on the approved settlements referenced above, the proposed settlement terms regarding E.M's net recovery and part ownership interest in the family house is a fair and reasonable settlement under the alleged facts and claims.

Although the Ninth Circuit Court of Appeals has instructed district courts not to consider the proposed attorney's fees when determining if the proposed settlement terms are in the best interest of the minor, it should be noted that Mr. Morris and Ms. Pena are experienced Section 1983 practitioners who received an extraordinary result in this case after nearly six years of litigation.

# V.

## DEFENDANT COUNTY OF SAN DIEGO'S AND RALPH LISSAUR, M.D.'S POSITION

The County of San Diego and Dr. Lissaur defer to Plaintiffs' counsel on the math discrepancy noted by this court.

The County of San Diego and Dr. Lissaur are not urging the Court to allow more than the standard 25% contingency fee in the case of the minor Eternity Moriarty and are not attempting to justify a higher fee. This is Plaintiffs' counsel's argument to make.

# VI.

## CONCLUSION

Based on controlling Ninth Circuit law, the federal roadmap set out in *Robidoux* should govern this Court's determination in approving the proposed settlement. If approved, E.M. would receive ¼ part ownership interest of the family homestead as well as $291,113.50. Given the fact that other similar settlements referenced above have yielded significantly less for minor children of deceased parents, this settlement is fair and reasonable.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated: November 15, 2021   s/ Christopher S. Morris
Christopher S. Morris, Esq.
cmorris@morrislawfirmapc.com
Attorneys for Plaintiffs Michelle Moriarty, as Successor in Interest and *Guardian Ad Litem* to Alexandria, Elijah and Eternity Moriarty

Dated: November 15, 2021   Office of County Counsel

By: s/ Christopher Welsh
CHRISTOPHER WELSH, ESQ.
Attorneys for Defendants County of San Diego and Alfred Joshua, M.D.

| | | |
|---|---|---|
| 1 | Dated: November 15, 2021 | LAW OFFICE OF JOSEPH T. KUTYLA |
| 2 | | |
| 3 | | By: s/ Joseph T. Kutyla<br>JOSEPH T. KUTYLA, ESQ.<br>Attorneys for Defendant Dale Weidenthaler |
| 4 | | |
| 5 | Dated: November 15, 2021 | WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP |
| 6 | | |
| 7 | | By: s/ Robert W. Harrison<br>ROBERT W. HARRISON, ESQ.<br>Attorneys for Defendant Ralph Lissasur, M.D. |
| 8 | | |

9

# EXHIBIT 1

# DECLARATION OF TRUST

The following trust agreement is hereby created by order of the Court in the matter of Moriarty vs. County of San Diego, Federal court case number 3:17-cv-01154-TWR-AGS, pursuant to the provisions of California Probate Code Section 3600 et. sequence. The terms and conditions of the trust, and the manner in which the trust estate is to be held, administered and distributed, are as follows:

## Article I
### Creation of Trust

A. <u>Effective date</u>. This trust shall be effective as of _____, 2021.

B  <u>Trustee</u>. The name of the Trustee is Michele Lynn Sewell.

C. <u>Trust Name</u>. This trust shall be known as the Eternity Bella Irrevocable Trust.

D. <u>An Irrevocable Trust</u>. This trust is irrevocable and only a court of competent jurisdiction shall have any power to control and direct payments, remove trust property, or alter, amend, revoke, or terminate this trust, either in whole or in part.

E. <u>Initial Funding</u>. This trust will be funded with $291,113.50 from settlement of the above-referenced matter.

## Article II
### Distributions from the Trust

A. <u>Trust Beneficiary</u>. Eternity Bella Moriarty ("Eternity") shall be the sole beneficiary of this trust. She shall have the right to the income and principal of the trust estate as set forth below.

B. <u>Distribution of Income and Principal</u>. On January 1, 2022, or as soon thereafter as is reasonably possible, the Trustee shall initially distribute the sum of $5,000 to Eternity's legal guardian to pay for the beneficiary's education related expenses.

(1) Each September 1 thereafter, the Trustee shall distribute the sum of $10,000 which shall be used for Eternity's education, health, maintenance, and support. Any net income not distributed by the Trustee shall be accumulated and added to the principal of the trust.

(2) If Eternity dies before attaining the age of eighteen, any remaining trust estate, including any accumulated and undistributed income, shall be divided equally among her then living siblings, and distributed free of trust.

(3) When Eternity attains the age of eighteen, this trust shall terminate and the trust estate shall be distributed free of trust to her.

