Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Michelle Moriarty, as
Successor in Interest and *Guardian Ad Litem*
to Alexandria, Elijah and Eternity Moriarty

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the ESTATE OF HERON MORIARTY and as GUARDIAN AD LITEM to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY,<br><br>   Plaintiffs,<br><br>   v.<br><br>COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive,<br><br>   Defendants. | Case No.: 3:17-cv-01154-TWR-AGS<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>Magistrate: Hon. Andrew G. Schopler<br>Judge:   Hon. Todd W. Robinson |

Pursuant to this Court's Jury Trial Preparation and Scheduling Order, Plaintiffs submit their trial brief setting forth their theories of the case and what the evidence is expected to show.

## I.

## SUMMARY OF CLAIMS AND ELEMENTS

**First Claim – Dismissed**

**Second Claim – Dismissed**

**Third Claim – Dismissed**

**Fourth Claim – Dismissed**

**Fifth Claim – Dismissed**

**Sixth Claim – Dismissed**

**Seventh Claim – Medical Malpractice Against Defendants Daniels and CPMG – Brought by Michelle Moriarty as Successor in Interest to Moriarty:**

Elements:

1. That Defendants were medically negligent;
2. That Moriarty was harmed; and
3. That Defendants' medical negligence was a substantial factor in causing Moriarty's harm.

See CACI No. 400. (2017); See CACI No. 500. (2017)

**Eighth Claim - Wrongful Death Against Defendant Daniels and CPMG - Brought By Michelle Moriarty, Individually and as Guardian Ad Litem to Eternity Moriarty, Alexandria Moriarty, and Elijah Moriarty, Eternity Moriarty**

Elements:

1. Moriarty's death was caused by the negligent act of Defendants; and
2. Moriarty's death caused Plaintiff's injury.

See Code of Civil Procedure section 377.60, CACI No. 3921. (2017); *Quiroz v. Seventh Ave. Center,* 140 Cal. App. 4th 1256, 1257 (Cal. App. 6th Dist. 2006)

///

## II.

## THEORIES OF THE CASE AND SUPPORTING EVIDENCE

*Defendant Daniels*

By and through their survival and wrongful death claims, all Plaintiffs claim that Nurse Daniels failed to recognize Moriarty's suicidal ideations and warning signs; and failed to present an accurate clinical presentation to the MDG officials. Nurse Daniels also failed to advocate for her patient by not sending Moriarty to the Psychiatric Stabilization Unit. CPMG is being sued vicariously, as the employer of Nurse Daniels.

Specifically, in the six days Moriarty was in county custody, Moriarty's wife, Michelle, called the jail 31 times begging for her husband to get psychiatric help and informing whoever would listen that Moriarty was suicidal. Michelle even faxed a Psychiatric Emergency Response Team evaluation note from earlier that month proving Moriarty was placed on a 5150 hold for suicidal ideations.

According to Supervisor Fajayan, given Michelle's several concerns over the week, jail administration staff decided to discuss Moriarty in the next Multi-Disciplinary Group meeting, taking place later that morning on May 31, 2016. To prepare for the MDG meeting, jail administration staff told CPMG Nurse Daniels to evaluate Moriarty for the very purpose of giving a presentation in the MDG meeting so the group could determine the best course of treatment and housing.

Defendant Daniels testified that she did not believe Moriarty was suicidal when she evaluated him on the morning of May 31, 2016. Dr. Joshua and Plaintiffs' experts agree that Defendant Daniels ignored Moriarty's obvious risk of suicide because she took his verbal denial at face value. Per Defendant Daniels, at the time of her assessment, she knew Moriarty was: 1) a first time offender, 2) actively suffering from his first psychotic break, 3) recently hospitalized twice under Welfare and Institutions Code 5150, 4) suicidal on the day of his arrest, 5) refusing medication, 6) suffering from sleep deprivation for twelve days, and 7)

acting psychotic, delusional, and irrational.  She also knew that Michelle was very concerned for his safety, sparking the need for her evaluation.  Given these numerous risk factors, Nurse Daniels should have acknowledged Moriarty's high risk of suicide.  Had Defendant Daniels recommended a safety cell based on Moriarty's suicidal ideations, according to Defendant Weidenthlaer, Moriarty would have been housed in a safety cell and would not have had the means and opportunity to kill himself.

However, during her assessment, though Defendant Daniels ignored Moriarty's obvious risks of suicide, because Moriarty verbalized homicidal intent if taken to a psychiatric hospital, Defendant Daniels recommended he be placed in a safety cell based on homicidal ideations.  Rather than communicate her recommendation to the Watch Commander, pursuant to policy, Defendant Daniels told the deputy escort, Deputy Guillory, to relay the recommendation.  When Deputy Guillory relayed Defendant Weidenthaler's refusal, Defendant Daniels did not advocate for her patient, she simply let it happen.

