1   Christopher S. Morris, Esq., SBN 163188
    cmorris@morrislawfirmapc.com
2   Danielle R. Pena, Esq., SBN 286002
    dpena@morrislawfirmapc.com
3   MORRIS LAW FIRM, APC
    501 West Broadway, Suite 1480
4   San Diego, CA 92101
    Telephone:  (619) 826-8060
5   Facsimile:  (619) 826-8065

6   Attorneys for Alexandria Moriarty, Elijah
    Moriarty, Michelle Moriarty, as Successor in
7   Interest to Heron Moriarty and *Guardian Ad
    Litem* to Eternity Moriarty
8

9                IN THE UNITED STATES DISTRICT COURT

10          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11   MICHELLE MORIARTY, an individual,        Case No.: 3:17-cv-01154-TWR-AGS
     as Successor in Interest to the ESTATE
12   OF HERON MORIARTY and as                 **STIPULATIONS**
     GUARDIAN AD LITEM to
13   ALEXANDRIA MORIARTY, ELIJAH
     MORIARTY, and ETERNITY
14   MORIARTY,

15        Plaintiffs,

16            v.

17   COUNTY OF SAN DIEGO, DR.
     ALFRED JOSHUA, individually, and
18   DOES 1 through 10, Inclusive,

19        Defendants.

20

21

22

23

24

25

26

27

28

                                    1
─────────────────────────────────────────────────────
STIPULATIONS                              3:17-cv-01154-TWR-AGS

## STIPULATIONS

1. Moriarty was 43 years old when he committed suicide in Vista jail. He was married to his wife Michelle. They had three children, Alexandria, Elijah, and Eternity.

2. In the weeks leading up to his death, Moriarty began to exhibit signs of mental illness and had two psychiatric hospitalizations in April and May of 2016. Moriarty's bizarre behavior resulted in an arrest for vandalism on the evening of May 25, 2016.

3. The Deputies transported Moriarty to Vista Detention Facility ("VDF") from Central Jail.

4. On the early hours of May 26, 2016, when the two transporting Deputies arrived at VDF, they were contacted by a VDF intake deputy. As soon as they arrived to VDF, the arresting Deputy told the VDF intake deputy about Moriarty's admission to feeling suicidal. The VDF intake deputy did not relay that information to the medical staff. The medical intake nurse denies being informed Moriarty was suicidal or in need of a safety cell. Moriarty was sent through the routine booking process.

5. Later that day, Moriarty was going to be transferred back to Central Jail. Before the transfer, Moriarty made bizarre and threatening comments to other inmates. A decision was made to keep Moriarty at VDF and he was placed in an administrative-segregation cell ("ad-seg"), which is a single occupant cell for assaultive/homicidal inmates.

6. On Saturday, May 28, 2016, Mr. Moriarty was evaluated by CPMG psychiatrist Ralph Lissaur, M.D. His assessment was that Moriarty was not suicidal. Dr. Lissaur determined Moriarty was bipolar and was currently exhibiting manic behavior with psychotic features.

7. Dr. Lissaur evaluated Moriarty again on May 30, 2016. As he had previously, Dr. Lissaur determined that Heron Moriarty was experiencing a

2

1    bipolar/manic episode.  Dr. Lissaur recommended that if Moriarty were to be

2    released the next day, he should be taken to a hospital and placed on an involuntary

3    psychiatric 72-hour hold for evaluation, which is commonly called a "5150 hold."

4    Moriarty returned to the ad-seg cell after this evaluation with Dr. Lissaur.

5         8.    During Moriarty's detainment at VDF, his wife, Michelle, called VDF

6    31 times out of concern for her husband.  Michelle claims she advised jail personnel

7    that Moriarty was suicidal.  Due in part to Michelle's continued concern, VDF

8    officials asked NP Daniels to evaluate Moriarty on the morning of May 31, 2016,

9    so that she could present her findings to the Multi-Disciplinary Group meeting,

10   which took place later that morning at 10:00 a.m.  The Multi-Disciplinary Group

11   meeting is a designated meeting to discuss select inmates' medical, psychiatric, and

12   housing needs.  Present at the meeting were NP Daniels, Captain McNeeley, Dr.

13   Goldstein, and Arnold Fajayan.

14        9.    Vista Detention Facility officials asked Amanda Daniels, NP to

15   evaluate Moriarty on the morning of May 31, 2016, so that she could present her

16   findings to the Multi-Disciplinary Group ("MDG") meeting, which took place later

17   that morning at 10:00 a.m.  Psychiatric Liaison Deputy, Lois Guillory, escorted

18   Amanda Daniels, NP to Moriarty's cell.

19        10.   Amanda Daniels, NP ("NP Daniels) was qualified as a psychiatric

20   nurse practitioner to evaluate Heron Moriarty.  NP Daniels' custom and practice

21   was to review at least the last psychiatric note prior to evaluating an inmate/patient.

