Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Michelle Moriarty, as
Successor in Interest and *Guardian Ad Litem*
to Alexandria, Elijah and Eternity Moriarty

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the ESTATE OF HERON MORIARTY and as GUARDIAN AD LITEM to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive, <br><br> Defendants. | Case No.: 3:17-cv-01154-TWR-AGS <br><br> **PLAINTIFFS' OBJECTIONS TO DEFENDANTS' DESIGNATION OF DEPOSITION EXCERPTS IN LIEU OF TRIAL TESTIMONY** <br><br> Magistrate: Hon. Andrew G. Schopler <br> Judge: Hon. Todd W. Robinson |

Pursuant to this Court's Jury Trial Preparation and Scheduling Order [Dkt. 359], Plaintiffs submit the following objections to the excerpts of the deposition of Lois Guillory to be read into the record during trial submitted by Defendant Daniels and CPMG.

## I.
## LOIS GUILLORY HAS AGREED TO TESTIFY AT TRIAL

Plaintiffs object to Lois Guillory's (herein "Ms. Guillory") deposition testimony being used at trial because Ms. Guillory will be subpoenaed to appear at trial and has <u>agreed to testify</u>. Plaintiffs recently served Ms. Guillory with a trial subpoena. In response, Ms. Guillory agreed to testify at trial. Accordingly, Defendants' use of Ms. Guillory's deposition testimony is improper as she is not unavailable and is not an adverse party to Defendants. Fed. R. Civ. Pro. Rule 32(a)(3); Fed. R. Civ. Pro. Rule 32(a)(4).

## II.
## EXCERPTS FROM LOIS GUILLORY'S JULY 12, 2016, INTERVIEW IS IMPROPER HEARSAY EVIDENCE

Assuming *pro arguendo* that Ms. Guillory is unavailable, Defendants should be precluded from using an interview of Ms. Guillory taken on July 12, 2016. Specifically, Defendants submitted proposed excerpts from a transcript of an interview taken shortly after Moriarty's suicide. The interview was conducted at Vista Detention Facility by San Diego homicide detectives from the Sheriff's Department. Neither Plaintiffs nor their attorneys were present for the interview.

Federal Rules of Civil Procedure ("FRCP") Rule 32(a)(4) allows a party to "use for any purpose the deposition of a witness, whether or not a party, if. . . the witness cannot attend or testify because of age, illness, infirmity, or imprisonment." However, this rule only applies to depositions. The excerpts being offered by Defendants was taken pursuant to an interview, not a "deposition," as required by FRCP 32.

Pursuant to FRCP Rule 30, a deposition requires, among other things, reasonable notice, the appointment of an officer, penalty of perjury, ability to cross-examine, and certification. Given that the interview of Ms. Guillory was not a deposition taken pursuant to FRCP Rule 30, Defendants are prohibited from using the Rule 32 exception to introduce the one-sided interview at trial.

Assuming *pro arguendo* that Ms. Guillory is unavailable, excerpts from the interview are hearsay and therefore cannot be introduced as evidence or read into evidence unless they fit within a hearsay exception. FRE Rule 804(b) provides exceptions to the hearsay rules "if the declarant is unavailable as a witness." This includes, (1) former testimony, (2) statement under the belief of imminent death, (3) a statement against interest, (4) statement of personal or family history, (5) Rule 807 exceptions, and (6) statements offered against a party that wrongfully caused unavailability." Fed. R. Evid., R. 804(b)((1)-(6).

Ms. Guillory's interview does not satisfy any of those exceptions. The only one which Defendants may attempt to argue is "former testimony." However, the interview was not conducted "at a trial, hearing or lawful deposition, whether given during the current proceeding or a different one"; nor did Plaintiffs, or someone with similar interest have an opportunity to examine Ms. Guillory. Fed. R. Evid., R. 804(b)(1).

Finally, Defendants may argue that the interview meets the "residual exception" under Federal Rule of Evidence, Rule 807. Rule 807 offers a hearsay exception if: "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made, and evidence, if any, corroborating the statement; and whether the evidence it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Here, Defendants have failed to explain why the interview, conducted at the jail Moriarty died in by parties to this case, without counsel being present, offers a sufficient guarantee of

trustworthiness. Clearly, this interview is not the most probative evidence on this subject because Ms. Guillory has agreed to testify; and because she was deposed in this matter. The interview was discussed during Ms. Guillory's deposition.

