Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Michelle Moriarty, as
Successor in Interest and *Guardian Ad Litem*
to Alexandria, Elijah and Eternity Moriarty

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MORIARTY, an individual, as Successor in Interest to the ESTATE OF HERON MORIARTY and as GUARDIAN AD LITEM to ALEXANDRIA MORIARTY, ELIJAH MORIARTY, and ETERNITY MORIARTY,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN DIEGO, DR. ALFRED JOSHUA, individually, and DOES 1 through 10, Inclusive,<br><br>    Defendants. | Case No.: 3:17-cv-01154-TWR-AGS<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' ADDITIONAL JURY INSTRUCTIONS**<br><br>Magistrate: Hon. Andrew G. Schopler<br>Judge: Hon. Todd W. Robinson |

Pursuant to this Court's Jury Trial Preparation and Scheduling Order [Dkt. 296], Plaintiffs submit the following objections to Defendants' Supplemental Jury Instructions.

## I.

## CPMG\AMANDA DANIELS INSTRUCTIONS

Defendants CPMG and Amanda Daniels offer the following instructions that are disputed by at least one party:

1. <u>Supplemental Instruction No. 1</u>

There are two parts to Defendants' proposed instructions. Plaintiffs contend the first part of the instruction regarding Plaintiffs' claims are not entirely factually accurate. Plaintiffs' proposed Instruction No. 1 should be used in connection with Plaintiffs' claims section. Plaintiffs also object to the contributory negligence defense set forth in Defendants' defense section. "When a special relationship forms between jailor and inmate, sparking a duty for the jailor to protect the inmate from self-inflicted harm, the defenses of assumption of risk and contributory negligence are inappropriate.  In a claim of negligence stemming from inmate suicide, giving these instructions necessarily results in prejudicial error." *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 630 (S. Crt. Wash. 2010).

Moreover, Plaintiffs contend a comparative fault instruction is irrelevant to the facts at issue because Mr. Moriarty acting on his suicidal ideations did not <u>contribute to Defendants' negligence</u>. "A plaintiff's negligent conduct can form the basis of a comparative fault defense when it relates and contributes <u>to the defendant's negligence at issue</u>. *Gardner v. Oregon Health Sciences University*, 299 Or. App. 280, 290, 450 P.3d 558 (2019) (citing *Son v. Ashland Cmty. Healthcase Servs*., 239 Or. App. at 512 (Or. Crt. App. 2010). Stated another way, a plaintiff's negligence must be an element in the transaction on which the defendant's negligence is based or affect the event for which recovery is sought. *Mills v. Brown*, 303 Or. 223, 229, 735 P.2d 603 (1987) (quoting *Sandford v. Chev. Div.*

2

1 *Gen. Motors*, 292 Or. 590, 606, 642 P.2d 624 (1982)).  For example, in medical
2 malpractice cases, the focus is on the injury caused by the defendant's negligence,
3 not the plaintiff's original injury.  *Son* at 508-509.  In such cases, a comparative
4 fault defense requires that the "plaintiff's negligent conduct relate and contribute to
5 the negligent treatment, because it is the negligence treatment that causes the injury
6 that is at issue. *Id*. at 509.  <u>In a negligence action arising from the decedent's</u>
7 <u>suicide, facts constituting a viable comparative fault defense included decedent</u>
8 <u>providing incomplete or inaccurate information to the provider, withholding</u>
9 <u>information from the provider, and in other ways declining, refusing, or failing to</u>
10 <u>heed the provider's advice or treatment plan</u>.  *Gardner*, 299 Or. App. at 291 (Or.
11 2019).  These facts are not present in this case.

12      To put plainly, whatever Moriarty did prior to or after Defendant Daniels'
13 alleged negligent conduct cannot be the basis of Moriarty's comparative
14 negligence.  See *Harb v. City of Bakersfield*, 233 Cal. App. 4th 606, 607 5th App.)
15 ("Where a plaintiff is seeking damages only for the aggravation or enhancement of
16 an injury or condition, California will follow the majority view that a plaintiff's
17 preaccident conduct cannot constitute comparative negligence when that conduct
18 merely triggers the occasion for aid or medical attention.  As a result, defendants
19 who render aid or medical attention cannot reduce their liability for the harm
20 resulting from their tortious acts and omissions by attributing fault to the plaintiff
21 for causing the injury or condition in the first place.")