Article III
The Resignation, Replacement, And Succession
Of the Trustee

A.  The Resignation of a Trustee. The Trustee may resign by giving written notice to a court of competent jurisdiction.

B.  Selection of Successor Trustee. The successor Trustee shall be one selected by a court of competent jurisdiction.

C.  Powers and Liabilities of Successor Trustee. Any successor Trustee, whether corporate or individual, shall have all of the rights, powers and privileges, and be subject to all of the obligations and duties, both discretionary and ministerial, as given to the original Trustee.

(1)  Any successor Trustee shall be subject to any restrictions imposed on the original Trustee. No successor Trustee shall be required to examine the accounts, records and acts of any previous Trustees.

(2)  No successor Trustee shall in any way be responsible for any act or omission to act on the part of any previous Trustees.

Article IV
General Matters and Instructions
With Regard to the Trusteeship

A.  Use of "Trustee" Nomenclature. As used throughout this agreement, the word Trustee shall refer to the initial Trustee as well as any single, additional, or successor Trustee. It shall also refer to any individual, corporation, or other entity acting as a replacement, substitute, or added Trustee.

B.  Court Supervision Required. This trust agreement shall be subject to the supervision of a court of competent jurisdiction.

C. <u>The Trustee's Responsibility to Account</u>.  The Trustee shall prepare and file an annual accounting to the court of competent jurisdiction.

D. <u>Trustee's Fee</u>. The Trustee shall be entitled to fair and reasonable compensation for the services it renders as a fiduciary. The amount of compensation shall be an amount equal to the customary and prevailing charges for services of a similar nature during the same period of time and in the same geographic locale. The Trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with its fiduciary duties under this agreement.

Article V
<u>The Trustee's Administrative And Investment   Powers</u>

A. <u>Introduction to Trustee's Powers</u>. Except as otherwise provided in this agreement, the Trustee shall have both the administrative and investment powers granted by law with respect to the trust created by this agreement.

B. <u>Powers to be Exercised in the Best Interests of Eternity</u>.  The Trustee shall exercise the following administration and investment powers without the order of any court, as the Trustee determines in its sole and absolute discretion to be in Eternity's best interests. Notwithstanding anything to the contrary in this agreement, the Trustee shall not exercise any power in a manner inconsistent with the beneficial enjoyment of the trust property in accordance with the general principals of the law of trusts.

C. <u>Administrative and Investment Powers</u>.  The Trustee shall, except as otherwise limited, have all powers now or hereafter granted by California law and all those appropriate to the orderly and effective administration of the trust.  In addition, the Trustee shall have the power:

(1)  To sell (for cash or credit), exchange, purchase and retain assets; to improve, alter, lease (even beyond the period of the trust), partition and otherwise deal with and manage trust property; and to invest and reinvest in preferred or common stocks, bonds, mortgages, investment company shares, money market and mutual (including index) funds, and any other property, real or personal.

(2)  To exercise all rights with respect to securities and other property; and to hold title in the name of a nominee or in a manner that will pass title by delivery or otherwise facilitate proper administration.

    (3) To employ and compensate (from the trust) accountants, lawyers, investment and tax advisors, agents and others, all as reasonable and appropriate to aid in the management, administration and protection of the trust estate.

    (4) To make distributions or allocations in cash or in kind, including undivided interests, by prorata or non-prorata division, or any combination of these ways in the Trustee's discretion.

    (5) To make any payments or distributions to a beneficiary directly, to a beneficiary's conservator or guardian (of the person or property), or by direct payment of a beneficiary's expenses.

Article VI
<u>General Provisions</u>

  A. <u>Spendthrift Provision</u>. The interests of trust beneficiary under this trust agreement shall not be transferable by voluntary assignment and, to the extent permissible by law, shall be free from execution, attachment, bankruptcy and other procedures for the satisfaction of creditors' claims.

  B. <u>Governing Law</u>. Unless otherwise expressly provided, the meaning of the distributive provisions of this declaration shall be governed by the laws of the State of California in effect at the date of its execution; and to the extent permissible under applicable law, the validity of the provisions of this declaration shall be governed by the laws of the State of California in effect on that same date, unless invalidity can be avoided by applying the law in effect at another time or in another jurisdiction that has sufficient contact for this purpose with the trusts involved. If any provision of this declaration is invalid, the remaining provisions shall nevertheless be given effect.

  Executed pursuant to court order on _____, 2021, at San Diego County, California.

                   _____
                   Michele Lynn Sewell, Trustee