Fast forward thirty minutes later, when Defendant Daniels was presenting Moriarty's clinical presentation to the MDG members, including the Watch Commander and those with the actual authority to re-house Moriarty, Defendant Daniels not only failed to mention Moriarty's homicidal ideations, she failed to mention her safety cell recommendation or Sergeant Weidenthaler's denial.

Moreover, during her MDG presentation, Defendant Daniels discussed Moriarty's psychotic and aggressive behavior; as well as the medication he was prescribed and refusing to take.  In light of his condition, Dr. Goldstein, the MDG meeting facilitator, suggested that Moriarty be sent to the PSU.  CPMG Nurse Daniels did a complete 180.  She told the group she could treat Moriarty at VDF – while he was housed in isolation – despite knowing Moriarty was actively psychotic, refusing medication and to be sent to a psychiatric facility on a 5150 hold upon release.  Supervisor Fajayan and Dr. Goldstein, both present in the

meeting, testified Defendant Daniels was "adamant" about keeping Moriarty at VDF, in the isolation cell, despite suggestions to transfer him to the PSU. Twelve hours later, Moriarty killed himself.

Upon a quality assurance review of Moriarty's suicide, Dr. Joshua, the Chief Medical Officer for the Sheriff's Department, claimed Moriarty should have been placed in the Inmate Safety Program based on his high risk of suicide. Similarly, Defendant Daniels' supervisor at CPMG, Dr. Rao, opined that Moriarty needed to be housed in the PSU based on his psychiatric condition.

## III.

## LEGAL ISSUE TO BE DECIDED BY THE COURT

As set forth in Defendants' proposed jury instructions, verdict form, and statement of the case, Defendants argue the basis of their comparative fault theory is that Moriarty "is the one who caused his own death through his affirmative steps of hanging himself." Plaintiffs' contend any comparative fault instruction based on this premise is inappropriate because Mr. Moriarty acting on his suicidal ideations did not contribute to Defendants' negligent conduct in failing to acknowledge Moriarty's suicide risk and failing to advocate for her patient in the MDG meeting.

In a medical malpractice context, "A plaintiff's negligent conduct can form the basis of a comparative fault defense when it relates and contributes to the defendant's negligence at issue. *Gardner v. Oregon Health Sciences University*, 299 Or. App. 280, 290, 450 P.3d 558 (2019) (citing *Son v. Ashland Cmty. Healthcase Servs.*, 239 Or. App. at 512 (Or. Crt. App. 2010). Stated another way, a plaintiff's negligence must be an element in the transaction on which the defendant's negligence is based or affect the event for which recovery is sought. *Mills v. Brown*, 303 Or. 223, 229, 735 P.2d 603 (1987) (quoting *Sandford v. Chev. Div. Gen. Motors*, 292 Or. 590, 606, 642 P.2d 624 (1982)). For example, in medical malpractice cases, the focus is on the injury caused by the defendant's negligence, not the plaintiff's original injury. *Son* at 508-509. In such cases, a comparative

fault defense requires that the "plaintiff's negligent conduct relate and contribute to the negligent treatment, because it is the negligence treatment that causes the injury that is at issue. *Id*. at 509. "<u>In a negligence action arising from the decedent's suicide, facts constituting a viable comparative fault defense included decedent providing incomplete or inaccurate information to the provider, withholding information from the provider, and in other ways declining, refusing, or failing to heed the provider's advice or treatment plan</u>." *Gardner*, 299 Or. App. at 291 (Or. 2019). These facts are not present in this case. Importantly, the act of Moriarty killing himself is not included in the comparative fault analysis because that is not what caused Defendant Daniels' negligent conduct. See *Hayes v. City of Portland*, 2020 U.S. Dist. LEXIS 41337, *48 (Or. 2020.)

To put plainly, whatever Moriarty did prior to or after Defendant Daniels' alleged negligent conduct cannot be the basis of Moriarty's comparative negligence. See *Harb v. City of Bakersfield*, 233 Cal. App. 4th 606, 607 5th App.) ("Where a plaintiff is seeking damages only for the aggravation or enhancement of an injury or condition, California will follow the majority view that a plaintiff's preaccident conduct cannot constitute comparative negligence when that conduct merely triggers the occasion for aid or medical attention. As a result, defendants who render aid or medical attention cannot reduce their liability for the harm resulting from their tortious acts and omissions by attributing fault to the plaintiff for causing the injury or condition in the first place.")

Notably, it is "A bright-line rule that giving an instruction on comparative negligence where there is no evidence to support it is reversible error." *Id.*

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated: February 23, 2022        s/ Danielle R. Pena
                                Danielle R. Pena, Esq.
                                Attorneys for Plaintiffs