22   NP Daniels, was an employee of Correctional Physicians Medical Group, Inc.

23   ("CPMG") at the time.  CPMG is vicariously liable for claims of negligence by NP

24   Daniels.

25   / / /

26   / / /

27   / / /

28   / / /

3

11.     NP Daniels documented her evaluation of Moriarty in an evaluation note at 8:55 a.m. on May 31, 2016.  NP Daniels did not believe Moriarty was suicidal, but she did believe that Moriarty was psychotic and homicidal because he threatened to kill anyone who came into his cell to try to move him to a psychiatric hospital.  NP Daniels recommended that Moriarty be placed in a safety cell.

12.     NP Daniels' recommendation that Moriarty be placed in a safety cell for homicidal ideations was relayed to Sgt. Weidenthaler through Psychiatric Liaison Deputy, Louis Guillory.  Sgt. Weidenthaler declined to follow NP Daniels' recommendation to place Moriarty in a safety cell.

13.     At one point that day, Sgt. Weidenthaler told nursing staff it was his "Friday" and he was planning to leave early.  The Parties disagree as to the timing of Sgt. Weidenthaler's comment.

14.     Four days prior, on May 27, 2016, Sgt. Weidenthaler was briefed by Sgt. Hightower and Captain McNeely regarding certain events surrounding Moriarty's intake.

15.     Approximately an hour and half after Nurse Daniels' evaluation on May 31, 2016, Moriarty's treatment was discussed in a multi-disciplinary group meeting.  The Parties disagree whether NP Daniels' recommendation and Weidenthaler's denial was discussed during the meeting.  NP Daniels does not recall whether or not she told the MDG participants about her safety cell recommendation and Weidenthaler's denial.  NP Daniels believed that the other committee members knew her recommendation had been overruled and that the MDG was merely considering alternatives.  Plaintiffs contend other participants in the meeting testified NP Daniels did not relay that information.  Placement of Moriarty in the "Psychiatric Stabilization Unit" ("PSU") was discussed during the multi-disciplinary group meeting.  Ultimately, a decision was made to keep Moriarty in ad-seg.

/ / /

4

STIPULATIONS                                                  3:17-cv-01154-TWR-AGS

16.     During the meeting, NP Daniels recommended keeping Mr. Moriarty at VDF instead of transferring him to the downtown San Diego "Psychiatric Stabilization Unit" since Moriarty was now agreeing to take the medication prescribed by the psychiatrist.

17.     About 12 hours later, Moriarty was found dead in his cell from an apparent suicide.

18.     According to the medical examiner, Dr. Mena, the cause of death was asphyxia.  The manner of death was a suicide.

19.     Plaintiffs' initial complaint was filed on June 9, 2017, against the County of San Diego, Dr. Alfred Joshua, and DOES 1 through 10, inclusive.

20.     Plaintiffs' first amended complaint was filed on March 21, 2018.  The defendants named in the first amended complaint included Amanda Daniels, N.P. as DOE #8 and CPMG as DOE #9.

21.     June 6, 2016, Michelle Moriarty was interviewed by an investigator pertaining to Moriarty's death.  During this interview, Michelle Moriarty told the investigator that she told the jail that Moriarty was a suicide risk while he was at Vista Detention Facility and that she was worried about his life.

22.     In this matter, Plaintiffs sued the County of San Diego, Sergeant Dale Weidenthaler, and Dr. Lissaur. Prior to trial these parties settled with Plaintiffs.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated:  February 23, 2022

s/ Danielle R. Pena
Danielle R. Pena, Esq.
dpena@morrislawfirmapc.com
Attorneys for Plaintiffs Michelle Moriarty, as Successor in Interest and *Guardian Ad Litem* to Alexandria, Elijah and Eternity Moriarty

/ / /

/ / /

/ / /

5

STIPULATIONS                                                  3:17-cv-01154-TWR-AGS

Dated:  February 23, 2022                LOTZ, DOGGETT & RAWERS, LLP

By: s/ Jeffery Doggett
JEFFREY DOGGETT, ESQ.
Attorneys for Defendants Correctional
Physicians Medical Group Inc. and Amanda
Daniels

Signature Certification:

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Jeffrey Doggett, counsel for Defendants Correctional Physicians Medical Group, Inc. and Amanda Daniels; and that I have obtained Mr. Doggett's authorization to affix his electronic signature to this document.

Dated: February 23, 2022                 s/ Danielle R. Pena
                                          Danielle R. Pena, Esq.

6

STIPULATIONS                                        3:17-cv-01154-TWR-AGS