For these reasons, Ms. Guillory's interview should be excluded as it is not a deposition and does not fit within the hearsay exceptions.

## III.

## OBJECTIONS TO EXCERPTS TAKEN FROM MS. GUILLORY'S DEPOSITION

Assuming *pro arguendo* that Ms. Guillory is unavailable to testify at trial, Plaintiffs object to the following lines of testimony offered by Defendants:

1. 28:20 – 31:1[1]

A question was posed to Ms. Guillory about the operative policy/process in place when an inmate expressed suicidal ideations to jail intake staff and that jail has no available safety cells. Specifically, the question asked who from the first jail is supposed to call the other jail to determine if there is an available safety cell for the inmate. Ms. Guillory testified that medical personnel have the obligation to notify the other jails. However, during her response, Ms. Guillory twice admitted that her answer was based on an assumption. Ms. Guillory's response should be excluded because she admitted that she does not have the personal knowledge to answer the question. Fed. R. Ev. Rule 602.

Furthermore, even if Ms. Guillory's response was based on sufficient personal knowledge, inclusion of this evidence would confuse the jury because it is not relevant to the facts at issue since Moriarty never made it to medical personnel while at Central Jail. Rather, when Moriarty was first transported to Central Jail, while in the sally port area, he admitted that he was feeling suicidal. The sergeant on duty represented that there was no available safety cell. The Central Jail sergeant immediately called the Watch Commander at Vista Detention Facility to

---
[1] Attached as Exhibit 1.

OBJECTIONS TO DEPOSITION EXCERPTS                     3:17-cv-01154-TWR-AGS

determine if there was an available safety cell. The Watch Commander confirmed there was an available safety cell, and was then notified that Moriarty was en route to Vista Detention Facility.

## IV.
## **CONCLUSION**

Since Ms. Guillory has agreed to testify at trial, the use of her deposition testimony under Rule 32, and her interview, is improper. For the reasons set forth above, Defendants offered testimony should be excluded.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated: February 23, 2022
        s/ Danielle R. Pena
        Danielle R. Pena, Esq.
        Attorneys for Plaintiffs

EXHIBIT 1

Lois Guillory  8/14/2018

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4

 5

 6    MICHELLE MORIARTY, an individual
      as Successor in Interest to the
 7    Estate of HERON MORIARTY and as
      GUARDIAN AD LITEM to ALEXANDRIA
 8    MORIARTY, ELIJAH MORIARTY and
      ETERNITY MORIARTY,
 9
                Plaintiff,
10

11         vs.                             NO. 3:17-cv-01154-LAB

12    COUNTY OF SAN DIEGO, DR. ALFRED
      JOSHUA, individually, and DOES
13    1 through 10, inclusive,

14
                Defendants.
15    _____

16

17               DEPOSITION OF LOIS GUILLORY

18                  San Diego, California

19                    August 14, 2018

20

21    Reported by:
      Annette Moore
22    CSR No. 2648

23

24

25
```

Lois Guillory  8/14/2018

```
 1   after the fact.
 2              Under what conditions is that type of
 3   information, that medical suicidal type information,
 4   relayed from the medical realm to the corrections
 5   deputies?
 6              MR. KUTYLA:  Asked and answered.
 7   BY MR. MORRIS:
 8         Q  Under what conditions is that relayed?
 9              MR. WELSH:  You lost me.  Can you ask it
10   again?
11   BY MR. MORRIS:
12         Q  Sure.  You know what we're talking about
13   in this case, all that past suicide stuff that we know
14   about with Moriarty?
15         A  Yes.
16         Q  In your interview you talked about how
17   that wasn't ever relayed to you.  You didn't know about
18   it until after the fact, right?
19         A  Yes.
20         Q  ==How is that information relayed, if at
21   all, things like that, like past suicidal behavior,
22   things like that, relayed to the people that are
23   working day-to-day in the jail and interacting with the
24   inmates?  How are you getting that information, if at
25   all?==
```

Lois Guillory  8/14/2018