22      Notably, it is "A bright-line rule that giving an instruction on comparative
23 negligence where there is no evidence to support it is reversible error." *Id.*

24      2.   <u>Supplemental Instruction No. 2</u>

25      According to Defendants, the gravamen of this instruction is to inform the
26 jury that they should not find liability solely because Mr. Moriarty committed
27 suicide.  However, Plaintiffs contend this instruction does not state that the jury
28 "should not find liability solely because Mr. Moriarty committed suicide." The

instruction as drafted makes an amorphous reference to NP Daniels' "unsuccessful" efforts.  That unsuccessful effort could be inferred to be Daniel's failure to speak to the sergeant regarding her recommendation, or her unsuccessful attempt to advocate for her patient, and her own recommendation in the MDG meeting.  As worded, this instruction advises the jury that it is nearly impossible to find liability under the facts of this case.  Plaintiffs would agree to a modified instruction specifying that the suicide itself doesn't equate to liability without a finding of negligence.

### 3. Supplemental Instruction No. 3

Plaintiffs are unsure what instructions NP Daniels and CPMG are proposing as they differ from CACI 506.  The proposed instruction will confuse the jury because it is not relevant to the facts at-issue.  Plaintiffs do not allege NP Daniels choose the wrong method of treatment because it is undisputed that NP Daniels did not implement a method of treatment relating to Mr. Moriarty's suicidal ideations.  She will adamantly admit she did not find Moriarty to be a suicidal threat.

If this Court is inclined to offer this instruction, it should include the following language: "The "wrong choice" is only negligent if it is below the standard of care, and not every "wrong choice" falls below the standard of care." CACI 506.

### 4. Supplemental Instruction No. 4

Defendants are not proposing the use of this instruction as a method to establish the standard of care.  Instead, Defendants are proposing using this instruction so the jury can rely on the habits of witnesses if witnesses are unable to specifically recall events.  The instruction is specific that the jury does not need to accept a usual and customary practice as evidence but may take a usual and customary practice as a factor to consider evidence.

### 5. Supplemental Instruction No. 5

Plaintiffs' contend this instruction will confuse the jury because the facts at-issue do not relate to the proposed instruction.  NP Daniels' claims she relied on the

good conduct of Sgt. Weidenthaler to heed her recommendation for a safety cell. However, this argument ignores the evidentiary record which is Defendant Daniels was tasked by Director Fajayan to evaluate Mr. Moriarty for the purpose of making a presentation to the MDG group to best determine Mr. Moriarty's treatment and housing needs.  The facts are undisputed that following Weidenthaler's rejection, NP Daniels did not speak up, or advocated for Mr. Moriarty, at the MDG meeting. NP Daniels knew Moriarty needed a safety cell but was denied placement and intentionally failed to speak up during her presentation of Mr. Moriarty's mental health condition at the MDG meeting.  Instead, NP Daniels remained quiet as to Mr. Moriarty's need for a safety cell and as to Sgt. Weidenthaler's rejection. Daniels also denied Moriarty PSU admission when suggested by Dr. Goldstein. Captain McNeeley testified that had Defendant Daniels mentioned Mr. Moriarty's need for a safety cell during the MDG meeting, he would have ordered Mr. Moriarty to be re-housed.  Therefore, Defendant Daniels' conduct is not relevant to the good conduct of others since it occurred <u>after</u> Sgt. Weidenthaler's rejection.

   6. <u>Supplemental Instruction No. 6</u>

  Plaintiffs' contend this instruction will confuse the jury because the facts at-issue do not relate to the proposed instruction.  NP Daniels' claims Sgt. Weidenthaler's failure to heed her recommendation for a safety cell is a intervening and superseding cause.  "In an action for wrongful death of an individual who has committed suicide, the intentional act of suicide 'is a superseding cause of harm and relieves the original actor of liability unless such act was reasonably foreseeable or **the failure to foresee such act was a factor in the original negligence**." *Lucas v. City of Long Beach* (1976) 60 Cal.App.3d 341, 351; *Green v. Healthcare Services, Inc.*, 68 Cal. App. 5th 407, 416 (4th App.).  Here, Plaintiffs first theory of liability against Defendant Daniels is that she was negligent in failing to acknowledge Mr. Moriarty's obvious risk of suicide.