```
 1                 MR. WELSH:  Vague, ambiguous, incomplete
 2   hypothetical.
 3                 MR. KUTYLA:  Incomplete hypothetical and
 4   vague.
 5                 THE WITNESS:  Can I answer it?
 6   BY MR. MORRIS:
 7         Q   Yes.
 8         A   My best knowledge of what happens is if
 9   they are taken to a different jail and they recommend
10   safety cell placement and that particular jail is full,
11   they have to be transferred to a different jail with
12   available safety cells.  Medical staff notifies the
13   medical staff.  And normally the watch commander is
14   involved, or whoever their processing sergeant at that
15   time at the gate, when that person is coming from a
16   different jail, is also notified.
17         Q   A situation like this where we know that
18   Mr. Moriarty went to Central and then was transferred
19   up to Vista because they didn't have safety cells.
20   That's your understanding, right?
21         A   Yes.
22         Q   A situation like that, the medical staff
23   at Central would notify the medical staff at Vista,
24   true?
25                 MR. WELSH:  Calls for speculation, lacks
```

1  foundation.
2           THE WITNESS:  Technically, yes, they
3  should.
4  BY MR. MORRIS:
5       Q  Then the sworn staff at Central should
6  also notify the watch commander at Vista?
7           MR. WELSH:  Calls for speculation, lacks
8  foundation.
9           THE WITNESS:  I'm not sure -- I'm not sure
10  if that medical staff at Central would tell -- it's
11  their watch commander there, then that's relayed to our
12  watch commander.  I'm assuming that's how it worked.
13  BY MR. MORRIS:
14       Q  Your assumption would be that the watch
15  commander who made the decision to move the inmate from
16  one jail to another for safety cell placement would
17  notify the other watch commander, the incoming jail?
18           MR. WELSH:  Lacks foundation, calls for
19  speculation.
20           THE WITNESS:  The medical staff,
21  obviously, would let the watch commander --
22  technically -- let me go back.  Sorry.  They would have
23  to call the jail to see if there's any available safety
24  cells.  I'm assuming they would have to go through the
25  medical staff, then the medical staff would notify the

1  watch commander.
2  BY MR. MORRIS:
3       Q   Whether they communicate watch commander
4  to watch commander or medical staff to watch commander,
5  you would expect the watch commander at the incoming
6  jail to be aware of the inmate who is being
7  transferred?
8           MR. WELSH:   Lacks foundation, calls for
9  speculation.
10          THE WITNESS:   Yes.
11 BY MR. MORRIS:
12      Q   Under what conditions does an inmate end
13 up getting placed in a disciplinary cell?
14      A   People that break the rules in the jail,
15 whether they are fighting, disrespecting staff, they
16 would be placed in the disciplinary isolation cell.
17      Q   How many disciplinary cells are there?
18      A   We have five designated ones.   We also
19 have -- like if there's no space in that particular
20 designated, they can be used in a regular housing unit,
21 kept by themselves, locked down.
22      Q   What are the five designated cells
23 called?
24      A   In south house, south one -- the housing
25 unit is south 5.   Cell S1, S2, S3, S4 and S5.

```
 1           DECLARATION UNDER PENALTY OF PERJURY
 2
 3   Case name: Michelle Moriarty vs. County of San Diego
 4   Date of Deposition: August 14, 1018
 5   Job No.: 231971
 6
 7
 8              I, Lois Guillory, hereby certify under
 9   penalty of perjury under the laws of the State of
10   California that the foregoing is true and correct.
11                 Executed this _____day of
12   _____, 2018, at_____.
13
14
15
16
                      _____
17
                           LOIS GUILLORY
18
19
20
21
22
23
24
25
```

Lois Guillory  8/14/2018

```
 1              I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby certify:
 3              That the foregoing proceedings were taken
 4    before me at the time and place herein set forth; that
 5    any witnesses in the foregoing proceedings, prior to
 6    testifying, were duly sworn; that a record of the
 7    proceedings was made by me using machine shorthand,
 8    which was thereafter transcribed under my direction;
 9    that the foregoing transcript is a true record of the
10    testimony given.
11              Further, that if the foregoing pertains to
12    the original transcript of a deposition in a federal
13    case, before completion of the proceedings, review of
14    the transcript [ ] was [ ] was not requested.
15
16              I further certify that I am neither
17    financially interested in the action nor a relative or
18    employee of any attorney or party to this action.
19       IN WITNESS WHEREOF, I have this date subscribed my
20    name.
21    Dated: August 21, 2018
22
23              _____
24              Annette Moore
25              CSR No. 2648
```