///

Furthermore, the facts at issue do not create an opportunity for a third party's intervention because Defendant Daniels had the task of presenting an accurate clinical picture of Mr. Moriarty at the MDG meeting, which occurred **after** Weidenthaler's rejection.  During the meeting, NP Daniels did not speak up regarding Mr. Moriarty's need for a safety cell, his homicidal ideations, nor Weidenthaler's rejection.  NP Daniels intentionally failed to advocate for Mr. Moriarty's needs during her presentation of Mr. Moriarty's mental health condition at the MDG meeting.  Notably, Captain McNeeley, who was present in the MDG meeting and outranked Sergeant Weidenthlaer, testified he would have housed Mr. Moriarty in a safety cell if Defendant Daniels recommended it during the MDG meeting. Therefore, intervening and superseding cause is irrelevant.

7. <u>Supplemental Instruction No. 7</u>

Generally, Plaintiffs agree with this instruction.  However, as set forth in Plaintiffs' Instruction No. 2, a section should be provided for punitive damages so it is clear to the jury that punitive damages are awardable in a survival claim.

8. <u>Supplemental Instruction No. 8</u>

Defendants requests this instruction based on an assumption that Moriarty caused or contributed to his own death under comparative fault principles. However, "When a special relationship forms between jailor and inmate, sparking a duty for the jailor to protect the inmate from self-inflicted harm, the defenses of assumption of risk and contributory negligence are inappropriate.  In a claim of negligence stemming from inmate suicide, giving these instructions necessarily results in prejudicial error." *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 630 (S. Crt. Wash. 2010).

Moreover, Plaintiffs contend a comparative fault instruction is irrelevant to the facts at issue because Mr. Moriarty acting on his suicidal ideations did not <u>contribute to Defendants' negligence</u>.  "A plaintiff's negligent conduct can form the basis of a comparative fault defense when it relates and contributes <u>to the</u>

defendant's negligence at issue. *Gardner v. Oregon Health Sciences University*, 299 Or. App. 280, 290, 450 P.3d 558 (2019) (citing *Son v. Ashland Cmty. Healthcase Servs.*, 239 Or. App. at 512 (Or. Crt. App. 2010). Stated another way, a plaintiff's negligence must be an element in the transaction on which the defendant's negligence is based or affect the event for which recovery is sought. *Mills v. Brown*, 303 Or. 223, 229, 735 P.2d 603 (1987) (quoting *Sandford v. Chev. Div. Gen. Motors*, 292 Or. 590, 606, 642 P.2d 624 (1982)). For example, in medical malpractice cases, the focus is on the injury caused by the defendant's negligence, not the plaintiff's original injury. *Son* at 508-509. In such cases, a comparative fault defense requires that the "plaintiff's negligent conduct relate and contribute to the negligent treatment, because it is the negligence treatment that causes the injury that is at issue." *Id*. at 509. In a negligence action arising from the decedent's suicide, facts constituting a viable comparative fault defense included decedent providing incomplete or inaccurate information to the provider, withholding information from the provider, and in other ways declining, refusing, or failing to heed the provider's advice or treatment plan. *Gardner*, 299 Or. App. at 291 (Or. 2019). These facts are not present in this case.

To put plainly, whatever Moriarty did prior to or after Defendant Daniels' alleged negligent conduct cannot be the basis of Moriarty's comparative negligence. See *Harb v. City of Bakersfield*, 233 Cal. App. 4th 606, 607 (5th App.). ("Where a plaintiff is seeking damages only for the aggravation or enhancement of an injury or condition, California will follow the majority view that a plaintiff's preaccident conduct cannot constitute comparative negligence when that conduct merely triggers the occasion for aid or medical attention. As a result, defendants who render aid or medical attention cannot reduce their liability for the harm resulting from their tortious acts and omissions by attributing fault to the plaintiff for causing the injury or condition in the first place.")

///

### 9. Supplemental Instruction No. 9 & No. 10

Dr. Lissuar should not be included in the negligence and standard of care instructions because Judge Burns previously determined that Dr. Lissaur's conduct was superseded and intervened by Weidenthaler and Daniels' conduct. Notably, Dr. Lissaur evaluated Mr. Moriarty prior to Defendant Daniels' involvement. Additionally, there is no expert opinion, or testimony from Daniels, that had Dr. Lissaur done something more or something differently, Defendant Daniels would have avoided liability.

Respectfully submitted,

MORRIS LAW FIRM, APC

Dated:  February 23, 2022

 s/ Danielle R. Pena
Danielle R. Pena, Esq.
Attorneys for Plaintiffs